MARK R. S. FOSTER (SBN 223682)
Mark.Foster@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone:    (650) 470-4500
Facsimile:    (650) 470-4570

ALEXANDER C. DRYLEWSKI (*pro hac vice*)
Alexander.Drylewski@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone:    (212) 735-3000
Facsimile:    (917) 777-2129

*Attorneys for Defendants*
*OKCoin USA Inc., Aux Cayes FinTech Co. Ltd.,*
*and OKC Holdings Corporation*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| ALISTER WATT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>OKCOIN USA INC., et al.,<br><br>Defendants | Case No.: 4:25-cv-00368-JSW<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE CORRECTED CLASS ACTION COMPLAINT**<br><br>Date:       June 13, 2025<br>Time:       9:00 a.m.<br>Courtroom:  5<br>Judge:      Hon. Jeffrey S. White<br><br>Complaint Filed: January 10, 2025 |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 13, 2025, at 9:00 a.m., in the courtroom of the Hon. Jeffrey Steven White, United States District Judge for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendants OKCoin USA Inc. ("OKCoin USA"), Aux Cayes FinTech Co. Ltd. ("Aux Cayes"), and OKC Holdings Corporation ("OKC Holdings," and together with OKCoin USA and Aux Cayes, "Defendants") will and hereby do move the Court for an order dismissing the Corrected Class Action Complaint (ECF No. 14 (the "Complaint")) filed by Plaintiff Alister Watt ("Plaintiff") with prejudice.

Defendants make this Motion pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). It is based on this Notice of Motion and Motion to Dismiss, the Memorandum of Points and Authorities, the record in this action, the arguments of counsel, and any other evidence and argument that this Court may consider. Defendants respectfully request that the Court dismiss the Complaint in its entirety with prejudice and enter judgment in Defendants' favor on each of Plaintiff's claims.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Complaint fails to state a claim for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") because it fails to plead (i) that Defendants' conduct was the but-for or proximate cause of Plaintiff's losses; or (ii) any domestic injury.

2. Whether the Complaint fails to plead a RICO conspiracy claim because it fails to plead a primary RICO violation or that Defendants entered into an agreement to commit a primary RICO violation.

3. Whether the Complaint fails to state claims for conversion and aiding and abetting conversion because it fails to plead that Defendants had knowledge of the specific alleged third-party criminal conduct or affirmatively acted to deprive Plaintiff of his property.

4. Whether the Complaint must be dismissed as against OKC Holdings and Aux Cayes based on a lack of personal jurisdiction.

1

2

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION TO DISMISS ........................................................ i

STATEMENT OF ISSUES TO BE DECIDED ................................................................ i

TABLE OF AUTHORITIES ...................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.      PRELIMINARY STATEMENT ...................................................................... 1

II.     FACTUAL BACKGROUND ........................................................................... 2

III.    THE COMPLAINT FAILS TO PLEAD BASIC ELEMENTS OF THE
        CLAIMS ..................................................................................................... 4

        A.      Plaintiff Fails to State a Viable RICO Claim (Count I) ................................ 4

                1.      Plaintiff Fails to Plead But-For and Proximate Causation .................. 4

                2.      Plaintiff Fails to Plead Domestic Injury ....................................... 7

                3.      Plaintiff Fails to Plead a RICO Conspiracy ................................... 8

        B.      Plaintiff Fails to State a Conversion Claim (Count II) ................................. 9

        C.      Plaintiff Fails to State an Aiding and Abetting Conversion Claim (Count
                III) ................................................................................................. 10

IV.     THE COURT LACKS PERSONAL JURISDICTION OVER OKC HOLDINGS
        AND AUX CAYES ...................................................................................... 11

        A.      RICO Does Not Create a Separate Basis for Personal Jurisdiction Over
                Foreign Defendants .......................................................................... 11

        B.      Plaintiff Has Not Established General or Specific Personal Jurisdiction
                Over the Foreign Defendants ............................................................... 12

                1.      OKC Holdings' Use of Third-Party Servers in California Does
                        Not Create a Basis for Specific Jurisdiction ................................ 13

                2.      This Court's Jurisdiction Over OKCoin USA Does Not Give It
                        Personal Jurisdiction Over OKC Holdings .................................. 13

                3.      Plaintiff Cannot Establish Personal Jurisdiction by Citing General
                        Statements of Law .............................................................. 14

V.      CONCLUSION ......................................................................................... 15

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT                      CASE No.: 4:25-cv-00368-JSW

1

## <u>TABLE OF AUTHORITIES</u>

2

### CASES

3

<u>Page(s)</u>

4
*Adobe Systems Inc. v. Blue Source Group, Inc.*,
5
    125 F. Supp. 3d 945 (N.D. Cal. 2015) ................................................................... 9, 10
6
*Archer v. Coinbase, Inc.*,
7
    53 Cal. App. 5th 266 (2020) ................................................................................. 9, 10

8
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................... 4
9

10
*Attia v. Google LLC*,
    2018 WL 2971049 (N.D. Cal. June 13, 2018) ...................................................... 2, 9
11
*Baumer v. Pachl*,
12
    8 F.3d 1341 (9th Cir. 1993) .................................................................................. 2, 9
13
*Bell Atlantic Corp. v. Twombly*,
14
    550 U.S. 544 (2007) ................................................................................................... 4
15
*Bray v. Kendall*,
    2010 WL 56181 (N.D. Cal. Jan. 5, 2010) .............................................................. 11
16
*Butcher's Union Local No. 498 v. SDC Investment, Inc.*,
17
    788 F.2d 535 (9th Cir. 1986) .................................................................................. 11
18
*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
19
    2011 WL 1042578 (W.D. Wash. Mar. 18, 2011) .................................................. 12
20
*Casey v. U.S. Bank Natural Ass'n*,
21
    127 Cal. App. 4th 1138 (2005) ................................................................................ 10
22
*In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, & Products Liability*
    *Litigation*,
23
    295 F. Supp. 3d 927 (N.D. Cal. 2018) ................................................................... 13
24
*Corcera Solutions, LLC v. Razor, Inc.*,
25
    2014 WL 587869 (N.D. Cal. Feb. 14, 2014) ......................................................... 11
26
*DFSB Kollective Co. v. Bourne*,
    897 F. Supp. 2d 871 (N.D. Cal. 2012) ................................................................... 15
27

28
*Doe v. Geller*,
    533 F. Supp. 2d 996 (N.D. Cal. 2008) ................................................................... 13

iii

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) ............................................................................ 15

*Doe v. Unocal Corp.*,
    27 F. Supp. 2d 1174 (C.D. Cal. 1998) ...................................................... 11, 12

*Doe v. Walmart Inc.*,
    2019 WL 499754 (N.D. Cal. Feb. 8, 2019) ....................................................... 11

*Duke v. Superior Court*,
    18 Cal. App. 5th 490 (2017) ......................................................................... 9, 10

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ........................................................................... 4, 8

*Fortaleza v. PNC Financial Services Group, Inc.*,
    642 F. Supp. 2d 1012 (N.D. Cal. 2009) ........................................................ 9, 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) .......................................................................................... 12

*Hemi Group, LLC v. City of New York*,
    559 U.S. 1 (2010) ................................................................................................ 4

*Higgins v. Farr Financial Inc.*,
    2009 WL 3517597 (N.D. Cal. Oct. 26, 2009) .................................................. 10

*Howard v. America Online, Inc.*,
    208 F.3d 741 (9th Cir. 2000) ............................................................................. 8

*Hungerstation LLC v. Fast Choice LLC*,
    2020 WL 137160 (N.D. Cal. Jan. 13, 2020) ..................................................... 13

*Hurtado Lucero v. IRA Services, Inc.*,
    2020 WL 553941 (N.D. Cal. Feb. 3, 2020) ...................................................... 10

*Lang v. Morris*,
    823 F. Supp. 2d 966 (N.D. Cal. 2011) .............................................................. 11

*Licht v. Binance Holdings Ltd.*,
    2025 WL 625303 (D. Mass. Feb. 5, 2025), *report and recommendation adopted*,
    2025 WL 624025 (D. Mass. Feb. 26, 2025) ........................................... 5, 6, 7, 8

*Life Bliss Foundation v. Sun TV Network Ltd.*,
    2014 WL 12589657 (C.D. Cal. Sept. 17, 2014) ............................................... 12

*MH Pillars Ltd. v. Realini*,
    2017 WL 916414 (N.D. Cal. Mar. 8, 2017) ................................................ 14

*Oki Semiconductor Co. v. Wells Fargo Bank, National Ass'n*,
    298 F.3d 768 (9th Cir. 2002) ............................................. 1, 2, 4, 5, 6, 7

*Panavision International, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) ................................................ 12

*In re Peklar*,
    260 F.3d 1035 (9th Cir. 2001) ................................................ 9

*Reynolds v. Binance Holdings Ltd.*,
    481 F. Supp. 3d 997 (N.D. Cal. 2020) ................................................ 14

*RJR Nabisco, Inc. v. European Community*,
    579 U.S. 325 (2016) ............................................. 1, 7, 8

*S&S Worldwide, Inc. v. Wells Fargo Bank*,
    509 F. Supp. 3d 1154 (N.D. Cal. 2020) ................................................ 10

*Sanford v. MemberWorks, Inc.*,
    625 F.3d 550 (9th Cir. 2010) ................................................ 8

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ................................................ 13, 15

*Scoggins v. HSBC Bank USA*,
    2015 WL 12670410 (C.D. Cal. Oct. 8, 2015) ............................................. 1, 2, 4, 5, 6, 7

*Simi Management Corp. v. Bank of America Corp.*,
    2012 WL 259865 (N.D. Cal. Jan. 27, 2012) ................................................ 10

*WhatsApp Inc. v. NSO Group Technologies Ltd.*,
    472 F. Supp. 3d 649 (N.D. Cal. 2020) ................................................ 13

*Wordtech Systems, Inc. v. Programmer's Paradise, Inc.*,
    1997 WL 638444 (N.D. Cal. Oct. 8, 1997) ................................................ 11

*Yegiazaryan v. Smagin*,
    599 U.S. 533 (2023) ................................................ 7

**STATUTES**

18 U.S.C. § 1962(c) ................................................ 8

18 U.S.C. § 1962(d) ................................................ 8

18 U.S.C. § 1964(c) ................................................................................................. 4, 7

18 U.S.C. § 1965(b) ................................................................................................. 11, 12

18 U.S.C. § 1965(d) ................................................................................................. 11

**RULES**

Fed. R. Civ. P. 12(b)(2) ........................................................................................... 11

I.    **PRELIMINARY STATEMENT**[1]

Plaintiff's Complaint is premised on the misguided theory that Defendants are liable because unidentified third-party criminals stole digital assets from Plaintiff's accounts at unaffiliated third-party trading platforms and later passed those stolen assets through the OKX platform, which was operated by one Defendant, allegedly to launder them.  Plaintiff does not assert claims against the thieves or the platforms from which his assets were stolen, but instead asserts RICO and conversion claims against Defendants OKCoin USA, OKC Holdings and Aux Cayes for acting as an unwitting "getaway driver." Plaintiff does not—and cannot—allege that any Defendant participated in the theft, was even aware of the theft or laundering activities, or had any relationship with Plaintiff at all.  The Complaint lacks merit and should be dismissed for multiple independent reasons:

*First*, Plaintiff's RICO claim fails because Plaintiff cannot show that Defendants were the "but-for" or "proximate cause" of his losses, both required by Ninth Circuit law.  In *Oki Semiconductor Co. v. Wells Fargo Bank, National Association*, the Ninth Circuit affirmed dismissal of analogous RICO claims against Wells Fargo on the ground that one of its tellers who later helped launder stolen funds from a robbery did not cause the victim's losses, emphasizing "[t]he direct and proximate cause of [the plaintiff's] loss was not [the teller]'s money laundering at Wells Fargo; *it was theft*."  298 F.3d 768, 773-74 (9th Cir. 2002); *see also Scoggins v. HSBC Bank USA*, 2015 WL 12670410, at *3 (C.D. Cal. Oct. 8, 2015).  Here, Plaintiff does not allege that Defendants had anything to do with the theft of Plaintiff's assets, claiming only that Defendants failed to implement procedures that, in his view, may have disincentivized or prevented bad actors from later attempting to launder stolen assets.  But without facts that Defendants were actually involved in the theft, or that the criminals would not have committed the theft but for Defendants' misconduct, Plaintiff cannot satisfy the but-for and proximate causation requirements under RICO as a matter of law.

*Second*, Plaintiff's RICO claim fails because he does not allege a domestic injury to "overcome the presumption against extraterritoriality."  *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 346 (2016). By Plaintiff's own account, unidentified hackers stole his assets and deposited a portion on OKX.com, an international digital asset platform operated by a foreign company.  Plaintiff does not allege any U.S.

---

[1] Unless noted, all emphasis is added, and all original citations, brackets and internal quotation marks are omitted from quoted material for ease of reading.

1    connection to his claimed injury other than his own residence, which does not suffice.

2         *Third*, Plaintiff fails to plead a RICO conspiracy because he has not articulated a primary RICO

3    violation, much less alleged that Defendants entered into any agreement to commit a substantive RICO

4    offense.  Rather, Plaintiff claims Defendants "turn[ed] a blind eye" to money laundering on OKX.com,

5    a theory rooted in nonfeasance that is insufficient as a matter of law.  *Baumer v. Pachl*, 8 F.3d 1341,

6    1347 (9th Cir. 1993); *Attia v. Google LLC*, 2018 WL 2971049, at *18 (N.D. Cal. June 13, 2018).

7         *Fourth*, Plaintiff's claims for conversion and aiding and abetting conversion fail because he

8    cannot allege, as he must, that Defendants had knowledge of the thieves or their theft, let alone acted

9    affirmatively to deprive Plaintiff of his property.

10        *Finally*, even if Plaintiff stated a viable cause of action (he does not), the Court lacks personal

11   jurisdiction over OKC Holdings and Aux Cayes, two foreign corporations.  RICO's nationwide service

12   of process provision does not confer personal jurisdiction over foreign defendants, and Plaintiff fails to

13   establish sufficient minimum contacts with California.

14        In short, the Complaint's deficiencies are incurable on their face.  Unless Plaintiff "dramatically

15   change[s] [his] factual allegations . . . which is not permitted," his fundamental theory will still be that

16   Defendants' purported inaction makes them liable for enabling third-party criminals to launder stolen

17   assets through OKX.com after their theft—a theory squarely foreclosed by Ninth Circuit law.  *Scoggins*,

18   2015 WL 12670410, at *3 (citing *Oki Semiconductor Co.*, 298 F.3d at 773-74).  This litigation never

19   should have been filed against these Defendants, and it should be dismissed with prejudice.

20   **II.    FACTUAL BACKGROUND**

21        Defendant OKC Holdings, incorporated in the Cayman Islands, is the parent company to a group

22   of entities that operate the website and app-based digital asset platforms known as OKX and OKCoin.

23   (Compl. ¶¶ 1, 23; ECF No. 20 ¶ 3.)  Defendant Aux Cayes, incorporated in Seychelles, is a subsidiary

24   of OKC Holdings that operates OKX for certain users located outside the U.S.  (Compl. ¶¶ 24-25, 40;

25   ECF No. 20 ¶ 2.)  OKX is one of the largest digital asset platforms in the world, with millions of users

26   in over 100 countries using OKX to buy, sell, and hold digital assets.  (Compl. ¶¶ 1, 38.)

27        Defendant OKCoin USA is a subsidiary of OKC Holdings that operates OKCoin, a separate

28   digital asset platform for users in the U.S.  (Compl. ¶ 22.)  OKCoin is the only platform within the group

1   of entities that is offered to users in the U.S. and is a licensed money transmitter in dozens of states.

2   (*Id.*)  Plaintiff does not allege that any of his transactions at issue, any money laundering, or any other

3   relevant conduct occurred on the OKCoin platform.  (*Id.* ¶¶ 7, 87.)

4        Plaintiff is not a user of either the OKX or OKCoin platforms.  (Compl. ¶ 20.)  Rather, he alleges

5   that he held accounts with two non-party trading platforms, and that, in April 2023, third-party hackers

6   "forcibly removed" digital assets from those accounts and eventually deposited a portion into accounts

7   on the OKX platform.  (*Id.* ¶¶ 20, 86-88.)  Plaintiff does not and could not allege Defendants participated

8   in any way in the theft, but rather that they functioned as a "get-away driver" for the thieves.  (*Id.* ¶ 4;

9   *see also id.* ¶¶ 87, 177.)  Despite Defendants' lack of involvement in the theft, Plaintiff filed this putative

10   class action asserting claims for RICO violations, conversion, and aiding and abetting conversion.  (*Id.*

11   ¶¶ 8-9.)  The theory underlying all of his claims is that Defendants and certain "OKX Officers" failed

12   to block some U.S.-based users from accessing OKX.com via a virtual private network ("VPN")—

13   technology which can make it appear as if users are logging in from a location outside the U.S.—which

14   in turn triggered an obligation under U.S. law to implement certain KYC and AML procedures that

15   were not implemented.  (*Id.* ¶¶ 7, 40-41, 83-84.)  According to Plaintiff, this alleged nonfeasance

16   enabled bad actors—after their theft—to transfer a portion of Plaintiff's stolen cryptocurrency through

17   the OKX platform.  (*Id.* ¶¶ 78-82, 91-93.)

18        Although not relevant to resolving this motion, on February 24, 2025, Aux Cayes alone waived

19   indictment and pleaded guilty to a one-count Information charging it with operating an unlicensed

20   money transmitting business in the U.S. in violation of 18 U.S.C. § 1960.  *See United States v. Aux*

21   *Cayes Fintech Co.*, No. 1:25-cr-00069 (S.D.N.Y.).  The court imposed the sentence agreed to by the

22   parties, whereby Aux Cayes is paying a penalty and forfeiture.  *Id.*  Aux Cayes was credited for its

23   cooperation with the investigation and timely engaging in remedial measures.  *Id.*  Aux Cayes was not

24   charged with money laundering.  *Id.*

25        Plaintiff does not allege OKCoin USA violated any laws.  (*See* Compl. ¶¶ 42, 83-84.)  Rather,

26   Plaintiff admits OKCoin.com was properly licensed in the U.S. and registered as a money services

27   business with the U.S. Department of Treasury's Financial Crimes Enforcement Network ("FinCEN").

28   (*Id.* ¶¶ 42, 83.)  Yet Plaintiff asserts OKCoin USA played a role in the supposed RICO scheme because,

1  he says, "a primary purpose of OKCoin's U.S. operations was to continue evading U.S. legal and

2  regulatory requirements and reduce regulatory pressure on OKX.com." (*Id.* ¶ 84.)

3  **III.    THE COMPLAINT FAILS TO PLEAD BASIC ELEMENTS OF THE CLAIMS**

4          To survive a motion to dismiss, a plaintiff must plausibly plead facts sufficient to establish every

5  element of its claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint must provide "more

6  than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

7  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  If the facts alleged would not "state a claim to

8  relief that is plausible on its face," the action must be dismissed.  *Id.*  If the facts alleged may or may

9  not result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored

10  explanation but are also consistent with [an] alternative explanation.  Something more is needed, such

11  as facts tending to exclude the possibility that the alternative explanation is true." *Eclectic Props. E.,*

12  *LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014).

13          The Complaint alleges three claims: (1) civil RICO; (2) conversion; and (3) aiding and abetting

14  conversion.  (Compl. ¶¶ 134-79.)  All three claims fail as a matter of law.

15          **A.    Plaintiff Fails to State a Viable RICO Claim (Count I)**

16                  **1.    Plaintiff Fails to Plead But-For and Proximate Causation**

17          RICO provides a private right of action for "[a]ny person injured in his business or property *by*

18  *reason of* a violation of section 1962 of this chapter."  18 U.S.C. § 1964(c) (emphasis added).  This

19  means that Defendants' RICO predicate offense must be both the "but-for" and "proximate cause" of

20  Plaintiff's loss—distinct elements requiring not only that an alleged injury "would not have happened"

21  but for Defendants' alleged conduct but also that there is a "'direct relationship' between the injury

22  asserted and the injurious conduct alleged." *Oki Semiconductor*, 298 F.3d at 773; *Scoggins*, 2015 WL

23  12670410, at *2-3; *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) ("[T]he plaintiff is

24  required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the

25  proximate cause as well . . . . A link that is too remote, purely contingent, or indirect is insufficient.").

26  Plaintiff cannot show either element.

27          The Ninth Circuit's decision in *Oki Semiconductor* is squarely on-point and forecloses Plaintiff's

28  claim.  298 F.3d at 774.  There, the plaintiff was a victim of an armed robbery whereby thieves stole $9

1    million worth of semiconductors and laundered the proceeds via bank accounts at Wells Fargo. *Id.* at

2    771.  The plaintiff alleged that a Wells Fargo employee established numerous bank accounts in the

3    names of fictitious entities to assist in laundering the proceeds.  *Id.*  As a result, the plaintiff asserted

4    that Wells Fargo was liable under RICO "because it reaped benefits from [its employee's] activities by

5    obtaining numerous new accounts and receiving millions of dollars in deposits." *Id.* at 772.  The Ninth

6    Circuit rejected this theory as a matter of law: "The direct and proximate cause of Oki's loss was not

7    [the employee]'s money laundering at Wells Fargo; *it was theft*.  Only *after* the theft occurred and the

8    semiconductors were sold could [the employee] launder the proceeds." *Id.* at 774 (emphasis added).

9    The Court explained that, even if the employee "knew about the robbery or indirectly provided support

10   for it (or theoretically, that she packed sandwiches to feed the thieves) [that] does not mean her actions

11   at Wells Fargo directly caused the theft." *Id.*

12       Following *Oki Semiconductor*, courts have held under similar circumstances that a party that

13   merely receives stolen funds—as a "get-away driver" (Compl. ¶ 4)—cannot be liable under RICO.  In

14   *Scoggins*, the plaintiffs brought a class action on behalf of people who had their money "wrongfully

15   taken by a Los Angeles street gang" and then "deposited into accounts at HSBC."  2015 WL 12670410,

16   at *1.  The plaintiffs alleged that "HSBC took part in the conspiracy by its willful actions to launder the

17   money it received." *Id.*  The court held that "*Oki Semiconductor* clearly governs these allegations" and

18   dismissed *without* leave to amend plaintiffs' claim for lack of proximate causation:

19           Plaintiffs' allegations show, at most, a remote connection between HSBC and Plaintiffs'
             purported injuries.  *Members of a Los Angeles street gang, not HSBC, proximately caused*
20           *the injuries to Plaintiffs*, namely the theft of money and property.  Plaintiffs make no
             attempt to allege that HSBC employees directly stole property or that HSBC controlled the
21           activities of gang members.  Rather, HSBC's connection extends only to the fact that it
             was the bank where gang members deposited money.
22

23   *Id.* at *2-3 (emphasis added) (holding that leave to amend "would be futile because Ninth Circuit

24   authority forecloses Plaintiff's allegations of proximate cause").[2]

25   ───────────────
26   [2] *Scoggins* also found no but-for causation, as the plaintiffs "fail[ed] to establish that, absent HSBC's
     actions, the gang members would not have committed the underlying offenses.  To put it another way,
27   even if HSBC were not in the picture, the gang members may still have stolen from Plaintiffs and then
     deposited the proceeds from their criminal activity elsewhere."  2015 WL 12670410, at *3; *see also*
28   *Licht v. Binance Holdings*, 2025 WL 625303, at *38 (D. Mass. Feb. 5, 2025), *report and*
     *recommendation adopted*, 2025 WL 624025 (D. Mass. Feb. 26, 2025).  The same is true here: aside
     from the Complaint's boilerplate legal conclusion that "[b]ut for Defendants' scheme, Plaintiff and the
                                                                                          *(cont'd)*

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT                    CASE No.: 4:25-cv-00368-JSW

Similarly, in *Licht*, victims of cryptocurrency scams brought RICO claims against operators of the Binance.com and Binance.US cryptocurrency platforms, alleging that defendants willfully failed to comply with U.S. laws thereby allowing scammers to use Binance.com to launder plaintiffs' stolen assets and "cash[] out." 2025 WL 625303, at *1. The court rejected plaintiffs' RICO claims for failure to plead causation, holding—consistent with *Oki* and *Scoggins*—that "plaintiffs were the immediate victim of the scammers' . . . schemes, and the scammers are not defendants." *Id.* at *41.

*Oki, Scoggins*, and *Licht* foreclose Plaintiff's same theory here. Plaintiff does not allege that Defendants participated in the theft or were even aware of it. Instead, his theory is that he was harmed through a Rube-Goldberg-esque series of attenuated events: Defendants failed to register OKX in the U.S. as a money transmitting business, which meant it failed to implement anti-money laundering protocols, which meant it may have unknowingly processed transactions by suspicious individuals, which could have included some or all of the transactions through which third-party hackers laundered Plaintiff's money *after* committing crimes against him on unaffiliated third-party trading platforms. This chain of events does not come close to satisfying the direct or proximate causation requirements. To the contrary, it confirms that the "direct and proximate cause of [Plaintiff's] loss was not [the] money laundering; it was theft." *Scoggins*, 2015 WL 12670410, at *2; *Oki Semiconductor*, 298 F.3d at 774. The case for dismissal is even stronger here than in *Oki Semiconductor*, where the Wells Fargo teller was alleged to have actively and knowingly participated in the laundering. Plaintiff here does not allege any Defendant had knowledge of the hacker's criminal activities—only that they generally "turn[ed] a blind eye" to the risk of money laundering on the OKX platform. (Compl. ¶ 82.) Indeed, Plaintiff's own analogy to Defendants "'driving the getaway car' for the cryptocurrency thieves" (*id.* ¶ 177) underscores the fatal flaw in his theory: A getaway car driven by one not involved in the preceding theft, like a taxi driver hailed by the thieves to flee the scene, is not the proximate cause of a victim's losses. *See Oki Semiconductor*, 298 F.3d at 774 ("[T]hese allegations suggest, at most, that [the teller]

---

Class would not have had their crypto stolen" (Compl. ¶ 114), Plaintiff pleads no facts to suggest the third-party hackers could not have simply "deposited the proceeds from their criminal activity elsewhere." *Scoggins*, 2015 WL 12670410, at *3. Indeed, Plaintiff's own counsel filed an identical lawsuit in August 2024 against another digital asset platform asserting that it also acted as a "get-away driver" for criminals to launder cryptocurrency due to its deficient AML and KYC protocols. *See* Complaint at ¶ 3, *Martin v. Binance Holdings, Ltd.*, No. 2:24-cv-01264-BJR (W.D. Wash. filed Aug. 16, 2024).

1  laundered the proceeds *after* the Conspiracy stole the semiconductors and sold them."); *Licht*, 2025 WL

2  625303, at *39 n.52 ("[T]he salient fact is that the money laundering occurred after the theft.").

3      No amount of additional pleading in this case, short of "dramatically changing their factual

4  allegations . . . which is not permitted," can overcome the basic principle that Defendants' receipt of

5  "money from individuals engaging in criminal activity does not [result in] RICO liability for

6  proximately causing the injuries suffered by victims of the criminal activity." *Scoggins*, 2015 WL

7  12670410, at *3. The RICO claim should be dismissed with prejudice.

8                    **2.    Plaintiff Fails to Plead Domestic Injury**

9      The RICO claim also should be dismissed for the independent reason that Plaintiff fails to allege

10  a domestic injury. Under Section 1964(c) of the RICO statute, a plaintiff "must allege and prove a

11  *domestic injury* to business or property" to "overcome the presumption against extraterritoriality." *RJR*

12  *Nabisco*, 579 U.S. at 346. "[C]ourts should look to the circumstances surrounding the alleged injury to

13  assess whether it arose in the United States," including "the nature of the alleged injury, the racketeering

14  activity that directly caused it, and the injurious aims and effects of that activity." *Yegiazaryan v.*

15  *Smagin*, 599 U.S. 533, 543-45 (2023).

16      Here, the *only* fact tethering Plaintiff's alleged loss to the U.S. is that Plaintiff happens to reside

17  in North Carolina (Compl. ¶ 20), but that alone is insufficient. *E.g.*, *Licht*, 2025 WL 625303, at *42;

18  *Yegiazaryan*, 599 U.S. at 543 (rejecting "a bright-line rule . . . that locates a plaintiff's injury at the

19  plaintiff's residence"). Nothing else in the Complaint demonstrates a domestic injury: Plaintiff's assets

20  were stolen by one or more non-party hackers from unidentified non-party platforms. (Compl. ¶¶ 86-

21  87.) The location of the hacker(s) and these platforms is unpled, but the Complaint offers no reason to

22  believe the thieves were located in the U.S. or targeted American victims specifically. (*Id.*) The hackers

23  deposited Plaintiff's stolen assets on OKX.com, an international digital asset platform with millions of

24  users in over 100 countries and operated by Aux Cayes, a Seychelles corporation. (*Id.* ¶¶ 25, 38, 78,

25  80.) Plaintiff does not (and could not) allege that any of his funds were deposited onto OKCoin.com,

26  the separate domestic platform for U.S.-based users. (*See id.* ¶¶ 42-43, 77-84.).

27      The absence of any meaningful touchpoint to the U.S. tracks *Licht*, where the court found no

28  plausible domestic injury under similar circumstances. 2025 WL 625303, at *41-42. In *Licht*, the court

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT                    CASE No.: 4:25-cv-00368-JSW

1   held that plaintiffs' injuries were caused by international wire fraud perpetrated by unknown hackers,

2   that there was no reason to believe the hackers specifically targeted the U.S., that Binance is a foreign

3   corporation, and there was no indication that the stolen cryptocurrency made its way to the U.S. or

4   originated in the U.S. *Id.* The same is true here. Because Plaintiff cannot "overcome the presumption

5   against extraterritoriality," the RICO claim should be dismissed on this independent basis. *See RJR*

6   *Nabisco*, 579 U.S. at 346; *Eclectic Props.*, 751 F.3d at 996-97.

### 3.      Plaintiff Fails to Plead a RICO Conspiracy

8        A RICO conspiracy claim under § 1962(d) requires a plaintiff first to adequately plead a

9   substantive RICO violation under § 1962(c). *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th

10  Cir. 2010) (affirming dismissal of § 1962(d) conspiracy claim because "Plaintiffs cannot claim that a

11  conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO").

12  Because Plaintiff has not done so (*see supra* Sections III.A.1-2), to the extent he tries to plead a separate

13  RICO conspiracy claim, this would fail too. (*See* Compl. ¶¶ 134-54.)

14       Further, any RICO conspiracy claim would fail because Plaintiff does not—and cannot—allege

15  "an agreement that is a substantive violation of RICO or that [Defendants] agreed to commit, or

16  participated in, a violation of two predicate offenses." *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751

17  (9th Cir. 2000). To be liable for a RICO conspiracy, defendants "must intend to further an endeavor

18  which, if completed, would satisfy all of the elements of a substantive criminal offense," and "must also

19  have been aware of the essential nature and scope of the enterprise and intended to participate in it." *Id.*

20  Aside from insufficient boilerplate (*e.g.*, Compl. ¶ 149), the Complaint is devoid of *facts* demonstrating

21  that all Defendants agreed to participate in any scheme at all, let alone a money laundering scheme. To

22  the contrary, Plaintiff admits OKCoin USA *complied with* U.S. laws by properly registering as a money

23  services business with FinCEN. (*Id.* ¶¶ 42, 83-84.) And Plaintiff does not explain how OKC Holdings,

24  a parent company that does not operate either the OKX or OKCoin platform, was aware of the alleged

25  money laundering scheme on OKX.com. (*See id.* ¶¶ 22-25.) As to Aux Cayes, the Complaint contains

26  no specific factual allegations to suggest it agreed to participate in any money laundering scheme. At

27  most, Plaintiff alleges that it "turn[ed] a blind eye" to money laundering—not that it participated in a

28  scheme, much less in concert with the other Defendants. (*Id.* ¶ 82.) Such thin allegations fall far short

of supporting a RICO conspiracy claim.  *See Attia*, 2018 WL 2971049, at *18 (plaintiff must "allege plausible facts suggesting that Defendants were aware of the essential nature and scope of the RICO scheme, and otherwise agreed to participate in a scheme that meets RICO's substantive requirements"); *Baumer*, 8 F.3d at 1347 ("[T]he bare allegations of the complaint provide no basis to infer assent to contribute to a common enterprise.").

### B.    Plaintiff Fails to State a Conversion Claim (Count II)

To state a claim for conversion, a plaintiff must adequately allege that each defendant "acted intentionally to wrongfully dispose of the property of another." *Duke v. Superior Ct.*, 18 Cal. App. 5th 490, 508 (2017); *see also In re Peklar*, 260 F.3d 1035, 1037 (9th Cir. 2001).  Critically, "[c]onversion requires affirmative action to deprive another of property, *not a lack of action*." *Archer v. Coinbase Inc.*, 53 Cal. App. 5th 266, 276 (2020) (emphasis added).

Here, Plaintiff has not pleaded that Defendants acted knowingly or intentionally nor took any affirmative action to wrongfully dispose of his digital assets.  Two of the Defendants, OKCoin USA and OKC Holdings, are not alleged to have even operated the OKX platform or had any involvement in the transactions of Plaintiff's stolen assets.  (Compl. ¶¶ 22-25.)  While the Complaint vaguely alleges that "Defendants" collectively failed to implement adequate KYC and AML procedures (*see id*. ¶¶ 42-47, 55-62), Plaintiff cannot simply lump all "Defendants" together under one undifferentiated umbrella. *See Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F. Supp. 2d 1012, 1022 (N.D. Cal. 2009) (rejecting conversion claim because plaintiff "d[id] not allege any specific act against any specific defendant" or "identify[] which defendant [was] responsible for her alleged injuries"); *see also Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) ("[A] plaintiff must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole.").  As to Aux Cayes, the operator of the OKX platform, Plaintiff does not allege that it had any awareness of his stolen assets or the thieves' use of OKX.com to launder his assets. (*See, e.g.*, Compl. ¶¶ 86-87.)  Indeed, Plaintiff's entire theory is that Aux Cayes generally *lacked* knowledge and "turn[ed] a blind eye" to bad actors by failing to implement adequate KYC and AML procedures, thereby enabling those bad actors to transfer stolen assets into accounts they purportedly controlled on the OKX platform.  (*Id.* ¶¶ 77-82.)  But alleged "lack of action" cannot underpin a

1    conversion claim requiring knowledge and affirmative conduct to deprive Plaintiff of his property.  *See*

2    *Archer*, 53 Cal. App. 5th at 276; *Duke*, 18 Cal. App. 5th at 508.[3]

3         **C.    Plaintiff Fails to State an Aiding and Abetting Conversion Claim (Count III)**

4         Plaintiff's aiding and abetting conversion claim likewise fails because the Complaint does not

5    allege each Defendant had actual knowledge of the hackers' theft or money laundering.  "Liability for

6    aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong

7    the defendant substantially assisted."  *Hurtado Lucero v. IRA Servs., Inc.*, 2020 WL 553941, at *4 (N.D.

8    Cal. Feb. 3, 2020) (quoting *Casey v. U.S. Bank Nat. Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005)).

9    "Suspicion and surmise do not constitute actual knowledge," nor would "[g]eneral allegations [that] the

10   defendant knew the principal wrongdoers were involved in wrongful or illegal conduct."  *Id.*

11        Here, Plaintiff does not allege that any Defendant had actual knowledge of the theft or money

12   laundering committed by the thieves.  (*See* Compl. ¶¶ 77-84, 91-93.)  OKCoin USA and OKC Holdings

13   did not even operate the OKX platform (*see id.* ¶¶ 23-25), nor are they alleged to have had any

14   knowledge of the transactions involving Plaintiff's funds.  *See Fortaleza*, 642 F. Supp. 2d at 1022;

15   *Adobe*, 125 F. Supp. 3d at 964.  Although Plaintiff vaguely asserts that "Defendants" were generally

16   aware that some bad actors conducted illicit transactions on OKX.com (Compl. ¶¶ 81-84), this cannot

17   suffice to plead "actual knowledge of the specific wrongdoing for which [Plaintiff] seeks to hold

18   [Defendants] liable."  *S&S Worldwide, Inc. v. Wells Fargo Bank*, 509 F. Supp. 3d 1154, 1165 (N.D.

19   Cal. 2020) (dismissing claim for aiding and abetting conversion where Wells Fargo Bank only "knew

20   *something* fishy was going on with the account"); *Simi Mgmt. Corp. v. Bank of Am. Corp.*, 2012 WL

21   259865, at *4 (N.D. Cal. Jan. 27, 2012) ("These statements heavily imply that BofA knew that [the

22   CFO] was committing embezzlement and conversion, but stop short of the required direct assertion that

23   BofA had actual knowledge of [his] specific wrongdoing and helped him carry it out.").

24

25

26   ─────────────────
     [3]  Plaintiff's bald assertion that "[a]t all relevant times, the Count II Defendants had actual or
27   constructive knowledge that cryptocurrency stolen from Plaintiff and Class members had been
     transferred to accounts on OKX.com's exchange" (Compl. ¶ 161) is plainly insufficient.  *See, e.g.*,
28   *Higgins v. Farr Fin. Inc.*, 2009 WL 3517597, at *1 (N.D. Cal. Oct. 26, 2009) ("Conclusory allegations
     without more are insufficient to defeat a motion to dismiss for failure to state a claim upon which relief
     may be granted.").

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT                    CASE NO.: 4:25-cv-00368-JSW

## IV. THE COURT LACKS PERSONAL JURISDICTION OVER OKC HOLDINGS AND AUX CAYES

Federal Rule of Civil Procedure 12(b)(2) requires that a court dismiss defendants over which it lacks personal jurisdiction. Plaintiff, "as the party seeking to invoke the jurisdiction of the federal court, has the burden of establishing that jurisdiction exists." *Corcera Sols., LLC v. Razor, Inc.*, 2014 WL 587869, at *1 (N.D. Cal. Feb. 14, 2014). "Mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Lang v. Morris*, 823 F. Supp. 2d 966, 969-70 (N.D. Cal. 2011). Here, Plaintiff has not met his burden as to OKC Holdings and Aux Cayes (the "Foreign Defendants"). OKC Holdings is a company incorporated in the Cayman Islands, and Aux Cayes, a subsidiary of OKC Holdings, is a Seychelles registered company. (ECF No. 20 ¶¶ 2-3; Compl. ¶¶ 23, 25.) Plaintiff has failed to establish that this Court has general or specific jurisdiction over either entity.

### A. RICO Does Not Create a Separate Basis for Personal Jurisdiction Over Foreign Defendants

As an initial matter, Plaintiff wrongly asserts that this Court has personal jurisdiction over Defendants under RICO's nationwide service of process provision.[4] (Compl. ¶ 13.) Contrary to Plaintiff's position, this provision does not create personal jurisdiction even over foreign RICO defendants that have minimum contacts with the U.S. as a whole. (*Id.* (alleging Defendants "conduct a substantial portion of their business" in the U.S.).) Section 1965(b) provides that:

> (b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

18 U.S.C. § 1965(b). Courts have held that § 1965(b) does not provide a basis for personal jurisdiction over foreign RICO defendants. In *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174 (C.D. Cal. 1998), the court explicitly rejected the plaintiffs' argument that personal jurisdiction existed over a French RICO

---

[4] Contrary to Plaintiff's assertion (Compl. ¶ 13), under Ninth Circuit law, only § 1965(b)—not (d)—could provide a basis for personal jurisdiction. *See Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538-39 (9th Cir. 1986). While § 1965(d) has been interpreted by other circuits as providing a basis for personal jurisdiction, that interpretation is contrary to Ninth Circuit precedent and has been consistently rejected by this Court. *E.g.*, *Bray v. Kendall*, 2010 WL 56181, at *4 (N.D. Cal. Jan. 5, 2010); *Doe v. Walmart Inc.*, 2019 WL 499754, at *7 (N.D. Cal. Feb. 8, 2019); *Wordtech Sys., Inc. v. Programmer's Paradise, Inc.*, 1997 WL 638444, at *2-3 (N.D. Cal. Oct. 8, 1997).

defendant-corporation because of its minimum contacts with the U.S. pursuant to § 1965(b). *Id.* at 1182-84. Instead, the court held that the plaintiffs "must rely on the traditional minimum contacts analysis associated with service of process under California's long-arm statute." *Id.* at 1184. The court reasoned that the "national contacts" test for a RICO defendant only applies where that defendant has been served in the U.S. under RICO's nationwide service provision. *Id.* at 1182. Thus, because a foreign RICO defendant cannot be served under § 1965(b), a plaintiff cannot rely on that defendant's contacts with the U.S. to establish personal jurisdiction. Other district courts in the Ninth Circuit have explicitly endorsed the *Unocal* approach and refused to allow plaintiffs to rely on § 1965(b) to establish personal jurisdiction over foreign RICO defendants. *See, e.g.*, *Life Bliss Found. v. Sun TV Network Ltd.*, 2014 WL 12589657, at *9 n.3 (C.D. Cal. Sept. 17, 2014) (holding plaintiffs had to rely on a minimum contacts analysis, not RICO's service provisions, to establish personal jurisdiction over Indian citizens); *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 1042578, at *1 (W.D. Wash. Mar. 18, 2011) ("[Section 1965(b)] does not authorize service outside the United States, and indeed, a defendant served outside the United States is not subject to RICO jurisdiction."). Because the Foreign Defendants are incorporated in the Cayman Islands and Seychelles, they are not subject to nationwide service—nor personal jurisdiction—under RICO. *Unocal*, 27 F. Supp. 2d at 1182-84.

## B. Plaintiff Has Not Established General or Specific Personal Jurisdiction Over the Foreign Defendants

Because RICO's nationwide service of process provision is inapplicable here, California law governs personal jurisdiction. *See Panavision Int'l., L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Under California's long-arm statute, a court may exercise personal jurisdiction over defendants to the extent permissible under the Due Process Clause of the Constitution. *Id.* A court may assert general or specific jurisdiction over foreign defendants. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction exists where defendants' "affiliations with the State are so continuous and systematic as to render them essentially at home" in California. *Id.* Plaintiff does not allege this Court has general jurisdiction over OKC Holdings or Aux Cayes. (Compl. ¶¶ 13-17.) Nor could he, as neither is "essentially at home" in California.

As a result, Plaintiff bears the burden to establish that the Foreign Defendants are subject to specific jurisdiction in this Court, which requires that (1) the foreign defendant "purposefully direct[ed]

his activities or consummate[d] some transaction with the forum or resident thereof," (2) the claim "arises out of or relates to the defendant's forum-related activities," and (3) the exercise of jurisdiction is reasonable. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1027 (N.D. Cal. 2018) (RICO and tort claims require purposeful direction, not purposeful availment, analysis).  Plaintiff asserts two bases for specific jurisdiction over OKC Holdings: (1) its use of third-party servers in California, and (2) its purported control of OKCoin USA.  (Compl. ¶¶ 15-16.)  Neither has merit, nor do Plaintiff's broad and generalized statements as to both Foreign Defendants.

### 1.    OKC Holdings' Use of Third-Party Servers in California Does Not Create a Basis for Specific Jurisdiction

Plaintiff alleges OKC Holdings utilized a cloud computing platform and API service owned by a technology service provider with an IP location based in San Francisco that hosts OKX's website, data, and exchange platform.  (Compl. ¶ 15.)  But this Court has consistently declined to exercise jurisdiction over foreign defendants that simply contract with California technology companies to host their data on servers located in California.  For example, in *Hungerstation LLC v. Fast Choice LLC*, 2020 WL 137160 (N.D. Cal. Jan. 13, 2020), the Court held that it lacked personal jurisdiction over a Saudi Arabian company that allegedly used "California servers and companies to make its apps available in California and in various other countries around the world."  *Id.* at *4.  In so holding, the Court cited a litany of district court cases from this Circuit affirming the rule that the location of third-party servers used by a defendant is insufficient to give rise to personal jurisdiction.  *Id.* at *5 (collecting cases).  If it were enough, "the Northern District of California always would have jurisdiction in any case where a party hosts its data with a Silicon Valley company, even when that company is not a party to the litigation."  *Id*. at *6.  But contrary to Plaintiff's suggestion, "[t]he Northern District of California is not an international court of internet law."  *Id*. (quoting *Doe v. Geller*, 533 F. Supp. 2d 996, 1009 (N.D. Cal. 2008)); *see also WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 671 (N.D. Cal. 2020) (following *Hungerstation*).

### 2.    This Court's Jurisdiction Over OKCoin USA Does Not Give It Personal Jurisdiction Over OKC Holdings

Equally unavailing is Plaintiff's allegation that this Court has personal jurisdiction over OKC

Holdings because it exercised control over its U.S. subsidiary, OKCoin USA. (Compl. ¶¶ 15-16.) To establish personal jurisdiction over a corporate parent through a subsidiary, Plaintiff must at a minimum show "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exists and (2) that failure to disregard their separate identities would result in fraud or injustice." *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1004 (N.D. Cal. 2020). To meet the first prong, a plaintiff "must offer more than labels and conclusions" that there exists a unity of interest. *Id.* at 1005. Rather, "a plaintiff must explain how factual allegations are applicable to the alter ego analysis." *Id.* Relevant factors in the alter-ego inquiry include commingling of funds and other assets, shouldering liability for another entity's debts, identical ownership, use of the same offices and employees, use of one entity as a "mere shell," inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical officers and directors. *Id.* at 1004-05 (citing *MH Pillars Ltd. v. Realini*, 2017 WL 916414, at *12 (N.D. Cal. Mar. 8, 2017)).

*Reynolds* is directly on-point. There, the Court rejected the argument that personal jurisdiction over Binance, another cryptocurrency platform, was proper as an extension of the court's jurisdiction over BAM, Binance's U.S. subsidiary. *Id.* at 1004-09. The plaintiff alleged in his complaint that Binance used BAM as "an agent and instrumentality to continue to serve Binance's U.S. customers, to ensure compliance with U.S. laws, and to serve as Binance's principal physical presence in the U.S." *Id.* at 1004-05. The Court rejected this theory because the complaint contained only a "conclusory statement" regarding unity of interest and could not justify alter-ego jurisdiction. *Id.* at 1005.

Here, like in *Reynolds*, Plaintiff has not offered anything more than a bare conclusory statement regarding an alleged relationship between OKCoin USA and OKC Holdings. (Compl. ¶ 15.) Plaintiff relies solely on the bald assertion that OKC Holdings "utilized its control over OKCoin USA to engage in the wrongdoing alleged herein," but provides no other specific facts, much less facts that support a unity of interest. (*See id.*) This cannot justify exercising specific personal jurisdiction over OKC Holdings under an alter-ego theory. *See Reynolds*, 481 F. Supp. 3d at 1005.

### 3. Plaintiff Cannot Establish Personal Jurisdiction by Citing General Statements of Law

Left with nothing else, Plaintiff offers generalized and boilerplate allegations that personal jurisdiction exists over Defendants collectively because they did business in California, have substantial

1    aggregate contacts with California, are engaging in conduct that has the actual and intended effect of

2    harming persons in California, and have purposefully availed themselves of California law.  (Compl.

3    ¶ 16.)    But, again, Plaintiff "cannot simply rest on the bare allegations of [his] complaint."

4    *Schwarzenegger*, 374 F.3d at 800.  Rather, Plaintiff must put forward affirmative evidence making a

5    prima facie showing that personal jurisdiction is proper.  *See id.*  To do so, Plaintiff must "demonstrate

6    *facts* that if true would support jurisdiction over the defendant."  *Doe v. Unocal Corp.*, 248 F.3d 915,

7    922 (9th Cir. 2001) (emphasis added).  The alleged facts must show that the defendant "1) committed

8    an intentional act, which was 2) expressly aimed at the forum state and 3) caused harm, the brunt of

9    which is suffered and which the defendant knows is likely to be suffered in the forum state."  *DFSB*

10   *Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 880 (N.D. Cal. 2012).

11         Here, Plaintiff has not pled personal jurisdiction with reference to any specific jurisdictional

12   facts about either Foreign Defendant.  (*See* Compl. ¶¶ 15-18.)  Plaintiff alleges that OKX.com could be

13   accessed by U.S.-based users using a VPN, but he makes no specific allegations relating to any

14   California users.  (*Id.* ¶¶ 7, 40, 83-84.)  Nor does he allege any acts by the Foreign Defendants

15   specifically directed at California or any specific harm to any California residents.  (*See generally id.*)

16   While Plaintiff parrots the legal standard for specific jurisdiction (Compl. ¶ 16), *see Schwarzenegger*,

17   374 F.3d at 802, an empty recitation of hornbook law cannot establish personal jurisdiction over the

18   Foreign Defendants.  *See Unocal*, 248 F.3d at 922.  Moreover, even if OKX.com was accessible to

19   California users, that does not establish purposeful direction.  In *DFSB Kollective*, plaintiff argued that

20   defendant had purposefully directed his conduct at California as to warrant specific jurisdiction because

21   he "operated commercial and interactive websites that targeted California residents indiscriminately."

22   897 F. Supp. 2d at 880.  The Court rejected this argument, holding that the fact that defendant's website

23   was interactive and accessible from California was insufficient to support a finding of purposeful

24   direction.  *Id.*  As in *DFSB Collective*, Plaintiff has not set forth sufficient facts to support jurisdiction

25   over the Foreign Defendants, and thus the Court should dismiss the Complaint as against them.

26   **V.    CONCLUSION**

27         For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

28

1    DATED: March 13, 2025

2                                                SKADDEN, ARPS, SLATE,
                                                 MEAGHER & FLOM LLP
3

4                                                */s/ Mark R. S. Foster*
                                                 Mark R. S. Foster
5
                                                 *Attorneys for Defendants*
6                                                *OKCoin USA Inc., Aux Cayes FinTech Co. Ltd., and*
                                                 *OKC Holdings Corporation*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS THE COMPLAINT                    CASE No.: 4:25-cv-00368-JSW