1  MARK R. S. FOSTER (SBN 223682)
   Mark.Foster@skadden.com
2  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   525 University Avenue, Suite 1400
3  Palo Alto, CA 94301
   Telephone:     (650) 470-4500
4  Facsimile:      (650) 470-4570

5  ALEXANDER C. DRYLEWSKI (*pro hac vice*)
   Alexander.Drylewski@skadden.com
6  SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
   One Manhattan West
7  New York, New York 10001
   Telephone:     (212) 735-3000
8  Facsimile:      (917) 777-2129

9  *Attorneys for Defendants*
   *OKCoin USA Inc., Aux Cayes FinTech Co. Ltd.,*
10 *and OKC Holdings Corporation*

11

12                    **UNITED STATES DISTRICT COURT**
                    **NORTHERN DISTRICT OF CALIFORNIA**
13                         **OAKLAND DIVISION**

14
   ALISTER WATT and JAMES SUPPLES,          Case No.: 4:25-cv-00368-JSW
15 Individually and on Behalf of All Others
   Similarly Situated,                       **DEFENDANTS' NOTICE OF**
16                                            **MOTION AND MOTION TO**
                         Plaintiffs,          **DISMISS THE AMENDED CLASS**
17                                            **ACTION COMPLAINT**
           v.
18                                            Date:       July 18, 2025
   OKCOIN USA INC., et al.,                   Time:       9:00 a.m.
19                                            Courtroom:  5
                                              Judge:      Hon. Jeffrey S. White
20
                         Defendants.          Amended Complaint Filed: April 3, 2025
21

22

23

24

25

26

27

28

---

DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT          CASE No.: 4:25-cv-00368-JSW

# NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on July 18, 2025, at 9:00 a.m., in the courtroom of the Hon. Jeffrey Steven White, United States District Judge for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendants OKCoin USA Inc. ("OKCoin USA"), Aux Cayes FinTech Co. Ltd. ("Aux Cayes"), and OKC Holdings Corporation ("OKC Holdings," and together with OKCoin USA and Aux Cayes, "Defendants") will and hereby do move the Court for an order dismissing the Amended Class Action Complaint (ECF No. 25 (the "Amended Complaint" or "AC")) filed by Plaintiffs Alister Watt and James Supples ("Plaintiffs") with prejudice.

Defendants make this Motion pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). It is based on this Notice of Motion and Motion to Dismiss, the Memorandum of Points and Authorities, the record in this action, the arguments of counsel, and any other evidence and argument that this Court may consider. Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety with prejudice and enter judgment in Defendants' favor on each of Plaintiffs' claims.

# STATEMENT OF ISSUES TO BE DECIDED

Whether the Amended Complaint is incurably deficient as a matter of law because:

1. As to the claim for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Amended Complaint still fails to plead (i) that Defendants' conduct was the but-for and proximate cause of Plaintiffs' losses; or (ii) any domestic injury.

2. As to the RICO conspiracy claim, the Amended Complaint still fails to plead a primary RICO violation or that Defendants entered into an agreement to commit a primary RICO violation.

3. As to the claims for conversion and aiding and abetting conversion, the Amended Complaint still fails to plead that Defendants had knowledge of the specific alleged third-party criminal conduct or affirmatively acted to deprive Plaintiffs of their property.

4. The Court lacks personal jurisdiction over OKC Holdings and Aux Cayes.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION TO DISMISS ....................................................... i

STATEMENT OF ISSUES TO BE DECIDED ............................................................... i

TABLE OF AUTHORITIES ......................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

    I.       PRELIMINARY STATEMENT ....................................................... 1

    II.     FACTUAL BACKGROUND ........................................................... 2

    III.    PLAINTIFFS FAIL TO PLEAD BASIC ELEMENTS OF THEIR CLAIMS .......... 4

        A.     Plaintiffs Fail to State a Viable RICO Claim (Count I) ................................. 4

              1.     Plaintiffs Fail to Plead But-For and Proximate Causation .................. 4

              2.     Plaintiffs Fail to Plead Domestic Injury ............................................. 7

              3.     Plaintiffs Fail to Plead a RICO Conspiracy ....................................... 8

        B.     Plaintiffs Fail to State a Conversion Claim (Count II) ................................. 9

        C.     Plaintiffs Fail to State an Aiding and Abetting Conversion Claim (Count III) ........................................................................................................ 10

    IV.    THE COURT LACKS PERSONAL JURISDICTION OVER OKC HOLDINGS AND AUX CAYES ........................................................................................... 11

        A.     RICO Does Not Create a Separate Basis for Personal Jurisdiction Over Foreign Defendants ................................................................................... 11

        B.     Plaintiffs Have Not Established General or Specific Personal Jurisdiction Over the Foreign Defendants .................................................. 12

              1.     The Foreign Defendants' Alleged Use of Third-Party Servers in California Does Not Create a Basis for Specific Jurisdiction ........... 13

              2.     This Court's Jurisdiction Over OKCoin USA Does Not Give It Personal Jurisdiction Over OKC Holdings ....................................... 14

              3.     Plaintiffs Cannot Establish Personal Jurisdiction with Bare Allegations ................................................................................... 15

    V.     CONCLUSION ............................................................................. 15

DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT             CASE No.: 4:25-cv-00368-JSW

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

<u>Page(s)</u>

4

*Adobe Systems Inc. v. Blue Source Group, Inc.*,
5
    125 F. Supp. 3d 945 (N.D. Cal. 2015) ................................................................. 9, 10

6
*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006).............................................................................................. 7
7

8
*Archer v. Coinbase, Inc.*,
    53 Cal. App. 5th 266 (2020) ........................................................................... 9, 10
9

10
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................. 4

11
*Attia v. Google LLC*,
12
    2018 WL 2971049 (N.D. Cal. June 13, 2018) ................................................. 2, 9

13
*Baumer v. Pachl*,
    8 F.3d 1341 (9th Cir. 1993) ............................................................................. 2, 9
14

15
*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................. 4
16

17
*Bray v. Kendall*,
    2010 WL 56181 (N.D. Cal. Jan. 5, 2010) ......................................................... 11

18
*Butcher's Union Local No. 498 v. SDC Investment, Inc.*,
19
    788 F.2d 535 (9th Cir. 1986) ............................................................................. 11

20
*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
21
    2011 WL 1042578 (W.D. Wash. Mar. 18, 2011) .............................................. 12

22
*Casey v. U.S. Bank Natural Ass'n*,
    127 Cal. App. 4th 1138 (2005) .......................................................................... 10
23

24
*In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, & Products Liability Litigation*,
25
    295 F. Supp. 3d 927 (N.D. Cal. 2018) .............................................................. 13

26
*Corcera Solutions, LLC v. Razor, Inc.*,
    2014 WL 587869 (N.D. Cal. Feb. 14, 2014) .................................................... 11
27

28
*DFSB Kollective Co. v. Bourne*,
    897 F. Supp. 2d 871 (N.D. Cal. 2012) .............................................................. 15

iii

*Doe v. Geller*,
    533 F. Supp. 2d 996 (N.D. Cal. 2008) ................................................................. 13

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) ........................................................................... 15

*Doe v. Unocal Corp.*,
    27 F. Supp. 2d 1174 (C.D. Cal. 1998) ............................................................. 12

*Doe v. Walmart Inc.*,
    2019 WL 499754 (N.D. Cal. Feb. 8, 2019) ...................................................... 11

*Duke v. Superior Court*,
    18 Cal. App. 5th 490 (2017) ........................................................................ 9, 10

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) .......................................................................... 4, 7

*Fortaleza v. PNC Financial Services Group, Inc.*,
    642 F. Supp. 2d 1012 (N.D. Cal. 2009) ......................................................... 9, 10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ......................................................................................... 12

*Hemi Group, LLC v. City of New York*,
    559 U.S. 1 (2010) ............................................................................................. 5, 7

*Higgins v. Farr Financial Inc.*,
    2009 WL 3517597 (N.D. Cal. Oct. 26, 2009) ................................................... 10

*Howard v. America Online, Inc.*,
    208 F.3d 741 (9th Cir. 2000) ............................................................................... 8

*Hungerstation LLC v. Fast Choice LLC*,
    2020 WL 137160 (N.D. Cal. Jan. 13, 2020) ..................................................... 13

*Hurtado Lucero v. IRA Services, Inc.*,
    2020 WL 553941 (N.D. Cal. Feb. 3, 2020) ....................................................... 10

*Lang v. Morris*,
    823 F. Supp. 2d 966 (N.D. Cal. 2011) .............................................................. 11

*Licht v. Binance Holdings Ltd.*,
    2025 WL 625303 (D. Mass. Feb. 5, 2025), *report and recommendation adopted*,
    2025 WL 624025 (D. Mass. Feb. 26, 2025) ............................................... 6, 7, 8

*Life Bliss Foundation v. Sun TV Network Ltd.*,
   2014 WL 12589657 (C.D. Cal. Sept. 17, 2014) ................................................ 12

*MH Pillars Ltd. v. Realini*,
   2017 WL 916414 (N.D. Cal. Mar. 8, 2017) ..................................................... 14

*Oki Semiconductor Co. v. Wells Fargo Bank, National Ass'n*,
   298 F.3d 768 (9th Cir. 2002) ........................................................... 1, 5, 6, 7

*Panavision International, L.P. v. Toeppen*,
   141 F.3d 1316 (9th Cir. 1998) ......................................................... 12

*In re Peklar*,
   260 F.3d 1035 (9th Cir. 2001) ......................................................... 9

*Reynolds v. Binance Holdings Ltd.*,
   481 F. Supp. 3d 997 (N.D. Cal. 2020) ................................................. 14

*RJR Nabisco, Inc. v. European Community*,
   579 U.S. 325 (2016) ..................................................................... 1, 7

*S&S Worldwide, Inc. v. Wells Fargo Bank*,
   509 F. Supp. 3d 1154 (N.D. Cal. 2020) ............................................... 10

*Sanford v. MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010) ........................................................... 8

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ..................................................... 13, 15

*Scoggins v. HSBC Bank USA*,
   2015 WL 12670410 (C.D. Cal. Oct. 8, 2015) ................................... 1, 5, 6, 7, 15

*Simi Management Corp. v. Bank of America Corp.*,
   2012 WL 259865 (N.D. Cal. Jan. 27, 2012) ........................................... 10

*WhatsApp Inc. v. NSO Group Technologies Ltd.*,
   472 F. Supp. 3d 649 (N.D. Cal. 2020) ................................................. 13

*Wordtech Systems, Inc. v. Programmer's Paradise, Inc.*,
   1997 WL 638444 (N.D. Cal. Oct. 8, 1997) ............................................. 11

*Yegiazaryan v. Smagin*,
   599 U.S. 533 (2023) ..................................................................... 7, 8

## STATUTES

18 U.S.C. § 1962(c) ....................................................................... 8

18 U.S.C. § 1962(d) ............................................................................................................ 8

18 U.S.C. § 1964(c) ......................................................................................................... 4, 7

18 U.S.C. § 1965(b) ..................................................................................................... 11, 12

18 U.S.C. § 1965(d) .......................................................................................................... 11

**RULES**

Fed. R. Civ. P. 12(b)(2) ..................................................................................................... 11

I.    **PRELIMINARY STATEMENT**[1]

The Amended Complaint is premised on the unsupportable legal theory that Defendants are liable because unidentified third-party criminals stole digital assets from Plaintiffs' accounts at multiple unaffiliated third-party trading platforms and later passed some of those stolen assets through the OKX platform, allegedly to launder them.  Plaintiffs do not assert claims against the thieves or the platforms from which their assets were stolen, but instead pursue RICO and conversion claims against Defendants OKCoin USA, OKC Holdings, and Aux Cayes simply because one of those entities operated the OKX platform that allegedly served as an unwitting "getaway driver."  Plaintiffs do not—and cannot—allege that any Defendant participated in the thefts, was aware of the thefts or subsequent laundering activities, or had any relationship with Plaintiffs at all.  The Amended Complaint is meritless on its face and should be dismissed for multiple independent reasons:

*First*, Plaintiffs' RICO claim fails because Plaintiffs cannot show that Defendants were the "but-for" or "proximate cause" of their losses, as required by Ninth Circuit law.  In *Oki Semiconductor Co. v. Wells Fargo Bank, National Association*, the Ninth Circuit affirmed dismissal of analogous RICO claims against Wells Fargo on the ground that one of its tellers, who later helped launder stolen funds from a robbery, did not cause the victim's losses, emphasizing "[t]he direct and proximate cause of [the plaintiff's] loss was not [the teller]'s money laundering at Wells Fargo; *it was theft*."  298 F.3d 768, 773-74 (9th Cir. 2002); *see also Scoggins v. HSBC Bank USA*, 2015 WL 12670410, at *3 (C.D. Cal. Oct. 8, 2015).  Here, Plaintiffs do not allege that Defendants had anything to do with the theft of Plaintiffs' assets, claiming only that Defendants failed to implement procedures that, in their view, may have disincentivized or prevented bad actors from later attempting to launder stolen assets.  But without well-pleaded facts that Defendants actually participated in the thefts *and* that the criminals would not have committed the thefts but for Defendants' misconduct, Plaintiffs cannot satisfy the but-for and proximate causation requirements to state a RICO claim under Ninth Circuit law.

*Second*, the RICO claim fails in any event because Plaintiffs do not allege a domestic injury to "overcome the presumption against extraterritoriality."  *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 346 (2016).  By Plaintiffs' own account, unidentified hackers stole their assets and deposited a portion

---

[1] Unless noted, all emphasis is added, and all original citations, brackets and internal quotation marks are omitted from quoted material for ease of reading.

DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT                    CASE No.: 4:25-cv-00368-JSW

on OKX.com, an international digital asset platform operated by a foreign company.  That Plaintiffs reside (or at one time resided) in the U.S. cannot alone create a domestic injury under RICO.

*Third*, Plaintiffs fail to plead a RICO conspiracy because they have not articulated a primary RICO violation, much less alleged that Defendants entered into any agreement to commit a substantive RICO offense.  Rather, Plaintiffs claim Defendants failed to prevent money laundering on OKX.com, a theory rooted in nonfeasance that is insufficient as a matter of law.  *Baumer v. Pachl*, 8 F.3d 1341, 1347 (9th Cir. 1993); *Attia v. Google LLC*, 2018 WL 2971049, at *18 (N.D. Cal. June 13, 2018).

*Fourth*, Plaintiffs' claims for conversion and aiding and abetting conversion fail because they cannot allege, as they must, that Defendants had knowledge of the thieves or their thefts, let alone acted affirmatively to deprive Plaintiffs of their property.

*Finally*, even if Plaintiffs stated a viable cause of action (they do not), the Court lacks personal jurisdiction over OKC Holdings and Aux Cayes, two foreign corporations.  RICO's nationwide service of process provision does not confer personal jurisdiction over foreign defendants, and Plaintiffs fail to establish sufficient minimum contacts with California.

In short, Plaintiffs have twice failed under Ninth Circuit law to articulate a viable legal theory or plead basic elements of their claims.  This litigation never should have been filed against these Defendants, and it should end now.  The Amended Complaint should be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

Plaintiff Watt filed his original complaint on January 10, 2025, which Defendants moved to dismiss on March 13, 2025.  Rather than respond to that motion, Plaintiffs filed an Amended Complaint on April 3, 2025, but none of their new allegations cure the pleading deficiencies or alter Plaintiffs' fundamentally flawed theory seeking to hold Defendants liable for alleged conduct after and unrelated to the theft of their assets from third-party trading platforms.

As before, Plaintiffs allege that Defendant OKC Holdings, incorporated in the Cayman Islands, is the parent company to a group of entities that operate the website and app-based digital asset trading platforms known as OKX and OKCoin.  (AC ¶¶ 1, 25; ECF No. 20 ¶ 3.)  Defendant Aux Cayes, incorporated in Seychelles, is a subsidiary of OKC Holdings that operates OKX for certain users located outside the U.S.  (AC ¶ 26; ECF No. 20 ¶ 2.)  The OKX platform is available to users in over 100

1    countries to buy, sell, and hold digital assets.  (AC ¶¶ 1, 43.)

2    Defendant OKCoin USA is a subsidiary of OKC Holdings that operates OKCoin, a separate

3    digital asset platform for users in the U.S.  (AC ¶ 27.)  OKCoin is the only platform within the group of

4    entities that is offered to users in the U.S. and is a licensed money transmitter in dozens of states.  (*Id.*)

5    Plaintiffs do not allege that any of their transactions at issue, any money laundering, or any other

6    relevant conduct occurred on the OKCoin platform.  (*Id.* ¶¶ 7, 17, 124-25.)[2]

7    Plaintiffs are not users of either the OKX or OKCoin platforms.  (AC ¶¶ 21-22.)  Rather, Plaintiff

8    Watt alleges he held accounts with two non-party trading platforms, including one California-based

9    platform, and that in April 2023, third-party hackers stole digital assets from those accounts and

10   eventually deposited a portion into accounts on the OKX platform.  (*Id.* ¶¶ 21, 122-25.)  Plaintiff Supples

11   similarly alleges digital assets were stolen by third-party hackers and later deposited onto the OKX

12   platform in December 2024.  (*Id.* ¶¶ 125, 159.)  To date, Plaintiffs vaguely claim to have been unable

13   to recover "some, if not all," of their stolen digital assets.  (*Id.* ¶ 127.)

14   Plaintiffs do not (and could not) allege that Defendants participated in any way in the thefts, but

15   merely functioned as a "get-away driver" for the thieves.  (*Id.* ¶ 4; *see also id.* ¶ 220.)  Nevertheless,

16   Plaintiffs filed this putative class action asserting claims for RICO violations, conversion, and aiding

17   and abetting conversion.  (*Id.* ¶¶ 10-11.)  The theory underlying their claims is that Defendants failed to

18   block some U.S.-based users from accessing OKX.com, which in turn triggered an obligation under

19   U.S. law to implement certain KYC and AML procedures that were not implemented.  (*Id.* ¶¶ 7, 45-46,

20   119-20.)  According to Plaintiffs, this alleged nonfeasance enabled bad actors—after their thefts—to

21   transfer a portion of Plaintiffs' stolen cryptocurrency through the OKX platform and render it

22   untraceable.  (*Id.* ¶¶ 4, 65, 114-18, 128-30.)

23   The Amended Complaint notes that on February 24, 2025, Aux Cayes waived indictment and

24   pleaded guilty to a one-count Information charging it with operating an unlicensed money transmitting

25   business in the U.S. from 2018 through at least early 2024.  (AC ¶¶ 9, 93-112.)  Aux Cayes was not

26   charged with money laundering.  (*Id.*)  The court imposed the sentence agreed to by the parties, whereby

---

[2] Beginning in late 2024, the OKCoin exchange was rebranded to OKX as part of a global effort to consolidate brands.  (AC ¶¶ 27, 51.)  The OKX-branded exchange offered to users in the U.S. remains a licensed money transmitter in dozens of states.  (*See id.*)  For purposes of this Motion, the U.S. exchange is referred to as OKCoin, the name it used for most of the Class Period.  (*See* AC ¶ 10.)

1   Aux Cayes is paying a penalty and forfeiture.  (*Id.*)  Aux Cayes was credited for its cooperation with

2   the investigation and timely engaging in remedial measures.  (*Id.*)  The charge was against Aux Cayes

3   only; there was no charge—and no allegation in the Amended Complaint—that OKCoin USA violated

4   any laws.  (*See* AC ¶¶ 47, 119-20.)  Rather, Plaintiffs admit OKCoin.com was properly licensed in the

5   U.S. and registered as a money services business with the U.S. Department of Treasury's Financial

6   Crimes Enforcement Network ("FinCEN").  (*Id.* ¶¶ 47, 119.)  Yet Plaintiffs assert OKCoin USA "was

7   an important part of the scheme" because it supposedly served as a "smokescreen and distraction to

8   U.S. regulators so OKX.com could continue servicing U.S.-based customers in violation of the law."

9   (*Id.* ¶¶ 6, 27; *see also id.* ¶ 120.)

10  **III.    PLAINTIFFS FAIL TO PLEAD BASIC ELEMENTS OF THEIR CLAIMS**

11          To survive a motion to dismiss, a plaintiff must plausibly plead facts sufficient to establish every

12  element of its claims.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint must provide "more

13  than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

14  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  If the facts alleged would not "state a claim to

15  relief that is plausible on its face," the action must be dismissed.  *Id.*  If the facts alleged may or may

16  not result in liability, "plaintiffs cannot offer allegations that are merely consistent with their favored

17  explanation but are also consistent with [an] alternative explanation.  Something more is needed, such

18  as facts tending to exclude the possibility that the alternative explanation is true."  *Eclectic Props. E.,*

19  *LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014).  The Amended Complaint still

20  fails as a matter of law to adequately plead any claim for: (1) civil RICO violations; (2) conversion; and

21  (3) aiding and abetting conversion.  (AC ¶¶ 176-223.)

22          **A.    Plaintiffs Fail to State a Viable RICO Claim (Count I)**

23                  **1.    Plaintiffs Fail to Plead But-For and Proximate Causation**

24          RICO provides a private right of action for "[a]ny person injured in his business or property *by*

25  *reason of* a violation of section 1962 of this chapter."  18 U.S.C. § 1964(c) (emphasis added).  This

26  means that Defendants' RICO predicate offense must be both the "but-for" and "proximate cause" of

27  Plaintiffs' loss—distinct elements requiring that an alleged injury "would not have happened" but for

28  Defendants' alleged conduct and also that there is a "'direct relationship' between the injury asserted

and the injurious conduct alleged." *Oki Semiconductor*, 298 F.3d at 773; *Scoggins*, 2015 WL 12670410, at *2-3; *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010) ("[T]he plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well . . . . A link that is too remote, purely contingent, or indirect is insufficient."). Plaintiffs cannot show either form of causation.

The Ninth Circuit's decision in *Oki Semiconductor* is squarely on-point and forecloses Plaintiffs' claim. 298 F.3d at 774. There, the plaintiff was a victim of an armed robbery whereby thieves stole $9 million worth of semiconductors and laundered the proceeds via bank accounts at Wells Fargo. *Id.* at 771. The plaintiff alleged a Wells Fargo employee established numerous bank accounts in the names of fictitious entities to assist in laundering the proceeds, and on that basis asserted that Wells Fargo was liable under RICO "because it reaped benefits from [its employee's] activities by obtaining numerous new accounts and receiving millions of dollars in deposits." *Id.* at 772. The Ninth Circuit rejected this theory as a matter of law: "The direct and proximate cause of Oki's loss was not [the employee]'s money laundering at Wells Fargo; *it was theft*. Only *after* the theft occurred and the semiconductors were sold could [the employee] launder the proceeds." *Id.* at 774 (emphasis added). Highlighting the point, the Court explained that even if the Wells Fargo employee "knew about the robbery or indirectly provided support for it (or theoretically, that she packed sandwiches to feed the thieves) does not mean her actions at Wells Fargo directly caused the theft." *Id.*

Following *Oki Semiconductor*, courts have held under similar circumstances that a party that merely receives stolen funds—as a "get-away driver" (AC ¶ 4)—is not liable under RICO. In *Scoggins*, the plaintiffs brought a class action on behalf of people who had their money "wrongfully taken by a Los Angeles street gang" and then "deposited into accounts at HSBC." 2015 WL 12670410, at *1. The plaintiffs alleged that "HSBC took part in the conspiracy by its willful actions to launder the money it received." *Id.* The court held that "*Oki Semiconductor* clearly governs these allegations" and dismissed *without* leave to amend plaintiffs' claim for lack of proximate causation:

> Plaintiffs' allegations show, at most, a remote connection between HSBC and Plaintiffs' purported injuries. *Members of a Los Angeles street gang, not HSBC, proximately caused the injuries to Plaintiffs*, namely the theft of money and property. Plaintiffs make no attempt to allege that HSBC employees directly stole property or that HSBC controlled the activities of gang members. Rather, HSBC's connection extends only to the fact that it was the bank where gang members deposited money.

*Id.* at *2-3 (holding leave to amend "would be futile because Ninth Circuit authority forecloses Plaintiff's allegations of proximate cause"). The *Scoggins* court separately concluded that the plaintiffs failed to plead but-for causation because they "fail[ed] to establish that, absent HSBC's actions, the gang members would not have committed the underlying offenses. To put it another way, even if HSBC were not in the picture, the gang members may still have stolen from Plaintiffs and then deposited the proceeds from their criminal activity elsewhere." *Id.* at *3.

Likewise, in *Licht v. Binance Holdings*, victims of cryptocurrency scams brought RICO claims against operators of the Binance.com and Binance.US platforms, alleging they willfully failed to comply with U.S. laws thereby allowing scammers to use Binance.com to launder plaintiffs' stolen assets and "cash[] out." 2025 WL 625303, at *1 (D. Mass. Feb. 5, 2025), *report and recommendation adopted*, 2025 WL 624025 (D. Mass. Feb. 26, 2025). The court rejected plaintiffs' RICO claims for failure to plead causation, holding—consistent with *Oki* and *Scoggins*—that "plaintiffs were the immediate victim of the scammers' . . . schemes, and the scammers are not defendants." *Id.* at *41.

*Oki, Scoggins*, and *Licht* foreclose Plaintiffs' same theory here. Plaintiffs do not allege that Defendants participated in the thefts or were even aware of the thefts, claiming instead that they were harmed through a Rube-Goldberg-esque series of attenuated events: Defendants failed to register OKX in the U.S. as a money transmitting business, which meant it failed to implement anti-money laundering protocols, which meant it may have unknowingly processed transactions by suspicious individuals, which could have included some or all of the transactions through which third-party hackers laundered Plaintiffs' money *after* committing crimes against them on third-party trading platforms. This chain of events does not come close to satisfying the direct or proximate causation requirements. To the contrary, it confirms the "direct and proximate cause of [Plaintiffs'] loss was not [the] money laundering; it was theft." *Scoggins*, 2015 WL 12670410, at *2; *Oki Semiconductor*, 298 F.3d at 774.[3] Indeed, the link to Plaintiffs' injuries is even weaker than the facts before the Ninth Circuit in *Oki Semiconductor*, where the Wells Fargo teller was alleged to have actively and knowingly participated in the laundering. Plaintiffs here do not allege any Defendant had knowledge of the hackers' criminal activities—only that

---

[3] Plaintiffs' theory is even weaker as to Plaintiff Supples, whose assets were allegedly laundered in December 2024 (AC ¶ 159), after OKX implemented additional KYC and AML procedures. (AC ¶ 96 (referencing DOJ press release: https://www.justice.gov/usao-sdny/pr/okx-pleads-guilty-violating-us-anti-money-laundering-laws-and-agrees-pay-penalties).)

DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT          CASE No.: 4:25-cv-00368-JSW

they were aware that some OKX users did not provide KYC information. (AC ¶¶ 45, 100-03, 110.) Plaintiffs' own analogy to Defendants "'driving the getaway car' for the cryptocurrency thieves" (*id.* ¶ 220) underscores the fatal flaw in their theory: A getaway car driven by one not involved in the preceding theft, like a taxi driver hailed by the thieves to flee the scene, is not the cause of a victim's losses. *See Oki Semiconductor*, 298 F.3d at 774 ("[T]hese allegations suggest, at most, that [the teller] laundered the proceeds *after* the Conspiracy stole the semiconductors and sold them."); *Licht*, 2025 WL 625303, at *39 n.52 ("[T]he salient fact is that the money laundering occurred after the theft.").[4]

Plaintiffs' futile attempt to plead causation is reinforced by the fact that they could not possibly show, as required for "but for" causation, that their alleged injuries "would not have happened but for" Defendants' misconduct—that is, "even if [Defendants] were not in the picture, the [criminals] may still have stolen from Plaintiffs and then deposited the proceeds from their criminal activities elsewhere." *E.g.*, *Scoggins*, 2015 WL 12670410, at *3; *Licht*, 2025 WL 625303, at *38. Tellingly, Plaintiffs' own counsel has filed identical lawsuits against other digital asset trading platforms asserting they *also* acted as "get-away driver[s]" for criminals to launder cryptocurrency due to deficient AML and KYC protocols—including one on behalf of Plaintiff Supples. Compl. at ¶ 3, *Martin v. Binance Holdings, Ltd.*, No. 2:24-cv-01264-BJR (W.D. Wash. filed Aug. 16, 2024); Am. Compl. at ¶ 3, *Reca v. Flashdot Ltd.*, No. 1:24-cv-06316-GHW-SLC (S.D.N.Y. filed April 14, 2025) (naming Supples).

## 2. Plaintiffs Fail to Plead Domestic Injury

The RICO claim also should be dismissed because Plaintiffs cannot allege "a domestic injury to business or property" to "overcome the presumption against extraterritoriality." 18 U.S.C. § 1964(c); *RJR Nabisco*, 579 U.S. at 346; *Eclectic Props.*, 751 F.3d at 996-97. "[C]ourts should look to the circumstances surrounding the alleged injury to assess whether it arose in the United States," including "the nature of the alleged injury, the racketeering activity that directly caused it, and the injurious aims and effects of that activity." *Yegiazaryan v. Smagin*, 599 U.S. 533, 543-45 (2023).

Here, Plaintiffs' assets were allegedly stolen by third-party hackers from multiple unidentified third-party platforms, only one of which is alleged to have been based in the U.S. (AC ¶¶ 122-25.) The

---

[4] That the U.S. government has already charged Aux Cayes with operating an unlicensed money transmitting business also weighs against proximate causation. *See Hemi Grp.*, 559 U.S. at 12 (New York was better positioned to sue as direct victim of tax fraud); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458-61 (2006) (same).

location of the hackers is unpled, but the Amended Complaint offers no reason to believe the thieves were located in the U.S. or specifically targeted American victims.  (*See id.* ¶¶ 7, 21-22, 122-25); *Licht*, 2025 WL 625303, at *41-42 (no domestic injury where unknown hackers laundered digital assets on an exchange operated by a foreign corporation, with no evidence of targeting U.S.-based victims).  The hackers deposited Plaintiffs' stolen assets on OKX.com, an international digital asset platform with millions of users in over 100 countries and operated by Aux Cayes, a Seychelles corporation.  (*Id.* ¶¶ 17, 26, 43, 114, 116.)  Plaintiffs do not allege that any of their funds were deposited onto OKCoin.com, the separate domestic platform for U.S.-based users.  (*See id.* ¶¶ 17, 47-48, 113-20.)  And the fact that Plaintiffs resided in the U.S. at the time their assets were stolen (*id.* ¶¶ 21-22) cannot alone establish a domestic injury.  *E.g.*, *Licht*, 2025 WL 625303, at *42; *Yegiazaryan*, 599 U.S. at 543 (rejecting "a bright-line rule . . . that locates a plaintiff's injury at the plaintiff's residence").

### 3.      Plaintiffs Fail to Plead a RICO Conspiracy

A RICO conspiracy claim under § 1962(d) requires a plaintiff first to adequately plead a substantive RICO violation under § 1962(c).  *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) (affirming dismissal of § 1962(d) conspiracy claim because "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO").  Because Plaintiffs cannot do so (*see supra* Sections III.A.1-2), any attempt to plead a separate RICO conspiracy claim necessarily fails too.  (*See* AC ¶¶ 176-97.)

Further, a RICO conspiracy claim would fail because Plaintiffs do not—and cannot—allege "an agreement that is a substantive violation of RICO or that [Defendants] agreed to commit, or participated in, a violation of two predicate offenses."  *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).  To be liable for a RICO conspiracy, defendants "must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense," and "must also have been aware of the essential nature and scope of the enterprise and intended to participate in it."  *Id.*  The Amended Complaint is devoid of facts demonstrating that Defendants agreed to participate in any scheme at all, let alone a money laundering scheme.  To the contrary, Plaintiffs admit OKCoin USA *complied with* U.S. laws by properly registering as a money services business with FinCEN.  (*Id.* ¶¶ 47, 119-20.)  And Plaintiffs do not explain how OKC Holdings, a parent company that does not operate

1    either the OKX or OKCoin platform, was aware of the alleged money laundering scheme on OKX.com.

2    (*See id.* ¶¶ 25-27.)  As to Aux Cayes, the Amended Complaint contains no specific factual allegations

3    to suggest it agreed to participate in any money laundering scheme.  At most, Plaintiffs allege that it

4    "enabl[ed]" money laundering by failing to require KYC information—not that it participated in a

5    scheme, much less in concert with the other Defendants.  (*Id.* ¶ 118.)  Such thin allegations fall far short

6    of supporting a RICO conspiracy claim.  *See Attia*, 2018 WL 2971049, at *18 (plaintiff must "allege

7    plausible facts suggesting that Defendants were aware of the essential nature and scope of the RICO

8    scheme, and otherwise agreed to participate in a scheme that meets RICO's substantive requirements");

9    *Baumer*, 8 F.3d at 1347 ("[T]he bare allegations of the complaint provide no basis to infer assent to

10   contribute to a common enterprise.").

11                **B.    Plaintiffs Fail to State a Conversion Claim (Count II)**

12           To state a claim for conversion, a plaintiff must adequately allege that each defendant "acted

13   intentionally to wrongfully dispose of the property of another."  *Duke v. Superior Ct.*, 18 Cal. App. 5th

14   490, 508 (2017); *see also In re Peklar*, 260 F.3d 1035, 1037 (9th Cir. 2001).  Critically, "[c]onversion

15   requires affirmative action to deprive another of property, *not a lack of action*."  *Archer v. Coinbase

16   Inc.*, 53 Cal. App. 5th 266, 276 (2020).

17           Here, Plaintiffs have not pled that Defendants knowingly or intentionally took affirmative action

18   to wrongfully dispose of Plaintiffs' digital assets.  Two of the Defendants, OKCoin USA and OKC

19   Holdings, are not alleged to have even operated the OKX platform through which the thieves transferred

20   a portion of Plaintiffs' stolen assets.  (AC ¶¶ 25-27.)  While the Amended Complaint vaguely alleges

21   that "Defendants" collectively failed to implement adequate KYC and AML procedures (*see id.* ¶¶ 52,

22   60-69), Plaintiffs cannot simply lump all "Defendants" together under one undifferentiated umbrella.

23   *See Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F. Supp. 2d 1012, 1022 (N.D. Cal. 2009) (rejecting

24   conversion claim because plaintiff "d[id] not allege any specific act against any specific defendant" or

25   "identify[] which defendant [was] responsible for her alleged injuries"); *see also Adobe Sys. Inc. v. Blue

26   Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) ("[A] plaintiff must identify what action

27   each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against

28   Defendants as a whole.").  As to Aux Cayes, the operator of the OKX platform, Plaintiffs do not allege

1    it had any awareness of Plaintiffs' stolen assets or the thieves' use of OKX.com to launder their assets.

2    (*See, e.g.*, AC ¶¶ 122-25.)  Rather, Plaintiffs' theory is that Aux Cayes generally failed to implement

3    adequate KYC and AML procedures, thereby enabling bad actors to transfer stolen assets into accounts

4    they purportedly controlled on the OKX platform.  (*Id.* ¶¶ 113-18.)  Alleged "lack of action," however,

5    cannot underpin a conversion claim requiring knowledge and affirmative conduct to deprive Plaintiffs

6    of their property.  *Archer*, 53 Cal. App. 5th at 276; *Duke*, 18 Cal. App. 5th at 508.[5]

7         ## C.    Plaintiffs Fail to State an Aiding and Abetting Conversion Claim (Count III)

8         Plaintiffs' aiding and abetting conversion claim likewise fails because the Amended Complaint

9    does not allege that any Defendant had "actual knowledge" of the "specific primary wrong the defendant

10   substantially assisted"—i.e., the hackers' alleged thefts and subsequent money laundering.  *Hurtado*

11   *Lucero v. IRA Servs., Inc.*, 2020 WL 553941, at *4 (N.D. Cal. Feb. 3, 2020) (quoting *Casey v. U.S. Bank*

12   *Nat. Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005)).  "Suspicion and surmise do not constitute actual

13   knowledge," nor do "[g]eneral allegations [that] the defendant knew the principal wrongdoers were

14   involved in wrongful or illegal conduct."  *Id.*

15        Here, Plaintiffs do not allege that any Defendant had actual knowledge of the thefts or money

16   laundering committed by the thieves.  (*See* AC ¶¶ 113-20, 128-30.)  OKCoin USA and OKC Holdings

17   did not operate the OKX platform (*see id.* ¶¶ 25-27), nor are they alleged to have had any knowledge

18   of the transactions involving Plaintiffs' funds.  *See Fortaleza*, 642 F. Supp. 2d at 1022; *Adobe*, 125 F.

19   Supp. 3d at 964.  Although Plaintiffs vaguely assert that "Defendants" were generally aware that some

20   bad actors conducted illicit transactions on OKX.com (Compl. ¶¶ 117-20), this cannot suffice to plead

21   "actual knowledge of the specific wrongdoing for which [Plaintiffs] seek[] to hold [Defendants] liable."

22   *S&S Worldwide, Inc. v. Wells Fargo Bank*, 509 F. Supp. 3d 1154, 1165 (N.D. Cal. 2020) (dismissing

23   claim for aiding and abetting conversion where Wells Fargo Bank only "knew *something* fishy was

24   going on with the account"); *Simi Mgmt. Corp. v. Bank of Am. Corp.*, 2012 WL 259865, at *4 (N.D.

25   Cal. Jan. 27, 2012) ("These statements heavily imply that BofA knew that [the CFO] was committing

26   ────────────────

27   [5] Plaintiffs' bald assertion that "[a]t all relevant times, the Count II Defendants had actual or
     constructive knowledge that cryptocurrency stolen from Plaintiffs and the members of the Class had
     been transferred to accounts on OKX.com's exchange" (AC ¶ 204) is plainly insufficient.  *See, e.g.*,

28   *Higgins v. Farr Fin. Inc.*, 2009 WL 3517597, at *1 (N.D. Cal. Oct. 26, 2009) ("Conclusory allegations
     without more are insufficient to defeat a motion to dismiss for failure to state a claim upon which relief
     may be granted.").

DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT          CASE No.: 4:25-cv-00368-JSW

1   embezzlement and conversion, but stop short of the required direct assertion that BofA had actual

2   knowledge of [his] specific wrongdoing and helped him carry it out.").

3   **IV.   THE COURT LACKS PERSONAL JURISDICTION OVER OKC HOLDINGS AND AUX CAYES**

4

5       Federal Rule of Civil Procedure 12(b)(2) requires that a court dismiss defendants over which it

6   lacks personal jurisdiction.  Plaintiffs, "as the part[ies] seeking to invoke the jurisdiction of the federal

7   court, ha[ve] the burden of establishing that jurisdiction exists." *Corcera Sols., LLC v. Razor, Inc.*, 2014

8   WL 587869, at *1 (N.D. Cal. Feb. 14, 2014).  "Mere 'bare bones' assertions of minimum contacts with

9   the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's

10  pleading burden." *Lang v. Morris*, 823 F. Supp. 2d 966, 969-70 (N.D. Cal. 2011).  Here, Plaintiffs have

11  not met their burden as to OKC Holdings and Aux Cayes (the "Foreign Defendants").  OKC Holdings

12  is a company incorporated in the Cayman Islands, and Aux Cayes, a subsidiary of OKC Holdings, is a

13  Seychelles registered company.  (ECF No. 20 ¶¶ 2-3; Compl. ¶¶ 25-26.)  Plaintiffs have failed to

14  establish that this Court has general or specific jurisdiction over either entity.

15      **A.   RICO Does Not Create a Separate Basis for Personal Jurisdiction Over Foreign Defendants**

16      As an initial matter, Plaintiffs wrongly assert that this Court has personal jurisdiction over

17  Defendants under RICO's nationwide service of process provision.[6]  (AC ¶ 15.)  Contrary to Plaintiffs'

18  position, this provision does not create personal jurisdiction even over foreign RICO defendants that

19  have minimum contacts with the U.S. as a whole.  (*Id.* (alleging Defendants "conduct a substantial

20  portion of their business" in the U.S.).)  Section 1965(b) provides that:

21          (b) In any action under section 1964 of this chapter in any district court of the United States
            in which it is shown that the ends of justice require that other parties residing in any other
22          district be brought before the court, the court may cause such parties to be summoned, and
            process for that purpose may be served in any judicial district of the United States by the
23          marshal thereof.

24  18 U.S.C. § 1965(b).  Courts have held that § 1965(b) does not provide a basis for personal jurisdiction

25

26  [6] Contrary to Plaintiffs' assertion (AC ¶ 15), under Ninth Circuit law, only § 1965(b)—not (d)—could
    provide a basis for personal jurisdiction.  *See Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d
27  535, 538-39 (9th Cir. 1986).  While § 1965(d) has been interpreted by other circuits as providing a basis
    for personal jurisdiction, that interpretation is contrary to Ninth Circuit precedent and has been
28  consistently rejected by this Court.  *E.g.*, *Bray v. Kendall*, 2010 WL 56181, at *4 (N.D. Cal. Jan. 5,
    2010); *Doe v. Walmart Inc.*, 2019 WL 499754, at *7 (N.D. Cal. Feb. 8, 2019); *Wordtech Sys., Inc. v.
    Programmer's Paradise, Inc.*, 1997 WL 638444, at *2-3 (N.D. Cal. Oct. 8, 1997).

DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT                    CASE NO.: 4:25-cv-00368-JSW

over foreign RICO defendants.  In *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174 (C.D. Cal. 1998), the court explicitly rejected the plaintiffs' argument that personal jurisdiction existed over a French RICO defendant-corporation because of its minimum contacts with the U.S. pursuant to § 1965(b).  *Id.* at 1182-84.  Instead, the court held that the plaintiffs "must rely on the traditional minimum contacts analysis associated with service of process under California's long-arm statute." *Id.* at 1184.  The court reasoned that the "national contacts" test for a RICO defendant only applies where that defendant has been served in the U.S. under RICO's nationwide service provision.  *Id.* at 1182.  Thus, because a foreign RICO defendant cannot be served under § 1965(b), a plaintiff cannot rely on that defendant's contacts with the U.S. to establish personal jurisdiction.  Other district courts in the Ninth Circuit have explicitly endorsed the *Unocal* approach and refused to allow plaintiffs to rely on § 1965(b) to establish personal jurisdiction over foreign RICO defendants.  *See, e.g.*, *Life Bliss Found. v. Sun TV Network Ltd.*, 2014 WL 12589657, at *9 n.3 (C.D. Cal. Sept. 17, 2014) (holding plaintiffs had to rely on a minimum contacts analysis, not RICO's service provisions, to establish personal jurisdiction over Indian citizens); *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 1042578, at *1 (W.D. Wash. Mar. 18, 2011) ("[Section 1965(b)] does not authorize service outside the United States, and indeed, a defendant served outside the United States is not subject to RICO jurisdiction.").  Because the Foreign Defendants are incorporated in the Cayman Islands and Seychelles, they are not subject to nationwide service—nor personal jurisdiction—under RICO.  *Unocal*, 27 F. Supp. 2d at 1182-84.

### B.     Plaintiffs Have Not Established General or Specific Personal Jurisdiction Over the Foreign Defendants

Because RICO's nationwide service of process provision is inapplicable here, California law governs personal jurisdiction.  *See Panavision Int'l., L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  Under California's long-arm statute, a court may exercise personal jurisdiction over defendants to the extent permissible under the Due Process Clause of the Constitution.  *Id*.  A court may assert general or specific jurisdiction over foreign defendants.  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  General jurisdiction exists where defendants' "affiliations with the State are so continuous and systematic as to render them essentially at home" in California.  *Id*. Plaintiffs do not allege this Court has general jurisdiction over OKC Holdings or Aux Cayes.  (AC ¶¶ 15-19.)  Nor could they, as neither is "essentially at home" in California.

As a result, Plaintiffs bear the burden to establish that the Foreign Defendants are subject to specific jurisdiction in this Court, which requires that (1) the foreign defendant "purposefully direct[ed] his activities or consummate[d] some transaction with the forum or resident thereof," (2) the claim "arises out of or relates to the defendant's forum-related activities," and (3) the exercise of jurisdiction is reasonable. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1027 (N.D. Cal. 2018) (RICO and tort claims require purposeful direction, not purposeful availment, analysis). Plaintiffs assert three meritless grounds for specific jurisdiction over the Foreign Defendants: (1) their use of third-party servers in California, (2) OKC Holdings' purported control of OKCoin USA, and (3) unsupported conclusory allegations. (AC ¶¶ 17-18.)

### 1. The Foreign Defendants' Alleged Use of Third-Party Servers in California Does Not Create a Basis for Specific Jurisdiction

Plaintiffs allege the Foreign Defendants utilized a cloud computing platform and API service owned by a technology service provider with an IP location based in San Francisco that hosts OKX's website, data, and exchange platform. (AC ¶ 17.) But this Court has consistently declined to exercise jurisdiction over foreign defendants that simply contract with California technology companies to host their data on servers located in California. For example, in *Hungerstation LLC v. Fast Choice LLC,* 2020 WL 137160 (N.D. Cal. Jan. 13, 2020), the Court held that it lacked personal jurisdiction over a Saudi Arabian company that allegedly used "California servers and companies to make its apps available in California and in various other countries around the world." *Id.* at *4. The Court cited a litany of district court cases from this Circuit affirming the rule that the location of third-party servers used by a defendant is insufficient to give rise to personal jurisdiction. *Id.* at *5 (collecting cases). If it were enough, "the Northern District of California always would have jurisdiction in any case where a party hosts its data with a Silicon Valley company, even when that company is not a party to the litigation." *Id*. at *6. But contrary to Plaintiffs' suggestion, "[t]he Northern District of California is not an international court of internet law." *Id*. (quoting *Doe v. Geller*, 533 F. Supp. 2d 996, 1009 (N.D. Cal. 2008)); *see also WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 671 (N.D. Cal. 2020).

1

### 2. This Court's Jurisdiction Over OKCoin USA Does Not Give It Personal Jurisdiction Over OKC Holdings

2

Equally unavailing is Plaintiffs' allegation that this Court has personal jurisdiction over OKC

3

Holdings because it exercised control over its U.S. subsidiary, OKCoin USA. (AC ¶¶ 17-18.) To

4

establish personal jurisdiction over a corporate parent through a subsidiary, Plaintiffs at a minimum

5

must show "(1) that there is such unity of interest and ownership that the separate personalities of the

6

two entities no longer exists and (2) that failure to disregard their separate identities would result in

7

fraud or injustice." *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1004 (N.D. Cal. 2020).

8

To meet the first prong, a plaintiff "must offer more than labels and conclusions" that there exists a

9

unity of interest. *Id.* at 1005. Rather, "a plaintiff must explain how factual allegations are applicable to

10

the alter ego analysis." *Id.* Relevant factors in the alter-ego inquiry include commingling of funds and

11

other assets, shouldering liability for another entity's debts, identical ownership, use of the same offices

12

and employees, use of one entity as a "mere shell," inadequate capitalization, disregard of corporate

13

formalities, lack of segregation of corporate records, and identical officers and directors. *Id.* at 1004-

14

05 (citing *MH Pillars Ltd. v. Realini*, 2017 WL 916414, at *12 (N.D. Cal. Mar. 8, 2017)).

15

*Reynolds* is directly on-point. There, the Court rejected the argument that personal jurisdiction

16

over Binance, another cryptocurrency platform, was proper as an extension of the court's jurisdiction

17

over BAM, Binance's U.S. subsidiary. *Id.* at 1004-09. The plaintiff alleged in his complaint that

18

Binance used BAM as "an agent and instrumentality to continue to serve Binance's U.S. customers, to

19

ensure compliance with U.S. laws, and to serve as Binance's principal physical presence in the U.S."

20

*Id.* at 1004-05. The Court rejected this theory because the complaint contained only a "conclusory

21

statement" regarding unity of interest and could not justify alter-ego jurisdiction. *Id.* at 1005.

22

Here, as in *Reynolds*, Plaintiffs have not offered anything more than bare conclusory statements

23

regarding an alleged relationship between OKCoin USA and OKC Holdings. (AC ¶ 17-18, 25.)

24

Plaintiffs baldly asserts that OKC Holdings "utilized its control over OKCoin USA to engage in the

25

wrongdoing alleged herein," but provide no other specific facts, much less facts that support a unity of

26

interest. (*See id.*) This cannot justify exercising specific personal jurisdiction over OKC Holdings

27

under an alter-ego theory. *See Reynolds*, 481 F. Supp. 3d at 1005.

28

DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT                    CASE No.: 4:25-cv-00368-JSW

### 3.    Plaintiffs Cannot Establish Personal Jurisdiction with Bare Allegations

Finally, Plaintiffs' fact-free boilerplate based largely "upon information and belief" (*see* AC ¶¶ 17-18) is insufficient to establish specific jurisdiction. *E.g.*, *Schwarzenegger*, 374 F.3d at 800 (plaintiffs "cannot simply rest on the bare allegations of [their] complaint"). Plaintiffs must make a prima facie showing that specific personal jurisdiction is proper, including with well-pleaded "*facts* that if true would support jurisdiction over the defendant." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (emphasis added). Those alleged facts must show the defendant "1) committed an intentional act, which was 2) expressly aimed at the forum state and 3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 880 (N.D. Cal. 2012).

Here, Plaintiffs fall far short of meeting this jurisdictional threshold. They have not pled any specific facts showing that either Foreign Defendant purposefully directed conduct at California. (*See* AC ¶¶ 17-20.) Although Plaintiffs parrot the legal test for specific jurisdiction (*Id.* ¶ 18), *see Schwarzenegger,* 374 F.3d at 802, an empty recitation of hornbook law not backed by well-pleaded facts of course cannot establish personal jurisdiction over the Foreign Defendants. *See Unocal*, 248 F.3d at 922. Moreover, that OKX.com was accessible to California users does not establish purposeful direction. In *DFSB Kollective*, plaintiff argued that defendant had purposefully directed his conduct at California as to warrant specific jurisdiction because he "operated commercial and interactive websites that targeted California residents indiscriminately." 897 F. Supp. 2d at 880. The court rejected this argument, holding that the fact that defendant's website was interactive and accessible from California was insufficient to support a finding of purposeful direction. *Id.* As in *DFSB Kollective*, Plaintiffs have not set forth sufficient facts to support jurisdiction over the Foreign Defendants, and thus the Court should dismiss the Amended Complaint as against them.

### V.    **CONCLUSION**

No amount of further pleading, short of "dramatically changing their factual allegations through amendment, which is not permitted," could salvage Plaintiffs' claims and futile theory of liability against Defendants. *See Scoggins*, 2015 WL 12670410, at *3. The Amended Complaint is incurably flawed and should be dismissed with prejudice.

1

2   DATED: April 25, 2025

3                                              SKADDEN, ARPS, SLATE,
                                               MEAGHER & FLOM LLP

4

5                                              */s/ Mark R. S. Foster*
                                               Mark R. S. Foster

6                                              *Attorneys for Defendants*
                                               *OKCoin USA Inc., Aux Cayes FinTech Co. Ltd., and*
7                                              *OKC Holdings Corporation*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT          CASE No.: 4:25-cv-00368-JSW