1   ROBBINS GELLER RUDMAN
        & DOWD LLP
2   ERIC I. NIEHAUS (239023)
    655 West Broadway, Suite 1900
3   San Diego, CA  92101
    Telephone:  619/231-1058
4   ericn@rgrdlaw.com

5   Attorneys for Plaintiffs

6   [Additional counsel appear on signature page.]

7
                    UNITED STATES DISTRICT COURT
8
                   NORTHERN DISTRICT OF CALIFORNIA
9
                          OAKLAND DIVISION
10

11  ALISTER WATT, and JAMES SUPPLES,      )   Case No. 4:25-cv-00368-JSW
    Individually and on Behalf of All Others )
12  Similarly Situated,                   )   CLASS ACTION
                                          )
13                          Plaintiffs,   )   PLAINTIFFS' OPPOSITION TO
                                          )   DEFENDANTS' MOTION TO DISMISS
14          vs.                           )   THE AMENDED COMPLAINT
                                          )
15  OKCOIN USA INC., OKC HOLDINGS         )   Date:       July 18, 2025
    CORPORATION, and AUX CAYES            )   Time:       9:00 a.m.
16  FINTECH CO. LTD.,                     )   Courtroom:  5
                                          )   Judge:      Hon. Jeffrey S. White
17                          Defendants.   )
                                          )   Amended Complaint Filed: April 3, 2025
18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ........................................................................1

        A.      The OKX Crypto-Wash Enterprise....................................................1

        B.      The Laundering of their Stolen Crypto at OKX Injured Plaintiffs ........................3

II.     LEGAL STANDARD ON A MOTION TO DISMISS ...................................3

III.    PLAINTIFFS ADEQUATELY ALLEGE A RICO VIOLATION ....................4

        A.      The AC Satisfies Each RICO Element .............................................4

        B.      Defendants' RICO Causation Arguments Are Without Merit................................6

        C.      Plaintiffs Have Sufficiently Pled Domestic Injury .................................8

        D.      Plaintiffs Adequately Plead a RICO Conspiracy ...................................8

IV.     PLAINTIFFS ADEQUATELY STATE A CLAIM FOR CONVERSION ........................9

V.      PLAINTIFFS ADEQUATELY STATE A CLAIM FOR AIDING AND
        ABETTING CONVERSION.........................................................................10

VI.     THE COURT HAS PERSONAL JURISDICTION OVER OKC HOLDINGS
        AND AUX CAYES ....................................................................................11

        A.      RICO Creates a Separate Basis for Personal Jurisdiction Over OKC
                Holdings and Aux Cayes ...............................................................12

        B.      Plaintiffs Have Established General and Specific Personal Jurisdiction
                Over OKC Holdings and Aux Cayes Pursuant to California's Long Arm
                Statute .........................................................................................13

                1.      The Foreign Defendants' Use of Servers in California Supports a
                        Basis for Personal Jurisdiction...................................................13

                2.      This Court's Jurisdiction Over OKCoin USA Supports a Basis for
                        Personal Jurisdiction Over OKC Holdings .................................14

                3.      Plaintiffs Offer More than Bare Allegations to Establish Personal
                        Jurisdiction..................................................................................15

VII.    CONCLUSION ........................................................................................15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Adobe Sys. Inc. v. Blue Source Grp., Inc.,*
  125 F. Supp. 3d 945 (N.D. Cal. 2015) ...................................................................10

*Archer v. Coinbase Inc.,*
  53 Cal. App. 5th 266 (2020) ...................................................................................10

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).................................................................................................4

*Attia v. Google LLC,*
  2018 WL 2971049
  (N.D. Cal. June 13, 2018) ........................................................................................9

*Baumer v. Pachl,*
  8 F.3d 1341 (9th Cir. 1993) .....................................................................................9

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 554 (2007).................................................................................................4

*Bhatia v. Silvergate Bank,*
  725 F. Supp. 3d 1079 (S.D. Cal. 2024) ..................................................................11

*Bridge v. Phoenix Bond & Indem. Co.,*
  553 U.S. 639 (2008).................................................................................................8

*Briskin v. Shopify, Inc.,*
  135 F.4th 739 (9th Cir. 2025) ................................................................................13

*Butcher's Union Local No. 498 v. SDC Inv., Inc.,*
  788 F.2d 535 (9th Cir. 1986) .................................................................................13

*Cascade Yarns, Inc. v. Knitting Fever, Inc.,*
  2011 WL 1042578
  (W.D. Wash. Mar. 18, 2011) .................................................................................12

*Casey v. U.S. Bank Nat. Ass'n,*
  127 Cal. App. 1138 (2005) .....................................................................................11

*DFSB Kollective Co. Ltd. v. Bourne,*
  897 F. Supp. 2d 871 (N.D. Cal. 2012) ...................................................................15

*Diaz v. Gates,*
  420 F.3d 897 (9th Cir. 2005) ...................................................................................6

**Page**

*Doe v. Unocal Corp.*,
27 F. Supp. 2d 1174 (C.D. Cal. 1998) ...................................................................12

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ..........................................................................................8

*Gilbert v. Bank of Am*,
2014 WL 4748494
(N.D. Cal. Sept. 23, 2014) ...................................................................................12

*Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*,
76 F.4th 1266 (9th Cir. 2023) ..............................................................................5

*Go-Video, Inc. v. Akai Elec. Co.*,
885 F.2d 1406 (9th Cir. 1989) ...........................................................................12

*Grimmett v. Brown*,
75 F.3d 506 (9th Cir. 1996) ................................................................................4

*Hemi Grp., LLC v. City of New York*,
559 U.S. 1 (2010) ................................................................................................5

*Howard v. America Online, Inc.*,
208 F.3d 741 (9th Cir. 2000) ..............................................................................8

*Hungerstation LLC v. Fast Choice LLC*,
2020 WL 137160
(N.D. Cal. Jan. 13, 2020) ...................................................................................14

*Ileto v. Glock Inc.*,
349 F.3d 1191 (9th Cir. 2003) ............................................................................3

*In re Bullion Reserve of North America*,
836 F.2d 1214 (9th Cir. 1988) ...........................................................................5

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
295 F. Supp. 3d 927 (N.D. Cal. 2018) ..............................................................13

*In re DAOU Systems, Inc.*,
411 F.3d 1006 (9th Cir. 2005) ............................................................................4

*In re First All. Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006) ............................................................................11

**Page**

*In re Pfa Ins. Mktg. Litig.*,
   696 F. Supp. 3d 822 (N.D. Cal. 2022) ..................................................................11

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   2017 WL 4890594
   (N.D. Cal. Oct. 30, 2017) ............................................................................. 6-7

*In re Woodbridge Invs. Litig.*,
   2020 WL 4529739
   (C.D. Cal. Aug. 5, 2020) ...........................................................................11

*Licht v. Binance Holdings Limited*,
   2025 WL 625303
   (D. Mass. Feb. 5, 2025)..............................................................................7

*Life Bliss Found. v. Sun TV Network Ltd.*,
   2014 WL 12589657
   (C.D. Cal. Sept. 17, 2014) ..........................................................................12

*Marei von Saher v. Norton Simon Museum of Art at Pasadena*,
   2015 WL 12910626
   (C.D. Cal. Apr. 2, 2015) ............................................................................10

*McCraner v. Wells Fargo & Co.*,
   2023 WL 2728719
   (S.D. Cal. Mar. 30, 2023) ...........................................................................11

*Med. Marijuana, Inc. v. Horn*,
   145 S. Ct. 931 (2025) .................................................................................5

*MH Pillars Ltd. v. Realini*,
   2018 WL 1184847
   (N.D. Cal. Mar. 7, 2018) .......................................................................3, 4, 8

*Mocha Mill, Inc. v Port of Mokha Inc.*,
   2019 WL 1048252
   (N.D. Cal. Mar. 5, 2019) ...........................................................................12

*Morning Star Packing Co. v. SK Foods, L.P.*,
   2011 WL 4591069
   (E.D. Cal. Sept. 30, 2011) ...........................................................................4

*NCP Bayou 2 LLC v. McAdams*,
   2018 WL 11352140
   (D. Ariz. July 12, 2018) ..............................................................................4

Page

*Newcal Indus., Inc. v. IKON Office Sols., Inc.*,
    2011 WL 1899404
    (N.D. Cal. May 19, 2011) ................................................................4

*Oki Semiconductor Co. v. Wells Fargo Bank, National Association*,
    298 F.3d 768 (9th Cir. 2002) ..........................................................7

*Regent All. Ltd. v. Rabizadeh*,
    231 Cal. App. 4th 1177 (2014) .......................................................9

*Reynolds v. Binance Holdings Ltd.*,
    481 F. Supp. 3d 997 (N.D. Cal. 2020) ....................................14, 15

*RJR Nabisco, Inc. v. Eur. Cmty.*,
    579 U.S. 325 (2016).........................................................................8

*Scoggins v. HSBC Bank USA*,
    2015 WL 12670410
    (C.D. Cal. Oct. 8, 2015) .................................................................7

*Sec. Inv'r Prot. Corp. v. Vigman*,
    764 F.2d 1309 (9th Cir. 1985) .......................................................12

*Smith v. Levine Leichtman Capital Partners, Inc.*,
    723 F. Supp. 2d 1205 .....................................................................8

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).........................................................................6

*Taylor v. Westly*,
    488 F.3d 1197 (9th Cir. 2007) .........................................................5

*Teed v. Chen*,
    2022 WL 16839496
    (N.D. Cal. Nov. 9, 2022).................................................................9

*United States ex rel. Lesnik v. Eisenmann SE*,
    2021 WL 4243399
    (N.D. Cal. Sept. 17, 2021) .............................................................12

*United States v. Fernandez*,
    388 F.3d 1199 (9th Cir. 2004) .........................................................9

*Voris v. Lampert*,
    7 Cal. 5th 1141 (2019) ...............................................................9, 10

**Page**

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
  472 F. Supp. 3d 649 (N.D. Cal. 2020) ....................................................................................14

*Will Co., Ltd. v. Lee*,
  47 F.4th 917 (9th Cir. 2022) ........................................................................................13, 14

*Yegiazaryan v. Smagin*,
  599 U.S. 533 (2023).............................................................................................................8

*Zamani v. Carnes*,
  491 F.3d 990 (9th Cir. 2007) ..............................................................................................5

**STATUTES, RULES, AND REGULATIONS**

18 U.S.C.
  §1956............................................................................................................................4
  §1957............................................................................................................................4
  §1960............................................................................................................................4
  §1961(1)(E)...................................................................................................................4
  §1962(c).......................................................................................................................4
  §1964(c).......................................................................................................................5
  §2314............................................................................................................................5

Federal Rules of Civil Procedure
  Rule 4(k) .....................................................................................................................13
  Rule 8(a)(2)...................................................................................................................4
  Rule 12(b)(6)................................................................................................................3

California Civil Code
  §655..............................................................................................................................6

I.      **PRELIMINARY STATEMENT**

A.      **The OKX Crypto-Wash Enterprise**

Defendant OKC Holdings is the parent organization of a group of legal entities which operate one of the largest cryptocurrency ("crypto") platforms in the world (collectively, the "OKX Platform" or "OKX").  ¶1.[1]  OKX founder Star Xu, and other senior officers of OKX, including Hong Fang and Jay Hao (the "OKX Officers"), managed and directed OKX's day-to-day affairs.  ¶2.  OKX grew rapidly by accessing the U.S. market by willfully violating numerous U.S. laws and regulations established to protect investors.  ¶2.

Specifically, Defendants knowingly failed to register OKX.com as a money transmitting business ("MTB"), willfully violated the Bank Secrecy Act ("BSA") by failing to implement and maintain an effective anti-money laundering ("AML") program, and disregarded crucial Know Your Customer ("KYC") rules – all in a deliberate and calculated effort to profit from the U.S. market. ¶3.  Defendants' willful disregard of these important laws turned the OKX Platform into a magnet and hub for criminals to launder crypto stolen from Plaintiffs and the members of the Class.[2]  ¶4. This is significant because crypto laundering "underpins all other forms of cryptocurrency-based crime.  If there's no way to access the funds, there's no incentive to commit crimes involving cryptocurrency in the first place."  ¶41.

A valuable feature of crypto is that transactions on the public blockchain, which acts as a "ledger," create a record and the chain-of-title is permanently and accurately traceable.  ¶5.  After crypto is stolen, its location is publicly available.  ¶¶5, 38.  Theft victims retain the ability to track, prove ownership, and often potentially recover their stolen assets.  ¶¶38-39.  Unless thieves launder the crypto, they cannot remove it from the blockchain without being tracked.  Therefore, crypto theft is not complete, and a victim has not suffered the full injury from the theft, until the owner is unable

---

[1]  "¶__" cites to paragraphs in Plaintiffs' Amended Complaint (ECF No. 25) (the "AC").  Defendant OKC Holdings is also referred to as "OKX Group" in the AC.  Emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

[2]  The Class is defined as all persons or entities in the United States whose cryptocurrency was removed from a non-OKX digital wallet, account, or protocol as a result of a hack, ransomware, or theft and, between January 10, 2021 and the date of Judgment (the "Class Period"), was transferred to an OKX.com account, and who have not recovered all of their cryptocurrency that was transferred to OKX.com.  ¶167.

1  to track, identify the bad actor, or unable to recover the stolen assets.

2      Defendants were not mere innocent bystanders to the billions of dollars in crypto-laundering

3  transactions on OKX's Platform.  They actively encouraged illicit activity and were integral

4  participants.  Defendants ran OKC Holdings and the OKX Platform with utter disregard for policies

5  and procedures aimed at preventing bad actors from laundering crypto at OKX.  ¶52.  Defendants

6  acted together, along with the OKX Officers, in furtherance of a scheme to generate transactions and

7  increase market share from all sources, including crypto-thieves.  ¶7.  They operated the OKX

8  Crypto-Wash Enterprise, which enabled bad actors to transfer digital assets stolen from U.S. victims

9  to OKX.com, exchange those assets for different assets on OKX.com's exchange, and then transfer

10 those newly "cleaned" assets out of OKX.com so they were no longer associated with the original

11 assets or trackable on the ledger.  ¶7.  Throughout the Class Period, the OKX Crypto-Wash

12 Enterprise became a leading conduit for bad actors to remove the tracking from crypto stolen from

13 U.S. victims so they could avoid being caught and profit from their crimes.  ¶7.

14     For years, Defendants allowed users to open accounts OKX accounts by simply providing an

15 email address, did not require them to provide KYC information, and refused to implement adequate

16 KYC and AML procedures though Defendants knew they were required by law.  ¶¶53, 60.

17 Defendants willfully violated these important U.S. laws to grow the business and gain market share.

18 ¶61.  Defendants knew OKX's failure to comply with KYC and AML laws, such as the BSA,

19 enabled bad actors to use the OKX Crypto-Wash Enterprise to launder digital assets.  ¶64.

20     On February 24, 2025, Defendant Aux Cayes pled guilty to criminal charges brought by the

21 U.S. Department of Justice (the "DOJ"), agreed to the Statement of Facts attached to the plea

22 agreement (the "DOJ SOF") and paid more than $500 million in penalties for its wrongdoing.[3]

23 According to the DOJ SOF, "OKX was used by numerous customers as a vehicle for laundering the

24 proceeds of suspicious and criminal activities, including more than *five billion dollars* of suspicious

25 transactions and illicit proceeds[.]"  ¶¶63, 70; *see* ¶96 (quoting acting U.S. Attorney Matthew

26 Podolsky as stating, "OKX knowingly violated anti-money laundering laws and avoided

27    [3] The Plea Agreement and DOJ SOF are attached as Exhibit A to the Declaration of Eric I. Niehaus
   in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss (the "Niehaus Decl."),
28 submitted herewith.

1    implementing required policies to prevent criminals from abusing our financial system."). Had

2    Defendants complied with the law and ensured OKX implemented adequate AML policies, OKX

3    would have identified the bad actors, identified potential crypto laundering transactions, and

4    prevented substantial amounts of crypto from being laundered at, and withdrawn from, OKX.com.

5    ¶67.  In fact, "a substantial portion of [the] crypto laundered by bad actors [was] transferred to

6    OKX.com from crypto wallets *previously identified* as wallets associated with illicit crypto

7    activities." ¶68.  And at trial, Plaintiffs intend to prove that at least hundreds of millions of dollars in

8    crypto was transferred to OKX.com crypto wallets *after* those wallets had already been identified as

9    being associated with illicit activity.  At a minimum, by implementing basic KYC policies, even if

10   they had not prevented the laundering, Defendants would have been able to identify the bad actors to

11   the authorities.  ¶67.

12         **B.      The Laundering of their Stolen Crypto at OKX Injured Plaintiffs**

13         Defendants' scheme facilitated the laundering of stolen crypto at OKX by bad actors.  ¶125.

14   The theft of Plaintiffs' crypto should be viewed as taking place in two primary phases, and the entire

15   theft was not complete until the bad actors removed the crypto from the blockchain without being

16   tracked.  Phase 1 was the removal of the crypto from Plaintiffs' possession.  Phase 2, the laundering

17   of the crypto at OKX, eliminated Plaintiffs' ability to track, prove ownership, and potentially recover

18   their crypto.  The bad actors did not realize the full benefit from the thefts, and Plaintiffs did not

19   suffer their full injuries, until the stolen crypto had been laundered during Phase 2.  Since Plaintiffs

20   were able to track the crypto's location, prove their ownership of the crypto, and, with the assistance

21   of the authorities, potentially recover their stolen assets, the crypto retained a portion of its value

22   before it was laundered.  ¶¶8, 125.  Accordingly, Plaintiffs suffered a distinct concrete injury from

23   the laundering of their stolen crypto.  ¶¶125-26.

24   **II.      LEGAL STANDARD ON A MOTION TO DISMISS**

25         A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal

26   sufficiency of the claims alleged in the AC.  *MH Pillars Ltd. v. Realini*, 2018 WL 1184847, at *2

27   (N.D. Cal. Mar. 7, 2018); *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  "The

28   complaint is construed in the light most favorable to the non-moving party and all material

1  allegations in the complaint are taken to be true." *Newcal Indus., Inc. v. IKON Office Sols., Inc.*,

2  2011 WL 1899404, at *2 (N.D. Cal. May 19, 2011) (White, J.).

3      To survive a motion to dismiss, a complaint must contain "a short and plain statement of the

4  claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of

5  what the . . . claim is and the grounds upon which it rests." *NCP Bayou 2 LLC v. McAdams*, 2018

6  WL 11352140, at *1 (D. Ariz. July 12, 2018); *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)

7  (quoting Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual

8  content that allows the court to draw the reasonable inference that the defendant is liable for the

9  misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where dismissal is warranted, it

10  is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment."

11  *MH Pillars*, 2018 WL 1184847, at *2; *In re DAOU Systems, Inc.*, 411 F.3d 1006, 1013 (9th Cir.

12  2005).

13  **III.    PLAINTIFFS ADEQUATELY ALLEGE A RICO VIOLATION**

14      **A.    The AC Satisfies Each RICO Element**

15      The elements of a RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4)

16  of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or

17  property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996). "A person is liable for a civil

18  RICO violation if he conducts or participates, directly or indirectly, in the conduct of an enterprise's

19  affairs through a pattern of racketeering activity." *Morning Star Packing Co. v. SK Foods, L.P.*,

20  2011 WL 4591069, at *7 (E.D. Cal. Sept. 30, 2011); 18 U.S.C. §1962(c).

21      The AC satisfies each element by alleging Defendants and the OKX Officers, through the

22  OKX Crypto-Wash Enterprise, engaged in pattern of racketeering activity which "enabled bad actors

23  to use the OKX Platform to launder stolen cryptocurrency so that it could not be tracked or

24  recovered." ¶142. Specifically, Plaintiffs allege that each Defendant engaged in indictable acts by:

25  (i) committing, and aiding and abetting, acts constituting indictable offenses under 18 U.S.C. §1960

26  (relating to illegal money transmitters) and 18 U.S.C. §1961(1)(E) (act indictable under the BSA);

27  and (ii) aided and abetted acts constituting indictable offenses under 18 U.S.C. §1956 (laundering of

28  monetary instruments), 18 U.S.C. §1957 (engaging in monetary transactions in property derived

1  from specified unlawful activity), and 18 U.S.C. §2314 (relating to interstate transportation of stolen

2  property).  ¶¶161-65.

3       Defendants do not dispute the AC satisfies the conduct, enterprise, pattern, racketeering

4  activities, or injury to property elements.  Instead, their argument rests on whether Plaintiffs have

5  adequately alleged causation, such that Plaintiffs' property was injured *by reason of* a violation of

6  section 1962 of RICO.[4]  MTD at 4-5;[5] 18 U.S.C. §1964(c).  An injury is "by reason of" a RICO

7  violation if "a RICO predicate offense 'not only was a "but for" cause of [the] injury, but was the

8  proximate cause as well.'"  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010).  Under the

9  but-for standard, "a plaintiff must demonstrate that, but for the defendant's unlawful conduct, [his or

10  her] alleged injury would not have occurred."  *Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*, 76

11  F.4th 1266, 1275 (9th Cir. 2023).  For proximate causation, "the central question [a court] must ask

12  is whether the alleged violation led directly to the plaintiff's injuries."  *Id.*

13       "A plaintiff has been 'injured in his business or property' if his business or property has been

14  harmed or damaged.  Section 1964(c) requires nothing more."  *Med. Marijuana, Inc. v. Horn*, 145 S.

15  Ct. 931, 936 (2025).  Here, Plaintiffs have suffered a "harm to a specific property interest" and the

16  "injury resulted in concrete financial loss" when they lost the ability to track, prove ownership, and

17  potentially recover their crypto.  ¶194.  *Taylor v. Westly*, 488 F.3d 1197, 1199-1200 (9th Cir. 2007)

18  (distinguishing the injury caused by the transfer of property to the State of California from the injury

19  caused by the sale of the property after transfer, and holding, "the permanent deprivation of their

20  property" was a concrete injury); *In re Bullion Reserve of North America*, 836 F.2d 1214, 1218 (9th

21  Cir. 1988) (holding a beneficiary of an insolvent, trustee debtor must be able to trace its funds in

22  order to claim any property of the debtor); *see Glob. Master*, 76 F.4th at 1274 (stating the 9th Circuit

23  has "found that allegations of 'a legal entitlement to business relations unhampered by schemes

24  prohibited by the RICO predicate statutes' and loss of a future employment opportunity constitute

---

4  Accordingly, Defendants cannot argue for the first time on reply that the AC fails to adequately
allege any element for a RICO claim other than causation.  *See Zamani v. Carnes*, 491 F.3d 990, 997
(9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply
brief.").

5  References to "MTD" are to Defendants' Notice of Motion and Motion to Dismiss the Amended
Class Action Complaint.  ECF No. 28.

1    RICO injuries to 'property.'"); *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (holding "California

2    law protects the legal entitlement to both current and prospective contractual relations.").[6]  At trial,

3    Plaintiffs intend to quantify the concrete financial loss incurred as a direct result of the laundering of

4    their crypto at OKX.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) ("'[c]oncrete' is not,

5    however, necessarily synonymous with 'tangible' . . . we have confirmed in many of our previous

6    cases that intangible injuries can nevertheless be concrete.").

7        "But for Defendants' scheme, Plaintiffs and the members of the Class would not have had

8    their stolen cryptocurrency laundered at OKX.com which resulted in their stolen cryptocurrency

9    being no longer traceable on the blockchain."  ¶156.  Had Defendants not engaged in the wrongful

10   conduct, OKX would have either: (i) prevented bad actors from laundering Plaintiffs' stolen crypto,

11   or (ii) identified the bad actors and enabled Plaintiffs to pursue their stolen assets.  Defendants'

12   predicate acts proximately caused Plaintiffs' injuries because they were directly related to either the

13   crypto laundering or to Defendants' BSA violations, which enabled bad actors to use OKX and

14   escape without being identified.  ¶¶161, 165.

15       **B.    Defendants' RICO Causation Arguments Are Without Merit**

16       Defendants argue the AC fails to allege causation by mischaracterizing Plaintiffs' injuries

17   and minimizing their role in the harm.  MTD at 4-7.  Rather than address the full injury caused by

18   their conduct (the *entire* theft, including removal of tracking), Defendants focus exclusively on the

19   injury caused during Phase 1 of the thefts but ignore injuries caused by Phase 2.  MTD at 5-7.

20   Defendants argue their conduct was not the but-for cause of the injury because "Plaintiffs do not

21   allege that Defendants participated in the thefts" and "even if [Defendants] were not in the picture,

22   the [criminals] may still have stolen from Plaintiffs."  MTD at 6-7.  Defendants, however, ignore the

23   laundering took place on OKX.com and that Plaintiffs' injuries from the laundering would not have

24   happened but for *Defendants'* misconduct.[7]

25   _____

26   [6]  *See also* Cal. Civ Code §655 (defining property ownership to include "ownership of all inanimate things which are capable of appropriation or of manual delivery . . . of all obligations . . . the good will of a business . . . and of rights created or granted by statute.").

27   [7]  Defendants point to claims against other crypto exchanges for similar conduct.  MTD at 7.

28   Because other exchanges engaged in similar wrongdoing does not absolve Defendants of liability for injuries caused by their misconduct.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., &*

1    Defendants' proximate causation argument should be rejected because they again focus

2    exclusively on the injury caused during Phase 1 of the theft instead of the injury caused by the

3    laundering of the crypto during Phase 2.  MTD at 6.  In fact, Defendants acknowledge the "hackers

4    laundered Plaintiffs' money *after* committing crimes against them on third-party trading platforms"

5    but fail to address the injury caused by the laundering.  MTD at 6 (emphasis in original).

6    The cases Defendants cite to support their argument are inapposite.  In *Oki Semiconductor*

7    *Co. v. Wells Fargo Bank, National Association*, 298 F.3d 768 (9th Cir. 2002), thieves stole and then

8    sold semiconductors, and, with the assistance of a Wells Fargo bank teller, laundered the proceeds

9    from the sale.  *Id*. at 774.  Oki filed suit seeking to "hold Wells Fargo [not the bank teller] liable for

10   the theft of its semiconductors."  *Id*. at 773.  The court in *Oki* held the "direct and proximate cause of

11   Oki's loss was not [the bank teller's] money laundering at Wells Fargo; it was [the] theft."  *Id*. at

12   774.  Unlike in *Oki*, the same assets stolen from Plaintiffs were laundered, the theft of Plaintiffs'

13   crypto was not complete until after the laundering, and due to the unique traceability of crypto, the

14   laundering itself caused a distinct injury to Plaintiffs.  ¶66.

15   Defendants' reliance on *Scoggins v. HSBC Bank USA*, 2015 WL 12670410, at *1 (C.D. Cal.

16   Oct. 8, 2015) and *Licht v. Binance Holdings Limited*, 2025 WL 625303, at *1 (D. Mass. Feb. 5,

17   2025) fails for the same reason.  In *Scoggins*, the plaintiffs claimed their injury was "theft of money

18   and property" (MTD at 5-7), which was indistinguishable from the initial theft itself, and HSBC did

19   not flout the BSA or encourage the laundering.  2015 WL 12670410, at *2.  Although *Licht* involved

20   crypto, the plaintiffs there did not distinguish the Phase 1 theft injury from the Phase 2 laundering

21   injury.[8]  Here, the conduct giving rise to RICO violations directly caused Plaintiffs' injuries during

22   the Phase 2 laundering.  Furthermore, charges filed by the DOJ against Aux Cayes do not weigh

23   against proximate causation, as Defendants contend, because Plaintiffs are the most direct victims of

---

24   *Prods. Liab. Litig.*, 2017 WL 4890594, at *8 (N.D. Cal. Oct. 30, 2017) (rejecting a RICO
25   defendant's argument that "Volkswagen could have accomplished the emissions fraud by using a
     different electronics supplier.").

26   [8]  The facts in *Licht* are distinguishable for other reasons as well.  Each of the *Licht* plaintiffs were
     the victims of a particular type of scam referred to as "pig butchering," and the "plaintiffs' primary
27   theory is that defendants were involved in these pig butchering schemes" (*Id*. at 17) and had Binance
     complied with the laws, it would have "stopp[ed] the schemes before the butchering."  *Id*. at *1.
28   Plaintiffs do not claim Defendants would have prevented the thefts during Phase 1.

1  the crypto laundering and the DOJ did not seek recovery for Plaintiffs' injuries.  MTD at 7 n.4; *see*

2  *MH Pillars*, 2018 WL 1184847, at *6 ("The states whose laws were violated may bring claims, and

3  the parties whose money was illegally handled might bring claims if losses flowed to them.");

4  *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 659 (2008) (holding plaintiffs established

5  proximate causation even though defendant's RICO predicate acts were directed at a third party).

6        **C.**    **Plaintiffs Have Sufficiently Pled Domestic Injury**

7        Defendants conflate the AC's allegations to argue "plaintiffs cannot allege 'a domestic injury

8  to business or property' to 'overcome the presumption against extraterritoriality.'"  MTD at 7.  In

9  doing so, Defendants incorrectly focus on the location of the "third-party hackers" (*Id.* at 7-8) and

10  ignore the AC's well pled allegations establishing the circumstances surrounding Plaintiffs' injury

11  indicate it arose in the United States: (i) Plaintiffs are U.S. residents who held crypto located in the

12  U.S. and third parties targeted their U.S. assets (¶¶21-23); (ii) OKX.com's San Francisco-based

13  exchange platform was where the stolen cryptocurrency was laundered and where the traceability of

14  the Plaintiffs' crypto was eliminated (¶17); and (iii) Defendants actively serviced and targeted

15  customers U.S.-based customers for OKX.com (¶¶17-18).  *Yegiazaryan v. Smagin*, 599 U.S. 533,

16  545-56 (2023) (holding defendant "took domestic actions" and the "injurious effects of the

17  racketeering activity largely manifested in California");[9] *see infra* § VI.B.1.

18        **D.**    **Plaintiffs Adequately Plead a RICO Conspiracy**

19        "To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is

20  a substantive violation of RICO or that the defendants agreed to commit, or participated in, a

21  violation of two predicate offenses."  *Smith v. Levine Leichtman Capital Partners, Inc.*, 723 F. Supp.

22  2d 1205, 1216; (N.D. Cal. 2010) (White, J.) (quoting *Howard v. America Online, Inc.*, 208 F.3d 741,

23  751 (9th Cir. 2000)).  Defendants "must also have been 'aware of the essential nature and scope of

24  the enterprise and intended to participate in it.'"  *Id.*  "Allegations that the defendants knowingly

25  agreed to facilitate a scheme which includes the operation or management of a RICO enterprise are

---

26  [9] Defendants' remaining authority is inapposite and does not state otherwise. *See RJR Nabisco, Inc.*

27  *v. Eur. Cmty.*, 579 U.S. 325 (2016) (plaintiffs were foreign entities and alleged *only* foreign injuries);
    *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990 (9th Cir. 2014) (dismissed on

28  grounds unrelated to extraterritoriality or failure to plead domestic injury).

1  sufficient to state a claim under Section 1962(d)."  *Id.*; *United States v. Fernandez*, 388 F.3d 1199,

2  1230 (9th Cir. 2004).  Here, Plaintiffs sufficiently allege Defendants engaged in a conspiracy to

3  violate the BSA and other laws to maximize transaction volume and market share for OKX.com, and

4  generate income for Defendants, certain key non-defendants, including Star Xu, and their unnamed

5  co-conspirators through the illicit scheme.  ¶¶147-56.

6        First, Defendants argue Plaintiffs fail to plead a RICO conspiracy by disputing Plaintiffs pled

7  a substantive RICO violation.  MTD at 8.  Defendants are incorrect for the reasons stated in § III.A-

8  C.  Second, Defendants ignore the AC's well pled conspiracy allegations (¶¶147-56), and falsely

9  claim Plaintiffs fail to allege an "agreement" to facilitate the RICO scheme.  MTD at 8-9.  Plaintiffs'

10  allegations are far more extensive than those from the authority relied upon by Defendants.  *See Attia*

11  *v. Google LLC*, 2018 WL 2971049, at *18 (N.D. Cal. June 13, 2018) (plaintiffs failed to allege any

12  specific facts against the appropriate defendants); *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir.

13  1993) (plaintiffs failed to include "any allegation of 'conspiracy' or 'agreement'").  By contrast, the

14  AC alleges specific facts showing OKX employees, even at senior levels, were aware of the illicit

15  activities that facilitated the RICO scheme.  ¶¶152-55 (specific allegations demonstrating Defendants

16  knew and admitted OKX's KYC procedures could be easily circumvented); ¶¶93-96 (alleging Aux

17  Cayes guilty plea); ¶¶108-110 (OKX employees advising customers to provide fake identifying

18  information).

19  **IV.    PLAINTIFFS ADEQUATELY STATE A CLAIM FOR CONVERSION**

20        Plaintiffs must plead the following elements to adequately allege a conversion claim: "(1) the

21  plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a

22  wrongful act or disposition of property rights; and (3) damages."  *Teed v. Chen*, 2022 WL 16839496,

23  at *9 (N.D. Cal. Nov. 9, 2022).  Notably, "[c]onversion is a strict liability tort" and "questions of the

24  defendant's good faith, lack of knowledge, and motive are ordinarily immaterial."  *Regent All. Ltd. v.*

25  *Rabizadeh*, 231 Cal. App. 4th 1177, 1181 (2014); *see also Voris v. Lampert*, 7 Cal. 5th 1141, 1158

26  (2019) ("[c]onversion is a strict liability tort.  It does not require bad faith, knowledge, or even

27  negligence; it requires only that the defendant have intentionally done the act depriving the plaintiff

28  of his or her rightful possession.").

1    The AC sufficiently alleges each element.  First, Plaintiffs allege ownership over their crypto

2    stolen and laundered through OKX.  ¶201.  Second, Plaintiffs allege OKX wrongfully took

3    possession of their crypto when it facilitated transfers of Plaintiffs' stolen crypto to the OKX

4    exchange without following protocols for collecting KYC and AML information to screen for bad

5    actors and criminal activity.  ¶¶21-22, 205-09.  Third, Plaintiffs allege damages resulting from the

6    wrongful conversion.  ¶210.  OKX affirmatively took possession of Plaintiffs' crypto when bad

7    actors transferred stolen assets to digital wallets on OKX.com that were in OKX's custody.  *See*

8    ¶44.[10]

9    Lastly, Defendants' attempt to interject a knowledge requirement into a strict liability tort

10    should be rejected.[11]  MTD at 9-10; *see Voris*, 7 Cal. 5th at 1158.  Under strict liability, regardless of

11    whether OKX was aware that bad actors stole Plaintiffs' crypto and were attempting to transfer it to

12    the exchange, OKX's acceptance and custody of Plaintiffs' stolen assets are sufficient to establish

13    conversion.  *See id.*; *see Marei von Saher v. Norton Simon Museum of Art at Pasadena*, 2015 WL

14    12910626, at *7 (C.D. Cal. Apr. 2, 2015) ("Under California law, each time stolen property is

15    transferred to a new possessor, a new tort or act of conversion has occurred.").[12]

16    **V.    PLAINTIFFS ADEQUATELY STATE A CLAIM FOR AIDING AND
        ABETTING CONVERSION**

17    To adequately allege aiding and abetting conversion, Plaintiffs must allege Defendants:

18

---

19    [10]  Plaintiffs do not "lump all 'Defendants' under one undifferentiated umbrella" as Defendants
20    incorrectly insist.  MTD at 9.  Plaintiffs allege conversion against only Aux Cayes, the operator of
     the OKX.com exchange, and OKC Holdings, which wholly controls and operates Aux Cayes
21    through shell companies.  ¶44.  Defendants rely on *Adobe* for its proposition that Plaintiffs "must
     identify what action each Defendant took . . ." while neglecting that *Adobe* concerns intellectual
22    property infringement, which is not at issue here.  *See Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125
     F. Supp. 3d 945, 964 (N.D. Cal. 2015).

23    [11]  Defendants contend Plaintiffs' allegations "cannot underpin a conversion claim *requiring*
24    *knowledge*."  MTD at 10.  However, none of the cases Defendants cite for this proposition support a
     knowledge requirement.  In any event, the AC alleges Defendants knew crypto-thieves laundered
25    stolen assets at OKX (¶64) and permitted wallets previously identified as involved with illicit
     activity to use OKX.com.  ¶208.

26    [12]  Defendants' reliance on *Archer v. Coinbase Inc.*, 53 Cal. App. 5th 266 (2020) is misplaced.  In
27    *Coinbase*, the crypto at issue was never transferred to Coinbase and remained on a third party
     network.  *Id.* at 276.  Here, Plaintiffs' stolen crypto was transferred to wallet addresses at OKX.com.
28    ¶¶21-22, 44.

---

"(1) had 'actual knowledge of the specific primary wrong' and (2) 'substantially assisted' it." *In re Pfa Ins. Mktg. Litig.*, 696 F. Supp. 3d 822, 858 (N.D. Cal. 2022) (citing *Casey v. U.S. Bank Nat. Ass'n*, 127 Cal. App. 1138 (2005)).  Plaintiffs can allege "actual knowledge through inference or circumstantial evidence." *Id.*; *see also McCraner v. Wells Fargo & Co.*, 2023 WL 2728719, at *4 (S.D. Cal. Mar. 30, 2023) ("A complaint doesn't need to directly allege a defendant's knowledge to survive a motion to dismiss."); *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1114 (S.D. Cal. 2024) ("Actual knowledge . . . may be averred generally in federal court.").

Here, Plaintiffs allege Defendants had actual knowledge of the pervasive criminal activity facilitated by OKX, which included the theft and laundering of Plaintiffs' digital assets.  Defendants knew crypto-thieves laundered stolen assets at OKX and had access to readily available information that alerted them about crypto being sent to OKX.com from wallets previously involved in illicit activity.  ¶¶64, 68, 216.  OKX knowingly violated KYC and AML laws for years, enabling bad actors who stole Plaintiffs' crypto to mask their identities and launder the illicit proceeds.  ¶¶96-120.  OKX did not merely believe "something fishy" was occurring on the OKX.com exchange, it *admitted* to knowingly facilitating billions of dollars in criminal and illicit transactions.  ¶¶95-96.  Allegations of willfully ignoring suspicious or illegal activity are sufficient to plead actual knowledge.  *See In re First All. Mortg. Co.*, 471 F.3d 977, 999 (9th Cir. 2006) ("That [the bank] came upon red flags which were seemingly ignored was enough to establish actual knowledge under the California aiding and abetting standard[.]"); *see also In re Woodbridge Invs. Litig.*, 2020 WL 4529739, at *6 (C.D. Cal. Aug. 5, 2020) ("The Ninth Circuit . . . has suggested that a bank's decision to ignore suspicious activity or red flags is sufficient to demonstrate actual knowledge.").

## VI.   THE COURT HAS PERSONAL JURISDICTION OVER OKC HOLDINGS AND AUX CAYES

OKC Holdings and Aux Cayes (the "Foreign Defendants") utilized a cloud computing platform and applications programming interface ("API") service owned by a technology service provider with an Internet Protocol ("IP") location based in San Francisco that hosted the OKX.com website, stored OKX's data, and operated OKX.com's exchange platform and servers. ¶17.  These allegations are far more than "bare bones assertions" and "legal conclusions," as Defendants

---

incorrectly suggest (MTD at 11), and establish this Court has specific jurisdiction over OKC Holdings and Aux Cayes.  By operating and utilizing OKX.com, the Foreign Defendants actively serviced customers in this District.  ¶¶17-18.  OKX.com's exchange platform was where crypto stolen from Plaintiffs and the Class was laundered and where traceability was eliminated. ¶17.  And notably, based in part on the same conduct alleged in the AC, Aux Cayes (a subsidiary of OKC Holdings) has already submitted to U.S. jurisdiction by pleading guilty to the DOJ's criminal charges.  *See United States v. Aux Cayes FinTech Co. Ltd.*, No. 1:25-cr-00069 (S.D.N.Y.); ¶¶9, 26.

### A.    RICO Creates a Separate Basis for Personal Jurisdiction Over OKC Holdings and Aux Cayes

When a federal statute authorizes nationwide service of process, the proper inquiry for Foreign Defendants is whether they had sufficient minimum contacts with the U.S., rather than the forum state.  *See Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985) (federal statute authorized nationwide service of process); *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1416 (9th Cir. 1989) (same); *United States ex rel. Lesnik v. Eisenmann SE*, 2021 WL 4243399, at *6 (N.D. Cal. Sept. 17, 2021) (same).  Moreover, the court in *Mocha Mill, Inc. v Port of Mokha Inc.*, held that "[w]ith respect to foreign defendants, Section 1965(b) simply affords courts the opportunity to analyze nationwide contacts in determining whether the court may exercise personal jurisdiction." 2019 WL 1048252, at *6 (N.D. Cal. Mar. 5, 2019).[13]

Courts in this District apply a three-part test to determine personal jurisdiction under §1965(b): "Plaintiffs must show: (1) the Court has personal jurisdiction over at least one of the participants in the action; (2) 'there is no other district in which a court will have personal jurisdiction over the alleged co-conspirators;' and (3) the facts show a single nationwide RICO conspiracy exists."  *Gilbert v. Bank of Am*, 2014 WL 4748494, at *4 (N.D. Cal. Sept. 23, 2014)

---

[13]  Defendants' cited authority does not state otherwise. *See Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1184 (C.D. Cal. 1998) (nationwide service of process does not apply where "the defendant is served outside the United States"); *Life Bliss Found. v. Sun TV Network Ltd.*, 2014 WL 12589657, at *1 (C.D. Cal. Sept. 17, 2014) (same); *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 1042578, at *1 (W.D. Wash. Mar. 18, 2011) (same).  Unlike Defendants' cited authority, domestic counsel for OKC Holdings and Aux Cayes accepted service on behalf of both foreign entities here in the U.S. before Plaintiffs even attempted nationwide service pursuant to Section 1965(b).  Moreover, Aux Cayes has employees and offices located in the U.S. and could have easily been served in the U.S.  ¶26.  As such, Defendants' gamesmanship should not be rewarded to evade jurisdiction.

1    (White, J.) (citing *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir.

2    1986).  Plaintiffs have met all three elements: (1) Defendants do not dispute this Court has personal

3    jurisdiction over OKCoin USA; (2) OKC Holdings and Aux Cayes have substantial aggregate

4    contacts within this District through their operation of San Francisco-based OKX.com; and (3)

5    Plaintiffs sufficiently allege a single nationwide RICO conspiracy.  ¶¶15, 17-18, 25-28.  Plaintiffs

6    have established personal jurisdiction under §1965(b).

> **B.    Plaintiffs Have Established General and Specific Personal Jurisdiction Over OKC Holdings and Aux Cayes Pursuant to California's Long Arm Statute**

9    Even assuming *arguendo* Plaintiffs cannot establish personal jurisdiction under RICO's

10   nationwide service of process, this Court may exercise personal jurisdiction over OKC Holdings and

11   Aux Cayes pursuant to California's long arm statute.[14]  The Court has general and specific personal

12   jurisdiction over OKC Holdings and Aux Cayes because, through their use of OKX.com, they: (i)

13   transacted business in California; (ii) have substantial aggregate contacts with California; (iii)

14   engaged in and are engaging in conduct that has and had a direct, substantial, and reasonably

15   foreseeable and intended effect of causing injury to persons in California; and (iv) purposely availed

16   themselves of the laws of California.  ¶18.

> **1.    The Foreign Defendants' Use of Servers in California Supports a Basis for Personal Jurisdiction**

18   The Foreign Defendants' use of servers in this District to store data and operate its worldwide

19   platform supports personal jurisdiction because they purposely engaged in conduct that "had a direct,

20   substantial, and reasonably foreseeable and intended effect of causing injury to persons in

21   California."  *See Briskin v. Shopify, Inc.*, 135 F.4th 739, 776 n.5 (9th Cir. 2025) ("Companies

---

[14]   Defendants cite *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 295 F. Supp. 3d 927 (N.D. Cal. 2018) for the proposition that "RICO and tort claims require purposeful direction, not purposeful availment." MTD at 13.  But Defendants conveniently omit that *Chrysler* analyzed the foreign defendants' contacts with the U.S. as a whole, rather than their purposeful direction towards the forum state. *Id.* at 1027-28.  Plaintiffs here easily satisfy the federal long-arm statute to establish specific jurisdiction over the Foreign Defendants based on their contacts with and purposeful direction towards the U.S.  Therefore, Defendants' authority supports an alternative basis for personal jurisdiction over OKC Holdings and Aux Cayes under Fed. R. Civ. P. 4(k). *See Will Co., Ltd. v. Lee*, 47 F.4th 917 (9th Cir. 2022) (held foreign defendant "purposefully directed" its website at the U.S. under Rule 4(k) personal jurisdiction analysis by actively appealing website to a U.S. audience).

1    operating on the Internet 'choose to host their site on servers near their desired audience' because

2    '[t]he closer a viewer is located physically or geographically to the host server, the faster that page

3    will load for the viewer.'").

4         Defendants cite *Hungerstation LLC v. Fast Choice LLC,* 2020 WL 137160 (N.D. Cal. Jan.

5    13, 2020) to argue that this District "has consistently declined to exercise jurisdiction over foreign

6    defendants that simply contract with California technology companies to host their data on servers

7    located in California."  MTD at 13.  But *Hungerstation* involved a dispute between two foreign

8    companies headquartered and incorporated in Saudi Arabia, and other than storing code on U.S.

9    servers "lack[ed] of any other connection to this forum and to the United States in general."  2020

10   WL 137160, at *1-2, *6.  Unlike in *Hungerstation*, Plaintiffs here do not simply rely on the "mere

11   location" of OKX's servers in California to establish personal jurisdiction over the Foreign

12   Defendants.  *See Will Co.,* 47 F.4th at 926 (finding that in-circuit cases "state[] that the location of

13   the server *alone* is insufficient to establish personal jurisdiction, not that it is irrelevant to the

14   analysis.").  Here, OKC Holdings and Aux Cayes targeted U.S.-based users, including those located

15   in California.  ¶17-18.  In fact, Aux Cayes' targeting was so prevalent that it paid $500 million to

16   settle the DOJ's charges based on that illegal domestic activity.  Furthermore, by operating and

17   utilizing OKX.com, the Foreign Defendants transacted business in California by actively servicing

18   customers in this District and purposely availing themselves of the laws of California.  *Id.*  These

19   allegations provide an independent basis to establish personal jurisdiction.[15]

20        **2.**    **This Court's Jurisdiction Over OKCoin USA Supports a Basis**
                  **for Personal Jurisdiction Over OKC Holdings**

21

22        This Court has personal jurisdiction over OKC Holdings because it: (i) exercised complete

23   control over OKCoin USA, which maintains executive offices in San Francisco; (ii) operated the

     OKCoin.com website through its member entity OKCoin USA; and (iii) utilized its control over

24   OKCoin USA to engage in the wrongdoing alleged in the AC.  ¶17.  Defendants rely heavily on

25   *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997 (N.D. Cal. 2020) to argue Plaintiffs cannot

26   _____

27   [15]  Defendants' citation to *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649 (N.D. Cal. 2020) is distinguishable.  Unlike here, defendants in *Whatsapp* disputed that they contracted with a

28   third party to host servers in California, which led the court to "cast doubt on the fact that defendants used the [third party] servers in California."  *Id.* at 671.

1    satisfy the "[r]elevant factors in the alter-ego inquiry" to establish personal jurisdiction over OKC

2    Holdings based on its control over OKCoin USA.  MTD at 14.  Defendants are wrong.

3         The AC meets several of the alter-ego factors discussed in *Reynolds* and highlighted by

4    Defendants.  *Reynolds*, 481 F. Supp. 3d at 1004-05) ("identical ownership of the entities, use of the

5    same offices and employees, use of one as a 'mere shell,' . . . and identical directors and officers.").

6    Here, the AC details OKX's corporate structure to demonstrate that Star Xu and OKC Holdings

7    owned all OKX entities, used multiple shell companies, and had identical officers and directors

8    across the corporate structure.  ¶28.  This is far more detailed than the allegations in *Reynolds*.  *See*

9    *id.* at 1005 ("[plaintiff] offers only the conclusory statement that Binance and BAM have a unity of

10   interest . . .").

### 3.    Plaintiffs Offer More than Bare Allegations to Establish Personal Jurisdiction

11

12        Defendants falsely characterize Plaintiffs' personal jurisdiction allegations as "generalized

13   and boilerplate" and cite *DFSB Kollective Co. Ltd. v. Bourne*, 897 F. Supp. 2d 871 (N.D. Cal. 2012)

14   to incorrectly assert Plaintiffs failed to allege: (i) that defendant "committed an intentional act," (ii)

15   which was "expressly aimed at the forum state," and "caused harm, the brunt of which is suffered

16   and which the defendant knows is likely to be suffered in the forum state."  MTD at 15 (citing

17   *DFSB*, 897 F. Supp. 2d at 880).  Unlike in *DFSB*, Plaintiffs here do not simply allege a "website, on

18   its own, [was] enough to confer personal jurisdiction" in California.  897 F. Supp. 2d at 880; *see*

19   *supra* § VI.B.1-2.  Moreover, *DFSB* held that "[t]he operation of an interactive, commercial website

20   helps determine the *likelihood* that personal jurisdiction can be exercised."  *Id.* (emphasis in

21   original).  Thus, Defendants' own authority demonstrates the Foreign Defendants' use of OKX.com

22   (in this District) to store data and operate its worldwide platform supports a basis for personal

23   jurisdiction.

## VII.    CONCLUSION

24

25        Plaintiffs respectfully request that the Court deny the motion to dismiss in its entirety.

26

27

28

1  DATED:  June 4, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
   & DOWD LLP
ERIC I. NIEHAUS


                    */s/ Eric I. Niehaus*
                   ERIC I. NIEHAUS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
ericn@rgrdlaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN (admitted *pro hac vice*)
EVAN J. KAUFMAN (admitted *pro hac vice*)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
srudman@rgrdlaw.com
ekaufman@rgrdlaw.com

SILVER MILLER
DAVID C. SILVER
(*pro hac vice* forthcoming)
JASON S. MILLER
(*pro hac vice* forthcoming)
4450 NW 126th Avenue, Suite 101
Coral Springs, FL  33065
Telephone:  954/516-6000
dsilver@silvermillerlaw.com
jmiller@silvermillerlaw.com

*Attorneys for Plaintiffs*