MARK R. S. FOSTER (SBN 223682)
Mark.Foster@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue, Suite 1400
Palo Alto, CA 94301
Telephone:    (650) 470-4500
Facsimile:    (650) 470-4570

ALEXANDER C. DRYLEWSKI (*pro hac vice*)
Alexander.Drylewski@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone:    (212) 735-3000
Facsimile:    (917) 777-2129

*Attorneys for Defendants*
*OKCoin USA Inc., Aux Cayes FinTech Co. Ltd.,*
*and OKC Holdings Corporation*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| ALISTER WATT and JAMES SUPPLES, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>OKCOIN USA INC., et al.,<br><br>Defendants. | Case No.: 4:25-cv-00368-JSW<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**<br><br>Date:    July 18, 2025<br>Time:    9:00 a.m.<br>Courtroom:    5<br>Judge:    Hon. Jeffrey S. White<br><br>Amended Complaint Filed: April 3, 2025 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................... 1

    I.    PRELIMINARY STATEMENT ....................................................................................... 1

    II.   THE AMENDED COMPLAINT SHOULD BE DISMISSED ........................................ 2

        A.    Plaintiffs Fail to State a Viable RICO Claim (Count I) ...................................... 2

            1.    Plaintiffs Fail to Plead Proximate Causation ......................................... 2

            2.    Plaintiffs Fail to Plead But-For Causation ............................................. 6

            3.    Plaintiffs Fail to Plead a Domestic Injury ............................................... 7

            4.    Plaintiffs Fail to Plead a RICO Conspiracy ........................................... 8

        B.    Plaintiffs Fail to State a Conversion Claim (Count II) ....................................... 8

        C.    Plaintiffs Fail to State an Aiding and Abetting Conversion Claim (Count III) .................................................................................................................. 10

    III.  THE COURT LACKS PERSONAL JURISDICTION OVER OKC HOLDINGS AND AUX CAYES ............................................................................................................ 11

        A.    RICO Does Not Create a Separate Basis for Personal Jurisdiction Over the Foreign Defendants ...................................................................................... 11

        B.    Plaintiffs Have Not Established General or Specific Personal Jurisdiction Over the Foreign Defendants ........................................................ 12

    IV.  CONCLUSION ................................................................................................................ 14

# **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Adobe Systems Inc. v. Blue Source Group, Inc.*,
    125 F. Supp. 3d 945 (N.D. Cal. 2015) .................................................................................. 10

*Aldrich v. National Collegiate Athletic Ass'n*,
    484 F. Supp. 3d 779 (N.D. Cal. 2020) .................................................................................. 13

*Archer v. Coinbase Inc.*,
    53 Cal. App. 5th 266 (2020) ................................................................................................... 9

*Attia v. Google LLC*,
    2018 WL 2971049 (N.D. Cal. June 13, 2018) ....................................................................... 8

*Baumer v. Pachl*,
    8 F.3d 1341 (9th Cir. 1993) .................................................................................................... 8

*In re Bullion Reserve of North America*,
    836 F.2d 1214 (9th Cir. 1988) ................................................................................................ 5

*Casey v. U.S. Bank Natural Ass'n.*,
    127 Cal. App. 4th 1138 (2005) ............................................................................................. 11

*DFSB Kollective Co. v. Bourne*,
    897 F. Supp. 2d 871 (N.D. Cal. 2012) .................................................................................. 13

*Diaz v. Gates*,
    420 F.3d 897 (9th Cir. 2005) .................................................................................................. 6

*Doe v. Unocal Corp.*,
    27 F. Supp. 2d 1174 (C.D. Cal. 1998) .................................................................................. 12

*Duke v. Superior Court*,
    18 Cal. App. 5th 490 (2017) ................................................................................................... 9

*In re First Alliance Mortgage Co.*,
    471 F.3d 977 (9th Cir. 2006) ................................................................................................ 11

*Global Master International Group, Inc. v. Esmond Natural, Inc.*,
    76 F.4th 1266 (9th Cir. 2023) ................................................................................................. 5

*Go-Video, Inc. v. Akai Elec. Co.*,
    885 F.2d 1406 (9th Cir. 1989) .............................................................................................. 11

*Hemi Group, LLC v. City of New York, N.Y.*,
    559 U.S. 1 (2010) .................................................................................................... 2, 3, 5

*Howard v. America Online, Inc.*,
    208 F.3d 741 (9th Cir. 2000) ............................................................................................. 8

*Hungerstation LLC v. Fast Choice LLC*,
    2020 WL 137160 (N.D. Cal. Jan. 13, 2020) ................................................................... 12

*Hurtado Lucero v. IRA Services, Inc.*,
    2020 WL 553941 (N.D. Cal. Feb. 3, 2020) ............................................................... 10, 11

*Licht v. Binance Holdings Ltd.*,
    2025 WL 625303 (D. Mass. Feb. 5, 2025), *report and recommendation adopted*, 2025
    WL 624025 (D. Mass. Feb. 26, 2025) ................................................................ 1, 3, 4, 5, 6, 7

*Medical Marijuana, Inc. v. Horn*,
    145 S. Ct. 931 (2025) ......................................................................................................... 5

*Mocha Mill, Inc. v Port of Mokha Inc.*,
    2019 WL 1048252 (N.D. Cal. Mar. 5, 2019) ................................................................... 12

*Oki Semiconductor Co. v. Wells Fargo Bank, National Ass'n*,
    298 F.3d 768 (9th Cir. 2002) .................................................................................. 1, 3, 5, 6

*In re Peklar*,
    260 F.3d 1035 (9th Cir. 2001) .......................................................................................... 9

*Reynolds v. Binance Holdings Ltd.*,
    481 F. Supp. 3d 997 (N.D. Cal. 2020) ............................................................................. 13

*RJR Nabisco v. European Community*,
    579 U.S. 325 (2016) ..................................................................................................... 7, 8

*Sanford v. MemberWorks, Inc.*,
    625 F.3d 550 (9th Cir. 2010) ............................................................................................. 8

*S&S Worldwide, Inc. v. Wells Fargo Bank*,
    509 F. Supp. 3d 1154 (N.D. Cal. 2020) ..................................................................... 10, 11

*Scoggins v. HSBC Bank USA*,
    2015 WL 12670410 (C.D. Cal. Oct. 8, 2015) ........................................................... 3, 4, 5, 6

*Securities Investor Protection Corp. v. Vigman*,
    764 F.2d 1309 (9th Cir. 1985) ........................................................................................ 12

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ................................................................................................................ 6

*Taylor v. Westly*,
    488 F.3d 1197 (9th Cir. 2007) ................................................................................................ 5

*United States v. 51 Pieces of Real Property Roswell, N.M.*,
    17 F.3d 1306 (10th Cir. 1994) .............................................................................................. 13

*United States ex rel. Lesnik v. Eisenmann SE*,
    2021 WL 4243399 (N.D. Cal. Sept. 17, 2021), *aff'd*, *sub nom. United States ex rel.
    Resnik v. ISM Vuzem d.o.o.*, 112 F.4th 816 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1171
    (2025) .................................................................................................................................... 11

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation*,
    2017 WL 4890594 (N.D. Cal. Oct. 30, 2017) ......................................................................... 6

*Voris v. Lampert*,
    7 Cal. 5th 1141 (2019) ..................................................................................................... 9, 10

*WhatsApp Inc. v. NSO Group Technologies. Ltd.*,
    472 F. Supp. 3d 649 (N.D. Cal. 2020) .................................................................................. 13

*Will Co., Ltd. v. Lee*,
    47 F.4th 917 (9th Cir. 2022) ................................................................................................. 14

*In re Woodbridge Investments Litigation*,
    2020 WL 4529739 (C.D. Cal. Aug. 5, 2020) ........................................................................ 11

*Yegiazaryan v. Smagin*,
    599 U.S. 533 (2023) ................................................................................................................ 7

**STATUTES**

18 U.S.C. § 1964(c) ......................................................................................................................... 7

18 U.S.C. § 1965(b) ....................................................................................................................... 12

Cal. Civ Code § 655 ......................................................................................................................... 6

## I.  **PRELIMINARY STATEMENT**[1]

Plaintiffs' Opposition confirms the Amended Complaint is incurably deficient because Plaintiffs still fail to show that Defendants should be liable for actions of third-party criminals who stole Plaintiffs' digital assets outside the OKX.com platform. Plaintiffs concede that Defendants did not steal or launder their assets, nor were Defendants aware of such wrongdoing. Defendants' only alleged connection to Plaintiffs' injuries is that the third-party criminals later deposited some portion of the stolen assets into customer accounts at OKX.com. But this is insufficient as a matter of law to establish a RICO violation or conversion.

*First*, Plaintiffs attempt to sidestep settled Ninth Circuit precedent barring their RICO claim by manufacturing an arbitrary multi-phase theory of causation. (*Infra* § II.A.1.)  In *Oki Semiconductor*, the Ninth Circuit rejected a materially indistinguishable theory of causation, holding that a bank teller's laundering of funds to avoid detection by law enforcement was not the proximate cause of the plaintiff's injury, since the "direct and proximate cause" of the plaintiff's loss was the theft and not any subsequent laundering. *Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*, 298 F.3d 768, 773-74 (9th Cir. 2002). That the stolen funds were not digital assets was irrelevant to the court's analysis in *Oki Semiconductor*, and in any event another court recently reached the same conclusion as in *Oki Semiconductor* regarding stolen digital assets laundered through Binance.com. *See Licht v. Binance Holdings Ltd.*, 2025 WL 625303, at *1, *41 (D. Mass. Feb. 5, 2025), *report and recommendation adopted*, 2025 WL 624025 (D. Mass. Feb. 26, 2025). This Court should reach the same conclusion here.

*Second*, Plaintiffs' RICO claim also fails because Plaintiffs still have not shown any domestic injury. (*Infra* § II.A.2.)  The Opposition does not even attempt to address *Licht*, where the court found no plausible domestic injury based on materially identical allegations to those here. *See id.* at *41-42.

*Third*, Plaintiffs fail to state a RICO conspiracy claim because they have not alleged a primary violation or that Defendants entered into any agreement to participate in a money laundering scheme. (*Infra* § II.A.3.)  These deficiencies are fatal.

---

[1] Capitalized terms have the same meaning ascribed to them in Defendants' Motion to Dismiss (ECF No. 28, "MTD" or "Motion"). Unless noted, all emphasis is added, and all original citations, brackets and internal quotation marks are omitted from quoted material for ease of reading.

1     *Fourth*, Plaintiffs' claims for conversion and aiding and abetting conversion fail because they do not and cannot allege that Defendants had knowledge of the particular thefts or took affirmative actions to deprive Plaintiffs of their cryptocurrency. (*Infra* § II.B-C.)

    *Finally*, Plaintiffs fail to allege sufficient facts to support personal jurisdiction over foreign defendants OKC Holdings and Aux Cayes. (*Infra* § III.) Contrary to Plaintiffs' contention, RICO's nationwide service of process provision does not provide a basis for jurisdiction here, and Plaintiffs' reliance on other federal statutes with *worldwide* service provisions (none of which is at issue here) is inapposite. Because Plaintiffs do not allege sufficient minimum contacts with California, as they must, they fail to plead specific jurisdiction.

    Plaintiffs have already amended their complaint, and that Amended Complaint's myriad flaws, premised on a fundamentally deficient legal theory, cannot be remedied through further repleading. The Amended Complaint should be dismissed in its entirety with prejudice.

## II.    THE AMENDED COMPLAINT SHOULD BE DISMISSED

### A.    Plaintiffs Fail to State a Viable RICO Claim (Count I)

    In their Opposition, Plaintiffs acknowledge that they must plausibly plead both proximate and but-for causation to state a viable RICO claim—that is, there must not only be a "direct relationship" between the alleged injury and injurious conduct, but also it must be the case that such injury "would not have happened" without that alleged conduct. (Opp. at 5; MTD at 4-5 ("A link that is too remote, purely contingent, or indirect is insufficient." (quoting *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010))).) Plaintiffs have shown neither.

#### 1.    Plaintiffs Fail to Plead Proximate Causation

    Faced with an insurmountable hurdle in *Oki Semiconductor*, Plaintiffs now suggest their alleged losses "should be viewed as taking place in two primary phases"—the theft of the assets ("Phase 1") and the subsequent laundering ("Phase 2"), arguing they did not suffer "their *full* injuries[]" until after Phase 2. (Opp. at 3-5.) The Opposition, however, cites no authority for this arbitrary, two-phase theory of proximate causation. With good reason: Plaintiffs' theory conflicts with both the reasoning of *Oki Semiconductor* and the Supreme Court's instruction that any theory that "move[s] well beyond the first step" in the chain of causation "*cannot* meet RICO's direct relationship requirement." *Hemi Grp., LLC*

*v. City of New York, N.Y.*, 559 U.S. 1, 10 (2010).

In *Oki Semiconductor*, the plaintiff alleged that following the theft of its assets, a Wells Fargo bank teller "conduct[ed] and facilitate[d] numerous transactions . . . to convert and transfer the Conspiracy's co-mingled funds in order to avoid detection by law enforcement." *Oki Semiconductor*, 298 F.3d at 774. Specifically, the teller "established numerous bank accounts in the names of fictitious entities and, by transferring money from one entity to another, funneled hundreds of thousands of dollars through the Conspiracy's financial network" such that "the money emerged squeaky clean" and "disappeared into the pockets of the Conspiracy's members." *Id.* at 771. The Ninth Circuit held that the teller's laundering of funds to avoid detection by law enforcement—i.e., what Plaintiffs here would call "Phase 2"—was *not* the proximate cause of the plaintiff's injury. *Id.* Rather, "[t]he direct and proximate cause of [plaintiff]'s loss . . . was theft." *Id.* at 774. In other words, "Phase 1" was the proximate cause of the plaintiff's losses because "[o]nly after the theft occurred and the semiconductors were sold could [the teller] launder the proceeds." *Id.* The same reasoning applies here and compels dismissal.[2]

Plaintiffs also attempt to distinguish *Oki Semiconductor* on the ground that the stolen semiconductors were sold for money, whereas here, "the same assets stolen from Plaintiffs were laundered." (Opp. 7.) This is a distinction without a difference. The Ninth Circuit did not hold that the sale of the semiconductors for money was the proximate cause of the plaintiffs' losses—it was the theft. *Oki Semiconductor*, 298 F.3d at 773-74. As the court explained, subsequent steps taken *after* the theft to launder proceeds do not constitute the proximate cause of the victim's loss. *Id.*

Many other courts—in the Ninth Circuit and nationwide—have applied this same reasoning in cases where the same assets are stolen and later laundered. (MTD at 5-7); *see, e.g.*, *Scoggins v. HSBC Bank USA*, 2015 WL 12670410, at *2-3 (C.D. Cal. Oct. 8, 2015); *Licht*, 2025 WL 625303, at *38-41. Plaintiffs' attempt to distinguish these cases is unavailing. (Opp. 7-8.) Plaintiffs argue that, in *Scoggins*, "the plaintiffs claimed their injury was the 'theft of money and property' . . . which was indistinguishable

---

[2] Plaintiffs' two-phase theory also has no limiting principle, as it conveniently ignores all of the other intermediate steps in the chain of causation—including the thieves' use of the internet to transfer Plaintiffs' funds, as well as the internet service providers and physical infrastructure that provided the thieves' access to the digital asset trading platforms at issue. Plaintiffs could divide the chain of causation into any number of theoretical "phases," which only demonstrates the very purpose of proximate causation. *See Hemi Grp.*, 559 U.S. at 9-11.

from the initial theft itself." (*Id.*) But Plaintiffs ignore the *Scoggins* decision itself, which concluded that the proximate cause of the plaintiffs' injury was the street gang's theft of their money and property—*not* the defendant bank's subsequent laundering. 2015 WL 12670410, at *2 ("Plaintiffs' allegations show, at most, a remote connection between HSBC and Plaintiffs' purported injuries. Members of a Los Angeles street gang, not HSBC, proximately caused the injuries to plaintiffs, namely the theft of money and property. Plaintiffs make no attempt to allege that HSBC employees directly stole property or that HSBC controlled the activities of gang members").[3]

Plaintiffs' attempt to distinguish *Licht* is similarly unavailing. They argue that *Licht* can be disregarded because the plaintiffs there "did not distinguish the Phase 1 theft injury from the Phase 2 laundering injury." (Opp. 7.) Plaintiffs are mistaken. In fact, the *Licht* plaintiffs' primary theory was that thieves used defendants' platform to convert the stolen cryptocurrency into untraceable and unrecoverable fiat currency. 2025 WL 625303, at *17. They further alleged that if Binance.com had registered with FinCEN and complied with the BSA, "the scammers . . . would not have been able to launder plaintiffs' cryptocurrency and cash it out. Instead, the scammers' transactions would have been flagged as suspicious by Binance and their accounts would have been frozen, allowing law enforcement to seize plaintiffs' cryptocurrency so that plaintiffs could recover." *Id.* The *Licht* court expressly rejected the plaintiffs' argument that the subsequent laundering of their cryptocurrency (i.e., "Phase 2") could serve as the proximate cause of their losses, holding:

> The cause of plaintiffs' injury was a set of actions (pig butchering schemes) entirely distinct from the operation of Binance as an unlicensed, unregistered MTB (defrauding the United States), and even entirely distinct from putative money laundering. That Binance and [its CEO], allegedly with the assistance of [its US affiliate], failed to comply with United States laws and, therefore, Binance.com offered a more convenient "cash out" point did not mean that the scammers necessarily would target plaintiffs, and plaintiffs' inability to recover the stolen cryptocurrency because it was converted to fiat currency may have resulted from other, independent factors.

*Id*. at *39. As the *Licht* court explained, its conclusion was consistent with the directive of the Supreme Court in *Hemi Group*, which rejected RICO liability where the "causal progression was based not just on separate *actions*, but separate actions carried out by separate *parties*." *Id.* at *40 (quoting *Hemi Grp.*,

---

[3] Plaintiffs claim that *Scoggins* is also distinguishable because there, "HSBC did not flout the BSA or encourage the laundering." (Opp. 7.) But in *Scoggins*, plaintiffs alleged that "HSBC took part in the conspiracy by its willful actions to launder the money it received for the Sinaloa cartel." 2015 WL 12670410, at *1. There is thus no basis to distinguish its holding.

4

559 U.S. at 11 (emphasis in original)). That is, "the victims' harm was directly caused by the scammers"—not the digital asset platform to which the stolen assets were sent. *Id.*[4]

*Hemi Group*, *Oki Semiconductor*, *Scoggins*, and *Licht* conclusively foreclose Plaintiffs' theory of proximate causation. Plaintiffs' assets were stolen by third-party criminals, not Defendants. (AC ¶¶ 21-22, 122-25.) Plaintiffs do not plead any direct relationship between Defendants and the criminals' theft, but rather contend that Defendants' failure to implement KYC and AML procedures indirectly "enabled bad actors to transfer assets obtained from criminal activity." (AC ¶ 7.) Defendants' alleged nonfeasance allegedly made it easier for thieves to launder Plaintiffs' stolen assets but cannot as a matter of law constitute the proximate cause of their losses. *See Oki Semiconductor*, 298 F.3d at 773-74; *Scoggins*, 2015 WL 12670410, at *2; *see also Licht*, 2025 WL 625303, at *39 n.52.

The assortment of cases cited by Plaintiffs (Opp. 5-6) do not address proximate causation, let alone overcome *Oki Semiconductor*, *Scoggins, Hemi,* and *Licht*. Plaintiffs' reference to *Medical Marijuana, Inc. v. Horn* for the notion that "Section 1964(c) requires nothing more" than an injury to business or property is misplaced. (Opp. 5 (quoting 145 S. Ct. 931, 939 (2025)).) There, the court held that a RICO plaintiff could seek damages for business or property harms that derived from a personal injury. *See Med. Marijuana*, 145 S. Ct. at 940-41, 945. In so holding, the court highlighted RICO's proximate causation requirement as a necessary constraint on civil RICO claims, which it warned "may present an insurmountable obstacle" for the plaintiff's case. *Id.* at 945. Plaintiffs' cited authorities addressing the treatment of property interests in inapposite contexts (Opp. 5-6) are similarly irrelevant. *See Taylor v. Westly*, 488 F.3d 1197, 1199-1200 (9th Cir. 2007) (securities lost to escheat constituted concrete injury); *In re Bullion Reserve of North America*, 836 F.2d 1214, 1218 (9th Cir. 1988) (beneficiary of trustee debtor had duty under federal bankruptcy law to trace funds to bullion he received); *Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*, 76 F.4th 1266, 1274 (9th Cir. 2023) (loss of business relations or future employment opportunity can constitute RICO injury to property); *Diaz*

---

[4] Plaintiffs also suggest *Licht* is distinguishable because there, the defendants "[c]ould have prevented the thefts during Phase 1." (Opp. 7 n.8.) But Plaintiffs misread the court's decision. They point to one sentence noting that if the defendants had reported suspicious transactions and frozen the thieves' accounts, this could have "allow[ed] law enforcement officials to investigate and then seize the cryptocurrency and return it to plaintiffs, thus *stopping the schemes before the 'butchering.'*" *Licht*, 2025 WL 625303, at *1. Clearly, the "butchering" in this context referred to the "Phase 2" laundering. *Id.* The *Licht* plaintiffs did not allege that the defendants could have prevented the scammers from stealing their cryptocurrency in the first place. *Id.*

*v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (false imprisonment that caused victim to lose employment opportunities could constitute RICO injury to business or property); Cal. Civ Code § 655 (defining property ownership to include inanimate things); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (considering whether procedural violations of the Fair Credit Reporting Act constitute concrete injuries). None of these cases support Plaintiffs' flawed theory of proximate causation, which has been squarely rejected by the Ninth Circuit and other courts. *See Oki Semiconductor*, 298 F.3d at 773-74; *Scoggins*, 2015 WL 12670410, at *2; *Licht*, 2025 WL 625303, at *39 n.52. Accordingly, Plaintiffs' RICO claim should be dismissed with prejudice.

### 2. Plaintiffs Fail to Plead But-For Causation

Even if Plaintiffs could establish proximate causation, they cannot possibly show the requisite but-for causation. (MTD at 7.) To be sure, Plaintiffs baldly assert their "injuries from the laundering would not have happened but for *Defendants'* misconduct." (Opp. 6.) But much like the circumstances in *Scoggins*, even without Defendants' alleged conduct, the thieves could have simply "deposited the proceeds from their criminal activity elsewhere," including notably at one of the *other* crypto trading platforms that Plaintiff Supples *himself* and Plaintiffs' counsel recently sued under an identical theory of enabling money laundering. (*See* MTD at 7); *Scoggins*, 2015 WL 12670410, at *3.

Plaintiffs' own analogy to Defendants "'driving the getaway car' for the cryptocurrency thieves" (AC ¶ 220) underscores why their theory is flawed: a getaway car driven by one uninvolved in the preceding theft, like a taxi driver hailed by the thieves to flee the scene, is not a but-for cause of a victim's losses—particularly when the victim and the victim's own counsel have identified at least two other taxi service providers that engaged in the same alleged conduct. (MTD at 7.)

Plaintiffs' reliance on *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 4890594, at *8 (N.D. Cal. Oct. 30, 2017), is misplaced. (Opp. 6-7 n.7.) There, the defendants argued that but-for causation was lacking because Volkswagen could have accomplished its emissions fraud using a different electronics supplier. *See Volkswagen*, 2017 WL 4890594, at *8. The court rejected this argument as "based only on speculation," as no other suppliers were identified. *Id.* Here, there is no need for speculation: Plaintiff Supples and his own counsel have identified at least two other platforms that could have been used under the same theory. (MTD at 7.)

### 3. Plaintiffs Fail to Plead a Domestic Injury

Plaintiffs' RICO claim independently fails because Plaintiffs have not alleged a domestic injury to "overcome the presumption against extraterritoriality." (MTD at 7-8); *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 346 (2016); 18 U.S.C. § 1964(c). The Amended Complaint offers no reason to believe the thieves who stole Plaintiffs' assets were located in the U.S. or targeted U.S.-based victims; only one of the third-party platforms from which they stole the assets is alleged to be based in the U.S.; and the hackers deposited the stolen assets on OKX.com—an international digital asset platform operated by a Seychelles corporation. (MTD at 7-8; AC ¶¶ 7, 17, 21-22, 47-48, 113-25.) As the Supreme Court explained, the fact that Plaintiffs resided in the U.S. at the time their assets were stolen is not dispositive. (MTD at 8 (citing *Yegiazaryan v. Smagin*, 599 U.S. 533, 543 (2023) (rejecting "a bright-line rule . . . that locates a plaintiff's injury at the plaintiff's residence")).)

Plaintiffs do not address any of these flaws in their Opposition. (Opp. 8.) Instead, they merely conclude that they pleaded a domestic injury because they resided in the U.S. at the time, OKX.com allegedly utilized third-party servers based in San Francisco, and Defendants allegedly serviced and targeted U.S.-based customers for OKX.com. (*Id.* (citing AC ¶¶ 17-18, 21-23).) None of these arguments can save their claim.

*Licht* is directly on-point. There, the court concluded that there was no plausible domestic injury despite nearly identical allegations involving stolen cryptocurrency laundered on Binance.com. *See Licht*, 2025 WL 625303, at *41-42. The *Licht* plaintiffs alleged that certain of them resided in the U.S. at the time; that Binance.com was hosted on third-party servers in the U.S.; and that Binance.com "intentionally sought and served millions of users in the United States." *Id.* at *7, *41-42. In other words, they alleged the same basis for a domestic injury that is alleged here. Yet the *Licht* court rejected these allegations, concluding that the plaintiffs failed to plead a domestic injury because their injuries were caused by international wire fraud perpetrated by unknown hackers, there was no reason to believe the hackers specifically targeted the U.S., Binance is a foreign corporation, and there was no well-pled allegation that the stolen digital assets made their way to the U.S. or originated in the U.S. *Id.* at *41-42. The very same is true here, and thus Plaintiffs have not—and cannot—"overcome the presumption against extraterritoriality" to establish a RICO domestic injury. *RJR Nabisco*, 579 U.S. at 346.

#### 4.     Plaintiffs Fail to Plead a RICO Conspiracy

Plaintiffs have also failed to state a RICO conspiracy claim. (MTD at 8-9.) To start, Plaintiffs have failed to plead a substantive RICO violation (*supra* Sections II.A.1-2)—a necessary requirement of any RICO conspiracy claim (MTD 8 (citing *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010)). Even if they had, Plaintiffs have not adequately pled "an agreement that is a substantive violation of RICO or that the [D]efendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. Am. Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000).

Like the Amended Complaint, Plaintiffs' Opposition does not point to any such agreement. Plaintiffs rely on generalized, bare assertions that "OKX" employees were aware of certain illicit activities "that facilitated the RICO scheme"; that Defendants were aware that "OKX's" KYC procedures "could be easily circumvented"; that "OKX" employees told customers how to circumvent the procedures; and that Aux Cayes pleaded guilty to operating an unlicensed money transmitting business. (Opp. 9.) But none of these allegations show that Defendants agreed to participate in a money laundering scheme at all, let alone one involving Plaintiffs' assets. In fact, the Amended Complaint expressly concedes that one of the defendants, OKCoin USA, *complied with* U.S. laws and properly registered with FinCEN. (AC ¶¶ 47, 119-20.) It further acknowledges that OKC Holdings is a parent company that does not operate either the OKX or OKCoin platforms. (AC ¶¶ 25-27.) The Opposition does not even mention these concessions (let alone attempt to explain them); together, they render implausible any theory that Defendants made a collective agreement to violate regulations and permit the laundering of Plaintiffs' digital assets.

Thus, Plaintiffs' contentions (Opp. 9) fall far short of supporting a RICO conspiracy claim. (MTD at 7 (citing *Baumer v. Pachl*, 8 F.3d 1341, 1347 (9th Cir. 1993) ("[T]he bare allegations of the complaint provide no basis to infer assent to contribute to a common enterprise."); *Attia v. Google LLC*, 2018 WL 2971049, at *18 (N.D. Cal. June 13, 2018) (plaintiff must "allege plausible *facts*" indicating that Defendants agreed to participate in RICO scheme)).)

### B.     Plaintiffs Fail to State a Conversion Claim (Count II)

Plaintiffs' conversion claim also fails. (MTD at 9-10.) Plaintiffs acknowledge they must plead that each Defendant took an intentional action to deprive Plaintiffs of their property (Opp. at 9), yet the

fundamental theory underlying the Amended Complaint is premised on alleged *inaction*, not affirmation conduct:  Plaintiffs contend that Defendants generally *failed* to implement adequate KYC and AML procedures, enabling third-party criminals to transfer Plaintiffs' stolen assets into their accounts on OKX.com in order to launder them.  (AC ¶¶ 113-18); *see Archer v. Coinbase Inc.*, 53 Cal. App. 5th 266, 276 (2020) ("Conversion requires affirmative action to deprive another of property, not a lack of action.")[5]  Moreover, although wrongful intent may not be necessary, the action "must be knowingly or intentionally done."  *In re Peklar*, 260 F.3d 1035, 1037 (9th Cir. 2001); *see also Duke v. Superior Ct.*, 18 Cal. App. 5th 490, 508 (2017).  Thus, even accepting Plaintiffs' allegations as true, Defendants' failure to implement adequate KYC and AML procedures cannot form the basis of the conversion claim here.  *Id.*

Plaintiffs argue that Defendants improperly "attempt to interject a knowledge requirement into a strict liability tort."  (Opp. 10 & n.11.)  Not so.  Conversion, as a strict liability tort, does not require a defendant to have wrongful intent or knowledge *of the wrongdoing*.  *Peklar*, 260 F.3d at 1037.  But as Plaintiffs' own case law confirms, conversion still "requires . . . that the defendant have intentionally done the act depriving the plaintiff of his or her rightful possession."  *Voris v. Lampert*, 7 Cal. 5th 1141, 1158 (2019) (quoted at Opp. 9).  In other words, Plaintiffs must show that each Defendant took an intentional action to transfer their assets—whether or not the Defendant knew such action was wrongful.  *See id.*  Plaintiffs attempt to gloss over this shortcoming by arguing that OKX "affirmatively took possession of Plaintiffs' crypto" when the criminals deposited their stolen assets on OKX.com.  (Opp. 10 (citing AC ¶ 44).)  But simply "taking possession" of digital assets is not the "affirmative act" on which Plaintiffs' claim is based; rather, it is Defendants' alleged failure to conduct better KYC/AML procedures to flag suspicious customers.  (AC ¶¶ 206-09.)  Moreover, as the Amended Complaint itself makes clear, it was the third-party criminals—not Defendants—who transferred Plaintiffs' assets into customer accounts at OKX.com.  (AC ¶ 44 ("When a user opens an account, OKX.com assigns them a

---

[5] Plaintiffs assert that Defendants' reliance on *Archer* is misplaced.  (Opp. 10 n.12.)  Not so.  In *Archer*, an account holder sued Coinbase for refusing to allow him to access a new "forked" cryptocurrency stored in his account.  *Archer*, 53 Cal. App. 5th at 269.  The court rejected his conversion claim, holding that Coinbase's refusal to support the new cryptocurrency was inaction that did not interfere with the accountholder's right of possession.  *Id.* at 276.  So too here: Defendants' alleged failure to implement adequate KYC and AML procedures is similarly a form of alleged inaction that did not interfere with Plaintiffs' right of possession of their assets.  (MTD at 9-10.)

custodial virtual currency wallet – i.e., a wallet in OKX's custody, which enables *the user* to conduct various types of transactions on the platform.").) Thus, by Plaintiffs' own admission, Defendants did not "intentionally do[] the act depriving the plaintiff of his or her rightful possession." *Voris*, 7 Cal. 5th at 1158.

Finally, even if Plaintiffs had alleged that Aux Cayes, the operator of the OKX.com platform, acted intentionally to transfer their assets (and they have not), Plaintiffs still fail to plead that OKC Holdings was involved in any way. (MTD at 9-10.) In the Opposition, Plaintiffs vaguely contend that OKC Holdings should be liable because it "operates Aux Cayes through shell companies," citing to a complaint paragraph that does not mention either company. (Opp. 10 (citing AC ¶ 44).) Plaintiffs offer no support for this bald assertion, nor do they provide any explanation as to how it supports their conversion claim. (*See id.*) Thus, Plaintiffs' claim against OKC Holdings fails for this reason too. *See Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) ("[A] plaintiff must identify what action each Defendant took that caused Plaintiffs' harm.").[6]

### C. Plaintiffs Fail to State an Aiding and Abetting Conversion Claim (Count III)

Plaintiffs' claim for aiding and abetting conversion fails because they do not allege that any Defendant had "actual knowledge" of the hackers' thefts and subsequent money laundering, as is required. (MTD at 10-11.) In the Opposition, Plaintiffs argue that Defendants knowingly violated KYC and AML laws, and that they generally knew this enabled bad actors to launder stolen cryptocurrency on OKX.com. (Opp. 11 (citing AC ¶¶ 64, 68, 216).) But even if Plaintiffs had adequately alleged such knowledge for each Defendant (they have not), any Defendant's knowledge of weaknesses in AML procedures is not the same as "actual knowledge of [the thieves'] scheme to convert [Plaintiffs'] funds." *See S&S Worldwide, Inc. v. Wells Fargo Bank*, 509 F. Supp. 3d 1154, 1165 (N.D. Cal. 2020); *see also Hurtado Lucero v. IRA Servs., Inc.*, 2020 WL 553941, at *4 (N.D. Cal. Feb. 3, 2020) ("[T]he plaintiff [must] adequately allege[] that the defendants had knowledge that the principals were diverting monies *from the plaintiff*.").[7] In fact, even if Plaintiffs had alleged that each Defendant knew that OKX users

---

[6] Plaintiffs argue that *Adobe* is distinguishable because it involved intellectual property rights. (Opp. 10 n.10.) Regardless of the subject matter, the point stands that to satisfy Rule 8, a plaintiff must plead the specific action each defendant took that caused plaintiff's harm. *Adobe*, 125 F. Supp. 3d at 964.

[7] Plaintiffs' conclusory assertions that Defendants had actual knowledge of the laundering of their funds (AC ¶¶ 204, 216) are insufficient under any pleading standard. (MTD at 10 n.5.)

were "involved in wrongful or illegal conduct," that still would not be enough; courts routinely hold that general knowledge of wrongdoing is insufficient to support an aiding and abetting claim. *Casey v. U.S. Bank Nat. Ass'n.*, 127 Cal. App. 4th 1138, 1152 (2005); *Hurtado*, 2020 WL 553941, at *4.

Plaintiffs argue that they may establish actual knowledge through inference or circumstantial evidence. (Opp. 11.) But the fact that Plaintiffs can rely on circumstantial evidence does not alleviate them from having to establish each Defendant's actual knowledge of the specific transactions involving their funds, which they have not done. *See S&S Worldwide*, 509 F. Supp. 3d at 1165; *Casey*, 127 Cal. App. 4th at 1152. In each of Plaintiffs' cited cases, the defendants had ignored numerous red flags of *the specific wrongdoing at issue*. *See In re First All. Mortg. Co.*, 471 F.3d 977, 994 (9th Cir. 2006) (finding that defendant Lehman Brothers had actual knowledge of First Alliance Mortgage Company's fraud was not unreasonable where Lehman received reports detailing First Alliance's fraudulent practices and Lehman officers expressed concerns about these practices at First Alliance); *In re Woodbridge Invs. Litig.*, 2020 WL 4529739, at *2, *6-7 (C.D. Cal. Aug. 5, 2020) (plaintiffs alleged that "[d]efendant received more than 100 alerts, or 'red flags,' triggered *by the Woodbridge accounts* in 2016 and 2017 alone," in addition to other evidence of actual knowledge). Here, by contrast, Plaintiffs do not allege any specific facts that any Defendant (much less all of them) had actual and specific knowledge of the hackers' laundering of Plaintiffs' digital assets at issue, rendering their aiding and abetting claim fatally deficient.

### III. THE COURT LACKS PERSONAL JURISDICTION OVER OKC HOLDINGS AND AUX CAYES

#### A. RICO Does Not Create a Separate Basis for Personal Jurisdiction Over the Foreign Defendants

RICO's nationwide service of process provision does not create a basis for personal jurisdiction over foreign RICO defendants. (MTD at 11-12 (collecting cases).) In their Opposition, Plaintiffs mistakenly argue otherwise (Opp. 12-13), citing cases involving different federal statutes which—unlike RICO—include *worldwide* service of process provisions authorizing service "wherever the defendant may be found." *See Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1414 (9th Cir. 1989) (Section 12 of the Clayton Act); *United States ex rel. Lesnik v. Eisenmann SE*, 2021 WL 4243399, at *6 (N.D. Cal. Sept. 17, 2021) (Section 3732 of the False Claims Act), *aff'd*, *sub nom. United States ex*

*rel. Resnik v. ISM Vuzem d.o.o.*, 112 F.4th 816 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 1171 (2025); *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1314 & n.1, 1316 (9th Cir. 1985) (Section 27 of the Securities Exchange Act);[8] *see also Mocha Mill, Inc. v Port of Mokha Inc.*, 2019 WL 1048252, at *6 (N.D. Cal. Mar. 5, 2019) (rejecting plaintiffs' invocation of RICO's service of process provision and relying on *Go-Video*, involving the Clayton Act's worldwide service of process provision, in dicta).

Here, by contrast, RICO's nationwide service of process provision contains no such language and only authorizes service "in any judicial district of the United States." 18 U.S.C. § 1965(b). Moreover, courts hold that RICO's national contacts test for personal jurisdiction applies only when a defendant is served in the United States under RICO's nationwide service provision. *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1182 (C.D. Cal. 1998). Because the Foreign Defendants are not subject to RICO's nationwide service provision, RICO does not provide a basis for personal jurisdiction based on nationwide contacts. *See id.*[9] Rather, Plaintiffs must establish personal jurisdiction via the traditional minimum contacts analysis under California's long-arm statute. *See id.* at 1184. They cannot do so.

### B. Plaintiffs Have Not Established General or Specific Personal Jurisdiction Over the Foreign Defendants

Plaintiffs fail to establish the Foreign Defendants' minimum contacts with California to support personal jurisdiction. (MTD at 13-15.) Plaintiffs assert three purported bases for specific jurisdiction over the Foreign Defendants: (i) OKX.com's alleged use of third-party servers in California, (ii) OKC Holdings' purported control of OKCoin USA, and (iii) various unsupported, conclusory allegations. (MTD at 12-15.) None of these bases is sufficient.

First, OKX.com's alleged use of third-party servers in California could not give rise to specific jurisdiction over the Foreign Defendants. (MTD at 13); *see Hungerstation LLC v. Fast Choice LLC*,

---

[8] In *Vigman*, the Ninth Circuit refers to Section 27 as a "nationwide" service of process provision, but the provision itself contains even broader language authorizing service "wherever the defendant may be found." *Vigman*, 764 F.2d at 1314 & n.1. The Ninth Circuit later clarified in *Go-Video* that this is the same "worldwide" language found in the Clayton Act's provision. *Go-Video*, 885 F.2d at 1414.

[9] Plaintiffs argue that RICO's national contacts test should apply because *Doe* and its progeny reference defendants "served outside the United States" and here, the Foreign Defendants' U.S.-based counsel accepted service on their behalf. (Opp. 12 n.13.) The distinction makes no difference, as *Doe* makes clear that RICO's national contacts test applies only when a defendant is served under RICO's nationwide service provision, which did not happen here. *See Doe*, 27 F. Supp. 2d at 1182-83 (explaining that because RICO does not provide for worldwide service, it would be "inappropriate for a federal court to effectively extend [its] territorial reach" by applying a national contacts test to defendants not served under the statute).

2020 WL 137160, at *5 (N.D. Cal. Jan. 13, 2020) (foreign company's use of California servers did not establish personal jurisdiction). Plaintiffs argue that *Hungerstation* is distinguishable because, in that case, the defendants lacked any connection to California aside from their use California servers. (Opp. 13.) Even if true, Plaintiffs' other purported grounds for personal jurisdiction here all lack merit. Therefore OKX.com's use of California servers does not move the needle. *See id.*; *see also WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 671 (N.D. Cal. 2020) ("[T]he mere location of a third party or its servers is insufficient to give rise to personal jurisdiction."). Plaintiffs also attempt to distinguish *WhatsApp* because the defendants there disputed their use of third-party servers in California. (Opp. 14 n.15.) But the *WhatsApp* court held that, regardless of this factual ambiguity, defendants' purported use of California servers does not give rise to personal jurisdiction. *WhatsApp*, 472 F. Supp. 3d at 671. The same is true here.

Second, Plaintiffs fail to establish personal jurisdiction based on OKC Holdings' purported control over OKCoin USA. (MTD at 14.) Plaintiffs offer only bare, conclusory statements regarding an alleged relationship between OKCoin USA and OKC Holdings. (*Id.*) But establishing alter-ego jurisdiction requires "more than labels and conclusions." *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1004-05 (N.D. Cal. 2020). In the Opposition, Plaintiffs claim they have established several alter-ego factors but do not provide any factual support, citing only to an organizational chart that purports to illustrate Defendants' corporate structure. (Opp. 15 (citing AC ¶ 28).) This is a far cry from the showing required for a court to pierce the corporate veil under alter-ego jurisdiction. *See Reynolds*, 481 F. Supp. 3d at 1004 (disregarding the corporate entity is an "extreme remedy" reserved for "exceptional circumstances").[10]

Finally, Plaintiffs' various remaining allegations of contacts with California are conclusory and insufficient to establish personal jurisdiction. (MTD at 15); *DFSB Kollective Co. v. Bourne*, 897 F. Supp. 2d 871, 880 (N.D. Cal. 2012) (website is insufficient to confer personal jurisdiction). Notably, in attempting to rebut Defendants' argument that they offer only bare allegations, Plaintiffs do not even

---

[10] Plaintiffs are wrong that Aux Cayes "has already submitted to U.S. jurisdiction by pleading guilty to the DOJ's criminal charges." (Opp. 12.) Aux Cayes' submission to jurisdiction in that proceeding does not give rise to personal jurisdiction here. *See Aldrich v. Nat'l Collegiate Athletic Ass'n*, 484 F. Supp. 3d 779, 792 (N.D. Cal. 2020); *United States v. 51 Pieces of Real Prop. Roswell, N.M.*, 17 F.3d 1306, 1313 (10th Cir. 1994).

13

point to a single alleged fact in the Amended Complaint. (Opp. 15.) Plaintiffs quote *DFSB* that the operation of an interactive website "helps determine the *likelihood* that personal jurisdiction can be exercised" (Opp. 15), but ignore that this alone is insufficient. *DFSB*, 897 F. Supp. 2d at 880-81 (N.D. Cal. 2012) (that defendant's website was interactive and accessible from California was insufficient to support purposeful direction). Here, as in *DFSB*, Plaintiffs fail to allege any other sufficient facts to support exercising personal jurisdiction over the Foreign Defendants. Therefore, the Court should dismiss the Amended Complaint as against the Foreign Defendants.

Finally, Plaintiffs contend that if they cannot establish jurisdiction under California's long-arm statute, then they "easily satisfy the federal long-arm statute" in Federal Rule of Civil Procedure 4(k). (Opp. 13 n.14.) But Plaintiffs provide no factual support for this assertion. Plaintiffs cite to *Will Co.* as an example where a foreign defendant "purposely directed" its website at the U.S. under Rule 4(k). (*Id.*) But there, the plaintiff alleged specific facts demonstrating purposeful direction, including that defendants chose to prioritize loading speeds for U.S. users at the expense of users in other countries, that the website's terms and conditions and privacy policy contained language relevant only to U.S. users, and that the website was viewed by U.S. users more than 1.3 million times. *See Will Co. v. Lee*, 47 F.4th 917, 924-25 (9th Cir. 2022). Plaintiffs allege no similar facts here.

## IV.   CONCLUSION

For all the foregoing reasons and those stated in Defendants' Motion, the Amended Complaint is incurably flawed and should be dismissed in its entirety with prejudice.

DATED: June 25, 2025

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP


*/s/ Mark R. S. Foster*
Mark R. S. Foster

*Attorneys for Defendants*
*OKCoin USA Inc., Aux Cayes FinTech Co. Ltd., and*
*OKC Holdings Corporation*