# Exhibit 1

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/12/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                         :

SOFIA RECA, *individually and on behalf of all others*  :
*similarly situated, et al.*,                          :

                                   :               1:24-cv-6316-GHW

                       Plaintiffs,  :

                                   :     MEMORANDUM OPINION &
                 -v-                      :                 ORDER

                                   :

FLASHDOT LIMITED F/K/A PHOENIXFIN  :
LIMITED, *et al.*,                          :

                     Defendants.  :
------------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

Plaintiffs allege that unknown hackers collectively stole millions of dollars' worth of cryptocurrency from their digital wallets. As a result, Plaintiffs filed this action, asserting violations of 18 U.S.C. § 1962(c) (the "RICO Claim"), 18 U.S.C. § 1962(d) (the "RICO Conspiracy Claim," collectively the "RICO Claims"), and violations of state law, not against the alleged thieves—whose identities remain a mystery—but against entities and individuals that operated KuCoin[1] ("KuCoin"), a cryptocurrency exchange, and Chainalysis, Inc ("Chainalysis"), a software company retained by KuCoin to assist KuCoin with identifying, and purportedly blocking, bad actors using KuCoin to launder cryptocurrency and engage in fraudulent transactions.

Plaintiffs allege that following an "extensive investigation," they determined that their stolen cryptocurrency was transferred in a series of transactions, and ultimately, was deposited in accounts at KuCoin. Plaintiffs allege that—even though Chainalysis's proprietary Know-Your-Transaction

---

[1] The KuCoin Defendants are Flashdot Limited f/k/a PhoenixFin Limited ("Flashdot"), Mek Global Limited ("Mek"), Peken Global Limited ("Peken"), PhoenixFin Private Limited ("PhoenixFin"), Chun Gan ("Gan"), and Ke Tang ("Tang").

software ("KYT")[2] provided "red flags," alerting KuCoin that certain transactions were potentially fraudulent—KuCoin failed to properly implement that software to prevent cryptocurrency laundering on its platform and failed to implement subsidiary procedures or dedicate additional resources to prevent fraudulent transactions.  Plaintiffs allege that Chainalysis was "complicit" in KuCoin's refusal to prevent cryptocurrency laundering.  As a result of KuCoin's and Chainalysis' alleged failure to prevent laundering, Plaintiffs argue that they were injured because they lost the ability to track and potentially recover their stolen cryptocurrency.[3]

On November 13, 2025, Magistrate Judge Sarah Cave issued a thoughtful and well-reasoned R&R recommending that the Court grant Defendants' motions to dismiss and deny Plaintiffs leave to amend their claims under 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d).  Plaintiffs timely objected. For the reasons that follow, the Court adopts Judge Cave's R&R in large part—except that the Court concludes that Plaintiffs have made a sufficient showing that the Court has subject matter jurisdiction over their state law claims—and Defendants' respective motions to dismiss are GRANTED.

## II.    BACKGROUND

### A.    Facts[4]

Familiarity with the facts of this case is presumed.  The reader is referred to the R&R for a comprehensive description of the facts and procedural history of this case.  A brief summary of the relevant allegations and procedural history is provided here for context.

---

[2] Unless otherwise indicated, this opinion uses the acronyms and abbreviations as they were used in Judge Cave's Report and Recommendation.  Dkt. No. 80 ("R&R").

[3] Specifically, Plaintiffs allege that KuCoin's "refus[al] to implement adequate KYC and AML policies and procedures" enabled "the bad actors who stole Plaintiffs' and Class members' cryptocurrency . . . to launder it through KuCoin." Dkt. No. 49 ("FAC") ¶ 164.  "Plaintiffs attribute the loss of 'the ability to track and potentially recover their stolen cryptocurrency' to 'the laundering of their stolen cryptocurrency through KuCoin.'"  R&R at 4 (quoting FAC ¶ 164).

[4] The facts are taken from the First Amended Complaint, Dkt. No. 49 ("FAC"), and are accepted as true for the purposes of this motion.  *See, e.g.*, *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Procedural History

Ms. Reca filed her initial complaint on August 21, 2024, which named only the entities and individuals that operated KuCoin as Defendants. Dkt. No. 1. On February 21, 2025, the Court held a pre-motion conference to discuss the KuCoin Defendants' anticipated motion to dismiss. Dkt. Nos. 37 & 39. During that conference, the parties agreed that New York law governs Plaintiffs' state law claims. Dkt. No. 40 at 23:21–25; 40:1–45:15.

On March 24, 2025, KuCoin moved to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. Pro. 12(b)(6). Dkt. Nos. 45 & 46. In lieu of filing an opposition in response to KuCoin's motion to dismiss, Ms. Reca filed the operative complaint—the FAC—on October 25, 2024. *See generally* FAC. The FAC added James Supples as a plaintiff and Chainalysis as a defendant. *See generally id.*

Plaintiffs' FAC asserts three causes of action under both RICO and state law. *See generally id.* Plaintiffs allege that KuCoin and Chainalysis violated 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d) because they operated an unlicensed cryptocurrency exchange, violated the BSA, engaged in money laundering, and thus permitted the transfer of Plaintiffs' stolen property.[5] *Id.* ¶¶ 223–45. Plaintiffs also assert a conversion claim against KuCoin (the "Conversion Claim"), *id.* ¶¶ 246–60, and a claim for aiding and abetting conversion against both KuCoin and Chainalysis (the "Aiding & Abetting Claim," and, together with the Conversion Claim, the "State Law Claims"), *id.* ¶¶ 261–74. Plaintiffs assert these claims individually and on behalf of a putative class of persons "whose cryptocurrency was removed from a digital wallet, account, or protocol, as a result of a hack, ransomware attack, or theft." *Id.* ¶ 214. On July 29, 2025, Defendants moved to dismiss the FAC. Dkt. Nos. 66 ("KuCoin Mem."), 68 ("Chainalysis Mem."). Judge Cave held oral argument with respect to Defendants' motion to dismiss on October 16, 2025. *See generally* Dkt. No. 80 ("Tr.").

---

[5] Although "Plaintiffs combine the RICO Claim and the RICO Conspiracy claim into a single count, Count 1 [FAC] ¶¶ 223–245," the R&R discussed each claim separately. R&R at 15 n.4.

Judge Cave issued the R&R on November 13, 2025, recommending that the Court grant Defendants' motions and deny Plaintiffs leave to amend. *See generally* R&R. She concluded that Plaintiffs had not stated a RICO claim under either §§ 1962(c) or 1962(d) against either KuCoin or Chainalysis. *Id.* at 50.

First, Judge Cave recommended that the Court dismiss Plaintiffs' RICO Claim because Plaintiffs failed to establish either proximate or but-for causation and because Plaintiffs failed to allege a RICO enterprise. *Id.* at 23–37. She concluded that Plaintiffs' theory of proximate cause was implausible for three reasons: (1) because "implicit in Plaintiffs' two-phase formulation is the obvious, indisputable fact that the supposed Phase 2 inability-to-track injury would not exist without the theft injury in Phase 1"; (2) because Plaintiffs' theory of proximate causation involved an "indeterminate number of intervening events and circumstances"; and because (3) Plaintiffs' alleged inability-to-track injury does not necessarily follow from Defendants' alleged predicate acts.[6] *Id.* at 27–30. Second, Judge Cave concluded that because Plaintiffs failed to adequately allege their substantive RICO Claim under § 1962(c), that failure requires dismissal of their RICO Conspiracy Claim. *Id.* at 40. Accordingly, Judge Cave recommended that the Court dismiss Plaintiffs' RICO Conspiracy Claim. *Id.*

With respect to Chainalysis specifically, Judge Cave concluded that Plaintiffs failed to plead that it engaged in two predicate acts, *id.* at 19, partly because "[w]hen pressed at oral argument to identify Chainalysis's two predicate acts, [] Plaintiffs' counsel identified just one—providing its software to KuCoin—and conceded that Plaintiffs' 'stronger' claim against Chainalysis was RICO conspiracy rather than a direct RICO violation." *Id.* at 20 (quoting Tr. at 45:5–46:12). Because

---

[6] Although Judge Cave concluded that "Plaintiffs' failure to plausibly allege causation and a RICO enterprise are sufficient grounds on which to . . . dismiss Plaintiffs' RICO claim," she "consider[ed] Defendants' remaining arguments for completeness." R&R at 37 n.10. She concluded that Plaintiffs' have adequately alleged a domestic injury with respect to their RICO Claim but noted that her conclusion did not alter the outcome of her recommendation to grant Defendants' motion to dismiss. *Id.* at 37–40.

4

Judge Cave concluded that Plaintiffs had failed to state either their RICO Claim or their RICO Conspiracy Claim, she recommended that the Court, in its discretion, decline to exercise supplemental jurisdiction over Plaintiffs' State Law Claims.  *Id.* at 41.

Because Defendants argued that Plaintiffs' State Law Claims should be dismissed with prejudice, Judge Cave "for completeness" considered Defendants' remaining arguments with respect to those claims as well.  *Id.*  First, Judge Cave concluded that New York law, and not Florida law,[7] applies to Plaintiff Reca's State Law Claims.  Applying New York law, Judge Cave concluded that Plaintiff Reca's State Law Claims were filed outside the applicable three-year statute of limitations period and that no "exceptional circumstances" exist in this case that warrant equitable tolling of the limitations period.  *Id.* at 42–44.  Judge Cave recommended that, if the Court were to reach this argument, that Plaintiff Reca's state law claims should be dismissed as time barred.  *Id.* at 44.  She also recommended that the Court dismiss Plaintiffs' Conversion Claim for failure to state a claim because, should the Court reach this argument, Plaintiffs had failed to demand that Defendants return their stolen cryptocurrency and because Plaintiffs failed to allege that KuCoin "actually knew" that the cryptocurrency was stolen.  *Id.* at 44–46.  And she recommended that the Court dismiss Plaintiffs' Aiding & Abetting Claim because it is implausible.  *Id.* at 46–48.

Finally, Judge Cave recommended that the Court dismiss Plaintiffs' RICO Claim and RICO Conspiracy Claim with prejudice and without leave to amend because, at oral argument, "Plaintiffs offered no proposed amendments regarding causation and have not even suggested they had anything further to allege as to Chainalysis," and because, "Defendants filed pre-motion letters highlighting the deficiencies in the Complaint, which Judge Woods discussed with the

---

[7] Notwithstanding Plaintiffs' prior representations to the Court that New York law applies to the State Law Claims in this case, Dkt. No. 40 at 40:1–45:15; Dkt. No. 38 at 3 & n.4, in their omnibus opposition to Defendants' motion to dismiss, Plaintiffs contend that because Ms. Reca is domiciled in Florida, she is "entitled to timely bring her common law claims under Florida law."  Dkt. No. 73 ("Opp'n") at 32.

parties . . . following which Plaintiffs filed" the operative complaint.  *Id.* at 49.  Judge Cave concluded that "[t]o grant Plaintiffs leave to amend, then, would be allowing them a 'third bite at the apple.'"  *Id.* (internal citation omitted).  And because "Plaintiff's ambiguous references to additional facts they might allege fail to remedy the defects in the RICO elements of causation and enterprise," Judge Cave concluded that any amendment in this case would be futile.  *Id.* at 49–50.

Plaintiffs filed timely objections to the R&R on November 26, 2025.[8]  Dkt. No. 83 ("Pls.' Objections" or "Objections").  Plaintiffs objected to most of Judge Caves's conclusions, including those that Judge Cave included for "completeness," but which, as she noted, were not necessary to the R&R and which the Court may decline to reach.  Many of Plaintiffs' Objections simply reiterate the same arguments Plaintiffs made before Judge Cave, which Judge Cave thoughtfully considered, but ultimately concluded were either not persuasive or insufficient to render either Plaintiffs' RICO Claim or RICO Conspiracy plausible.

First, Plaintiffs objected to Judge Caves's conclusion that their RICO Claim is deficient.  *Id.* at 14–25.  Plaintiffs argued that because Judge Cave erred "in characterizing the acts of the KuCoin Crypto-Wash Enterprise as being part of the legitimate 'regular affairs of [KuCoin],'" *id.* at 15 (quoting R&R at 36), she erred in concluding that the FAC "fails to plausibly allege a RICO enterprise distinct from Defendants," *id.* at 15 (quoting R&R at 36).  Plaintiffs argued that the FAC plausibly alleges distinctiveness because the enterprise "serviced bad actors seeking to eliminate traceability of stolen crypto," which "is distinct from KuCoin's purported legitimate business purpose of serving as a market for legal cryptocurrency transactions by investors and speculators." *Id.*  And Plaintiffs argued that the R&R erred by failing to credit Plaintiffs' allegations with respect to their injury—that the injury, as alleged, is not the initial theft of their cryptocurrency, but rather

---

[8] The Court does not discuss Plaintiffs' objections in the same order as the objections were presented in Plaintiffs' brief.  *See generally* Pls.' Objections.

Plaintiff's loss of the ability to track their stolen cryptocurrency and potentially recover it.[9]  *Id.* at 16 (quoting FAC ¶ 164).

Plaintiffs also objected to the R&R's conclusion that they failed to plausibly allege either proximate or but-for causation.  *Id.* at 21–25.  With respect to proximate causation, Plaintiffs argued that Judge Cave erred by "draw[ing] an inference in Defendants' favor by crediting a series of hypothetical and purportedly 'intervening' acts," which, Plaintiffs argued, were "unrelated" to their alleged injury—the laundering of their stolen cryptocurrency and not the initial theft.  *Id.* at 21–24.  And Plaintiffs objected to Judge Cave's conclusion that they failed to plausibly allege but-for causation for the same reasons they object to her conclusions with respect to proximate causation because Judge Cave did not credit their injury as alleged.  *Id.* at 24–25 (quoting R&R at 32).

Second, Plaintiffs objected to Judge Caves's conclusion that they failed to plausibly plead their RICO Conspiracy Claim.  *Id.* at 24–25.  They contended that because the R&R did not provide an independent basis for dismissing the RICO Conspiracy Claim other than Plaintiffs' failure to plausibly allege their substantive RICO Claim, it too, is properly pleaded.  *Id.*

Next, Plaintiffs objected to Judge Caves's conclusions with respect to their State Law Claims. Plaintiffs argued that, even if the Court dismisses Plaintiffs' RICO Claims with prejudice, the Court can still properly exercise diversity jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332(d).  Pls.' Objections at 6 (arguing, in the alternative, that their State Law Claims should be dismissed without prejudice).  Plaintiffs also argued that Judge Cave erred in concluding that they are judicially estopped from arguing that Florida law applies to Plaintiff Reca's State Law Claims, *id.* at 7, and that her State Law Claims are timely under Florida law.  And Plaintiffs argued that the R&R

---

[9] With respect to their alleged injury, Plaintiffs also object to Judge Cave's notes that Plaintiffs likely could not put forth a damages methodology for determining the value of their alleged loss of the ability to track their cryptocurrency.  Pls.' Objections at 19–20.  Because the Court concludes that Plaintiffs have failed to allege either a RICO enterprise or causation, the Court need not address Plaintiffs' objections with respect to damages.

erred in concluding that Plaintiffs failed to state a claim for Conversion or for Aiding & Abetting. *Id.* at 9–14.  With respect to Plaintiffs' Conversion Claim, Plaintiffs argued that the R&R erred in finding that Plaintiffs were required to make a "'demand' for the return of their cryptocurrency," and in concluding that Plaintiffs' allegations of "actual knowledge" are implausible.  *Id.* at 10.  And with respect to Plaintiffs' Aiding & Abetting Claim, Plaintiffs argued that that Judge Cave erred in concluding that Plaintiffs failed to plausibly allege actual knowledge and both affirmative and substantial assistance.  *Id.* at 13.

Finally, Plaintiffs objected to Judge Caves's conclusion that the Court should deny Plaintiffs leave to amend their RICO Claim and RICO Conspiracy Claim.  *Id.* at 3–6.  They argued that the Court should grant leave to amend because "even though the Court held a pre-motion conference" on KuCoin's first motion to dismiss, and even though Plaintiffs amended their complaint after that conference and "after the filing of [KuCoin's] motion to dismiss, the issuance of the R&R on November 13, 2025 was the first time Plaintiffs had the benefit of any court's ruling on any substantive issue in this case."  *Id.* at 4 (quoting *Barron v. Helbiz, Inc.*, No. 21-278, 2021 WL 4519887 (2d. Cir. Oct. 4, 2021) (summary order); then citing *Cresci v. Mohawk Valley Cmty. Coll.*, 693 Fed. Appx. 21 (2d. Cir. 2017) (summary order)).

Defendants did not object to the R&R but filed briefs in opposition to Plaintiffs' Objections. *See generally* Dkt. No. 85 ("KuCoin Opp'n"); Dkt. No. 86 ("Chainalysis Opp'n").  KuCoin's opposition characterized "the crux" of Plaintiffs' Objections as dependent on Plaintiffs' theory of their injury.  KuCoin Opp'n at 4.  KuCoin asserted that Plaintiffs are not entitled to wholesale acceptance of the inferences they urge the Court to draw and that Judge Cave did not err in declining to credit implausible allegations.  *Id.* at 6 n.6.  Chainalysis argued that because Plaintiffs do not object to Judge Cave's conclusions with respect to Chainalysis, that the Court should review those portions of the R&R for clear error.  Chainalysis Opp'n at 5–6.

### III.    LEGAL STANDARD

#### A.  Standard of Review of a Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  Parties may raise specific, written objections to the report and recommendation within fourteen days of being served with a copy of the report.  *Id.*; *see also* Fed. R. Civ. P. 72(b)(2).

The Court reviews for clear error those parts of the report and recommendation to which no party has timely objected.  28 U.S.C. § 636(b)(1); *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).  When a party timely objects to a magistrate judge's report and recommendation, a district court reviews de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  "To the extent . . . that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865 (LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." (citation and internal quotation marks omitted)).  "Objections of this sort are frivolous, general and conclusory and would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Vega v. Artuz*, No. 97-cv-3775 (LTS)(JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (citations and internal quotation marks omitted).  "The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every argument which it presented to the Magistrate Judge." *New York City Dist. Council of*

9

*Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) (internal citation and quotation marks omitted).

Finally, "it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (internal citation and quotation marks omitted); *accord Piligian v. Icahn Sch. of Med. at Mt. Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." (quoting *Syed Mohammad Aftab Kartm, MD, Faans v. New York City Health and Hospitals Corp., et al.*, No. 17-cv-6888, 2020 WL 2999228, at *3 (S.D.N.Y. June 4, 2020))); *Watson v. Geithner*, No. 11-cv-9527, 2013 WL 5441748, at *2 (S.D.N.Y. Sep. 27, 2013) ("[A] party waives any arguments not presented to the magistrate judge." (emphasis in original)).

### B. Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). To determine plausibility, courts follow a "two-pronged approach." *Ashcroft*, 556 U.S. at 679. "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing

court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### C. RICO

To recover civil damages under RICO, Plaintiffs must allege: "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business of property; and (3) that the injury was caused by the violation of Section 1962." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001))).  To establish a RICO violation under 18 U.S.C. § 1962, Plaintiffs must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (quoting *DeFalco*, 244 F.3d at 305).

### IV.   DISCUSSION

The Court has reviewed for clear error the portions of the R&R to which neither party objected and reviewed *de novo* the portions of the R&R to which Plaintiffs objected.  For purposes of its evaluation of the R&R, the Court treats Plaintiffs' Objections as sufficiently precise to merit *de novo* review.

As KuCoin contends, Plaintiffs' Objections regarding the recommended dismissal of their RICO Claims all largely hinge on whether Judge Cave erred in failing to draw appropriate inferences in their favor with respect to their two-phase injury theory—if the Court determines that Plaintiffs'' theory is implausible then Plaintiffs' Objections likewise fail.  And as Chainalysis contends, Plaintiffs do not object to any of R&R's conclusions with respect to it.  Specifically, as Chainalysis argues, "the Objections do not even address—let alone refute—the R&R's conclusion that Plaintiffs failed to plead two or more predicate acts, participation in the 'operation or management' of a RICO enterprise, or causation as to Chainalysis."  Chainalysis Opp'n at 1–2.  For the reasons that follow, the Court rejects Plaintiffs' Objections, finds no clear error in the portions of the R&R that were not the subject of objections, and—except for the recommendation that the Court may decline to

11

exercise jurisdiction over Plaintiffs' State Law Claims—otherwise adopts the R&R's recommendations.

### A. Clear Error Review

The Court finds no clear error in Judge Cave's conclusions to which neither party objected. Judge Cave recommended that the Court grant Chainalysis's motion to dismiss Plaintiffs' RICO Claim because Plaintiffs only alleged that Chainalysis engaged in one predicate act and did not identify a second act either in their briefing or at oral argument. R&R at 20. And Judge Cave recommended that the Court dismiss Plaintiffs' RICO Claim against Chainalysis because the FAC does not plausibly allege that Chainalysis participated in the "operation or management" of Plaintiffs' alleged RICO enterprise and because Plaintiffs did not plausibly allege that a "common purpose" with KuCoin with respect to their alleged enterprise. R&R at 36–37 (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993)). This alone warrants dismissal of Plaintiffs' RICO Claims against Chainalysis. As to Plaintiffs' Aiding & Abetting Claim against Chainalysis, Judge Cave concluded this claim was "implausible" because Plaintiffs did not allege either knowledge or substantial assistance. *Id.* at 47–48. Finding no clear error in these recommendations, the Court adopts Judge Cave's conclusions and grants Chainalysis's motion to dismiss, although those specific alternative bases requiring dismissal as to Plaintiffs' RICO Claim and Plaintiffs' State Law Claims against Chainalysis are also addressed below.

### B. Plaintiffs' Objections

#### i. Proximate Causation

Judge Cave correctly recommended that the Court find that Plaintiffs' failed to adequately allege proximate causation because Plaintiffs': (1) injuries would not exist absent the bad actors' initial theft of their cryptocurrency; (2) theory would require that the Court look "beyond the first step in the causal chain"; and (3) alleged injuries "do not necessarily follow" from Defendants'

alleged predicate acts.  R&R at 26–30.  As she concluded, Plaintiffs' two-phase formulation of their injury and proximate causation is implausible because it would require the Court to look beyond the first step in the causal chain and because Plaintiffs' injury would have occurred regardless of any acts by Defendants.  *Id.* at 26–28.

At the outset, Plaintiffs urge the Court to draw an inference in their favor and credit their two-phase theory of injury.[10]  But as KuCoin contends, Plaintiffs are not entitled to wholesale acceptance of the inferences they urge the Court to draw.  KuCoin Opp'n at 6 n.6.  While the Court must accept as true "the 'well-pleaded factual allegations,' Judge Cave did not err in concluding that Plaintiffs' allegations fail to "'plausibly give rise to an entitlement to relief.'"  *Hayden*, 594 F.3d at 161 (quoting *Iqbal*, 556 U.S. at 679); *Iqbal*, 556 U.S. at 567 (noting that an "obvious alternative explanation" existed on the face of Plaintiff's complaint).  Judge Cave correctly found that Plaintiffs' theory of proximate causation as alleged is implausible for the three reasons identified above.  R&R at 27.  Similarly, Plaintiffs urge the Court to decline to consider any "hypothetical and purportedly 'intervening' acts" relied upon by Judge Cave.  Pls.' Objections at 29.  However, a court may "engage[] in . . . counterfactual reasoning at the pleadings stage" because "proximate causation is meant to prevent . . . intricate, uncertain inquiries from overrunning RICO litigation."  *Empire Merchants, LLC v. Reliable Churchill LLP*, 902 F.3d 112, 143 (2d Cir. 2018).  Judge Cave properly found that Plaintiffs' theory of injury and proximate causation as alleged involved multiple intervening acts that plausibly could have contributed to Plaintiffs' loss of the ability to track their cryptocurrency.

Similarly, Plaintiffs urge the Court to focus not on any events in "Phase I"—the theft of their cryptocurrency—but rather to only look to the events that occurred in "Phase II," when

---

[10] As Judge Cave noted, Plaintiffs do not identify any case "in which a court has endorsed the sort of two-phase injury that they propound here."  R&R at 29.

Plaintiffs allege they were injured because they lost the ability to track their stolen cryptocurrency.[11]

Pls.' Objections at 18–20. But as Judge Cave explained, Plaintiffs' alleged inability to track would

not have had any impact on them had the theft not occurred,[12] and courts in this Circuit "have held

that concealment of the underlying illegal activity cannot be the proximate cause of a plaintiff's

injury because the plaintiff would have suffered the same injury from the underlying illegal activity

regardless of whether the concealment occurred." *Id.* (quoting *Empire Merchants, LLC v. Reliable

Churchill LLP*, No. 16 Civ. 5226, 2017 WL 5559030 (E.D.N.Y. Mar. 16, 2017), *aff'd* 902 F.3d 112 (2d

Cir. 2018); then citing *Vicon Fiber Optics Corp. v. Scrivo*, 201 F. Supp. 2d. 216, 219 (S.D.N.Y. 2002) ("A

predicate act does not proximately cause an injury if it merely furthers, facilitates, permits or

conceals an injury that happened or could have happened independently of the act.")). Judge Cave

properly concluded that Plaintiffs' allegations were implausible because they would require the Court

to go "beyond the first step in the causal chain." R&R at 28. Accordingly, Judge Cave properly

found that, even accepting Plaintiffs' allegations of a two-phase injury as true, such allegations could

not plausibly support that Defendants' acts proximately caused that injury.

First, Plaintiffs urge the Court to reject Judge Cave's conclusion that "the predicate act[s] of

operating an unlicensed MTB and engaging in money laundering and Plaintiffs' separate inability to

track their lost cryptocurrency do not necessarily follow from one another." Pls.' Objections at 22–

23 (quoting R&R at 28). Here, again, Plaintiffs argue that Judge Cave erred by focusing on the

alleged theft "instead of the laundering." *Id.* But as Judge Cave explained, and as Plaintiffs concede,

Pls.' Objections at 30, Plaintiffs' cryptocurrency was stolen irrespective of the relationship between

---

[11] Plaintiffs cite *Alix* for the proposition that "proximate cause is a flexible concept that is generally not amenable to bright-line rules." Pls.' Objections at 21 (quoting *Alix v. McKinsey & Co. Inc.*, 23 F.4th 196, 206 (2d. Cir. 2022)). But as Judge Cave explained, the Second Circuit made clear that its decision in *Alix* was "*sui generis* and of little, if any, application to 'ordinary' RICO cases" that do not implicate Article III court's "supervisory responsibilities." R&R at 29–30 (citing *Alix*, 23 F.4th at 196)).
[12] Indeed, if not for the initial theft of Plaintiffs' cryptocurrency, Plaintiffs would not have lost the ability to track their cryptocurrency at all.

KuCoin and Chainalysis. R&R at 28. Accordingly, their asserted injury would have occurred regardless of KuCoin's KYC and AML practices. *Id.* Therefore, as Judge Cave properly concluded, "sorting out the 'counterfactual' scenarios in which Plaintiffs would have been able to track their cryptocurrency notwithstanding Defendants' alleged RICO violations 'would prove speculative to the extreme.'" *Id.* (emphasis omitted) (quoting *Empire Merchants, LLC*, 902 F.3d at 143; then citing *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 269 (1992); then citing *Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 281 (S.D.N.Y. 2019)).

Second, Plaintiffs argue that Judge Cave erred in inferring that KuCoin was properly using KYT software to identify cryptocurrency laundering and potentially fraudulent transactions. Pls.' Objections at 30. But Judge Cave did not err in crediting the allegations that Plaintiffs themselves make in their FAC. R&R at 28 (citing FAC ¶¶ 70–78, 160–63, 153, 236). As Judge Cave explained, "Plaintiffs allege that KuCoin did start using Chainalysis's KYT software in mid-2020 and Chainalysis did provide KuCoin with bad-actor alerts, but Plaintiffs' cryptocurrency was stolen anyway." *Id.* Plaintiffs argue that Judge Cave erred by making this finding because the FAC alleges that "[e]ven though Chainalysis enabled KuCoin to have access to information about illicit transactions, KuCoin refused to take any steps to prevent them." Pls.' Objections at 23 (quoting FAC ¶ 34). Plaintiffs' argument is not persuasive because, in so arguing, Plaintiffs admit that KuCoin did implement and use the KYT software, they only dispute whether KuCoin then took subsidiary steps based on that use to prevent any potentially fraudulent transactions.

Finally, Plaintiffs argue that Judge Cave erred in concluding that "despite the presence of Chainalysis, 'Plaintiffs' cryptocurrency was subsequently stolen anyway.'" Pls.' Objections at 23 (quoting R&R at 28). Plaintiffs argue that they do not allege that any defendant could have prevent the theft of Plaintiffs' cryptocurrency, only that Defendants could have prevented laundering stolen cryptocurrency at KuCoin. *Id.* Plaintiffs' argument necessarily relies on accepting their two-phase

theory of causation, which, for the reasons explained above, the Court finds implausible.  Judge

Cave did not err in finding something that was necessarily true—irrespective of KuCoin's use of

Chainalysis's KYT software, Defendants' alleged conduct could not have prevented the theft of

Plaintiffs' cryptocurrency by unidentified third-party bad actors.  Accordingly, the Court finds

Plaintiffs' Objections to this portion of the R&R unpersuasive.[13]

### ii.  But-For Causation

Judge Cave correctly concluded that Plaintiffs failed to plausibly allege that Defendants were

the but-for cause of their alleged injury.  She identified the proper standard for determining whether

a civil RICO plaintiff had adequately alleged but-for causation.  R&R at 30 (quoting *UFCW Local

1776 v. Eli Lilly & Co.*, 620 F.3d 121, 132 (2d Cir. 2010)).

Plaintiffs again urge the Court to adopt their two-phase theory of injury and argue that Judge

Cave erred in inferring that "without the theft, 'Plaintiffs would not have been in the position of

needing to recover their cryptocurrency'" because this finding suggests that "Plaintiffs only valued

the ability to track their crypto [once] it was stolen."  Pls.' Objections at 31 (quoting R&R at 32).

But even accepting as true Plaintiffs' allegations that there is independent value in their ability to

track their stolen cryptocurrency on the blockchain, Judge Cave properly concluded that "absent the

bad actors' theft, Plaintiffs would not have been in the position of needing to [track and] recover

their cryptocurrency."  R&R at 32.

As KuCoin argues, "finding anything else would be illogical; there is no value to Plaintiffs to

trace cryptocurrency already in their possession," that is—there is no value in "tracking"

cryptocurrency when Plaintiffs know exactly where the cryptocurrency is located.  KuCoin Opp'n at

10 (quoting FAC ¶¶ 108 ("[C]ryptocurrency can be tracked (within limits) after it is removed from

---

[13] Although the Court could stop here and dismiss Plaintiffs' RICO Claims on this basis alone, the Court will proceed, as
Judge Cave did, to analyzing Plaintiffs' remaining arguments.

the owners' wallet."), 109 ("[E]ven though their cryptocurrency may have been stolen, victims often have a strong ability to track and potentially recover their stolen assets as long as the information is trackable on the blockchain."), 114)).[14]  Accordingly, Judge Cave properly concluded that "the but-for cause of Plaintiffs' alleged loss of the ability to track their cryptocurrency is the bad actors' theft in the first instance," R&R at 32, and the Court finds that Plaintiffs' Objections to this portion of the R&R unpersuasive.

### iii.  The RICO Enterprise

Judge Cave correctly concluded that Plaintiffs failed to plausibly allege a RICO enterprise because the FAC fails to satisfy the "distinctiveness" requirement and because it fails to allege that KuCoin was united by a common purpose.  She identified the proper standard for determining whether Plaintiffs' FAC plausibly alleges "a continuing RICO enterprise distinct from the RICO 'person.'"  R&R at 35 (quoting *Cruz v. FXDirectDealer, LLC,* 720 F.3d 115, 120 (2d Cir. 2013)).

Plaintiffs urge the Court to conclude that Judge Cave mischaracterized the FAC's allegations that do adequately demonstrate distinctiveness.  Pls.' Objections at 22–24.  But Judge Cave did not mischaracterize Plaintiffs' allegations.  Rather, based on established precedent, she reasonably concluded that Plaintiffs failed to sufficiently allege that Defendants formed an enterprise separate and distinct from KuCoin.[15]  Judge Cave did not err in concluding that Plaintiffs' alleged enterprise

---

[14] Plaintiffs now assert that they have a "concrete property interest" in the ability to track their cryptocurrency that "had value to Plaintiffs at the time of purchase" irrespective of tracking that cryptocurrency following any theft. Pls' Objections at 18, 24 ("The ability to track crypto [] has value to the holder for numerous reasons other than in connection with using it to recover the crypto after a theft, such as being able to rectify an improperly executed transaction on the blockchain, or using it to prove a particular wallet paid for a product or service. Plaintiffs do not make any such allegations in their FAC, nor did they make this argument before Judge Cave. Accordingly, the Court declines to consider it now. *United States v. Gladden,* 394 F. Supp. 3d at 480. Adopting Plaintiffs' theory of liability would have broad ramifications outside the cryptocurrency context. For example, if a plaintiff had cash stolen out of her wallet by an unknown thief, on Plaintiffs' theory, every bank accepting cash deposits could be sued by the plaintiff if any allegation could be made that the bank's fraud detection system did not allow for proper tracing of the deposits. This is a case about cryptocurrency, but Plaintiffs' theory would extend broad liability to banks, bookkeepers, and other asset custodians.
[15] As noted above, Plaintiffs' do not object to Judge Cave's recommendations with respect to Chainalysis. As relevant here, Plaintiffs do not object to Judge Cave's conclusion that the FAC fails to plausibly allege that Chainalysis was a member of the enterprise. Pls.' Objections at 22–24; ECF No. 81 at 42:15 (Plaintiffs contending that they "don't need

has no "organizational pattern or system of authority . . . other than that embedded in the

organization of [KuCoin itself]." R&R at 36 (quoting *Manhattan Telecommc'ns Corp. v. DialAmerica*

*Mktg., Inc.*, 156 F. Supp. 2d 376, 382 (S.D.N.Y. 2001) (alterations in R&R). And, as she also

explained, the purpose of the alleged enterprise "is the pursuit of maximizing revenue, which is

indistinguishable from 'the business of' KuCoin on a regular basis." *Id.* (citation modified) (quoting

FAC ¶ 178; then quoting *Manhattan Telecommc'ns Corp.*, 156 F. Supp. 2d at 382). Nor did Judge Cave

err in concluding that Plaintiffs failed to adequately allege an enterprise because they failed to allege

the specific acts taken by each Defendant within the enterprise. Accordingly, Judge Cave reasonably

concluded that "simply 'alleging that a corporation has violated [RICO] by conducting an enterprise

that consists of itself plus all or some of its officers or employees[,]' as Plaintiffs do here, does not

satisfy '[t]he requirement of distinctiveness[.]'" *Id.* (quoting *Cruz*, 720 F.3d at 121). Plaintiffs'

Objections to the contrary are unpersuasive, and the Court adopts this portion of the R&R.

### i. RICO Conspiracy Claim

Judge Cave correctly recommended that because Plaintiffs had failed to adequately allege

their substantive RICO Claims, the Court should dismiss Plaintiffs' RICO Conspiracy Claim. R&R

at 40 (quoting *Petrosurance, Inc. v. Nat'l Ass'n Ins. Comms.*, 888 F. Supp. 2d 491, 507 (S.D.N.Y. 2012)

(collecting cases)).

Plaintiffs do not contend that Judge Cave misstated the applicable law, only that because she

erred in dismissing their substantive RICO Claim, that their RICO Conspiracy Claim is also

sufficiently pleaded. Pls.' Objections at 25. Because the Court adopts those portions of Judge

Cave's R&R recommending dismissal of Plaintiffs' substantive RICO Claims on multiple grounds,

the Court also adopts the portion of the R&R recommending dismissal of Plaintiffs' RICO

---

Chainalysis to make up the enterprise"). This, standing alone, is sufficient to dismiss Plaintiffs' RICO Claims against
Chainalysis.

Conspiracy Claim.

### i. Subject Matter Jurisdiction Over Plaintiffs' State Law Claims

Judge Cave recommended that "should the Court grant [Defendants'] [m]otions and dismiss Plaintiffs' federal claims, the Court may in its discretion decline to exercise supplemental jurisdiction" over Plaintiffs' State Law Claims and dismiss those claims without prejudice. R&R at 41 (citing 28 U.S.C. § 1367(c)(3)). The Court declines to adopt this portion of the R&R because, as they contend, Plaintiffs adequately allege an alternative basis for the Court's subject matter jurisdiction under 28 U.S.C. § 1332(d) ("CAFA"). FAC ¶ 18 ("The Court also has jurisdiction over this case action pursuant to 28 U.S.C. § 1332(d) because the members of the putative Class are of diverse citizenship from Defendants, there are more than 100 members of the putative Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of costs and interests." "CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Owen v. Elastos Found.*, 438 F. Supp. 3d. 187, 190 (S.D.N.Y. 2020) (quoting *Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 592 (2013) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B))). Accordingly, the Court does not adopt this portion of the R&R and concludes that the Court has subject matter jurisdiction over Plaintiffs' State Law Claims pursuant to CAFA.

### i. Judicial Estoppel

Judge Cave recommended that the Court conclude that because Plaintiffs previously agreed at the pre-motion conference and in their pre-motion conference letter that New York law applies to Plaintiff Reca's State Law Claims, and because Plaintiffs never raised any choice of law issues, Plaintiff Reca is judicially estopped from now arguing that Florida law should govern her claims. R&R at 41–42 (citing *PaySys Int'l, Inc. v. Atos SE*, No. 14-cv-10105, 2016 WL 10651919, at *5 (S.D.N.Y. July 14, 2016) (dismissing conversion claim and rejecting plaintiff's choice of law

19

argument as "merely a tactic to delay the Court's consideration of defendants' statute of limitations defense on the merits")).  The Court adopts this recommendation and concludes, in its discretion, that Plaintiff Reca is judicially estopped from only now arguing that her claims arise under Florida law because she previously represented to the Court that New York law controls her claims.

Judicial estoppel bars a party from "advancing contradictory arguments in different phases of the same case."  R&R at 42 (citing *Pegram v. Herdrich*, 530 U.S. 211, 228 n.8 (2000); then citing *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015)).  Because "'courts have uniformly recognized' that the purpose of the doctrine 'is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment,' and because judicial estoppel is designed 'to prevent improper use of judicial machinery,' it is 'an equitable doctrine invoked by a court at its discretion.'"  *Intellivision v. Microsoft Corp.*, 484 Fed. Appx. 616, 619 (2d Cir. 2012) (summary order) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001)).  "Courts have also recognized 'that the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle.'"  *Id.* (quoting *New Hampshire*, 532 U.S. at 750).

"Nevertheless, in evaluating whether to apply the doctrine of judicial estoppel, Courts generally look for the existence of three factors:  (1) that a party's new position is 'clearly inconsistent' with its earlier position, (2) that the party seeking to assert this new position previously persuaded a court to accept its earlier position, and (3) that the party 'would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'"  *Id.* (quoting *New Hampshire*, 532 U.S. at 750–51); *see also Clark v. All Acquisition, LLC*, 886 F.3d 261, 265, 267 (2d Cir. 2018) (holding that, the third factor requires a district court to "inquire into whether the particular factual circumstances of a case 'tip the balance of equities in favor' of doing so" (quoting *New Hampshire*, 532 U.S. at 751)).  "But the Supreme Court has made clear that these factors do not

constitute 'inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel,' and that 'additional considerations may inform the doctrine's application in specific factual contexts.'" *Id.* (quoting *New Hampshire*, 532 U.S. at 751) (citation omitted). And "the exact criteria for invoking judicial estoppel will vary based on specific factual contexts." *Clark*, 886 F.3d at 265(quoting *Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014)).

In weighing these factors as applied to the facts of this case, the Court, in its discretion, concludes that Plaintiff Reca is judicially estopped from arguing that Florida law applies. Plaintiff Reca urges the Court to find that judicial estoppel is inapplicable to her earlier admissions that New York law governs her State Law Claims because "[judicial] estoppel only applies when a tribunal in a prior proceeding has accepted the claim at issue by rendering a favorable decision."[16] Pls.' Objections at 7 (alteration in Pls.' Objections) (quoting *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir. 1997)). But the Second Circuit in *Intellivision* rejected a similar argument "that the doctrine of judicial estoppel requires that a party's prior representation be adopted by a different court in a prior separate proceeding," reiterating that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *Intellivision*, 484 Fed. Appx. At 619 (summary order) (quoting *New Hampshire*, 532 U.S. at 750).

The Second Circuit "has recognized that a prior inconsistent representation made in a prior phase of the same litigation can trigger judicial estoppel." *Id.* (citing *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 45 (2d Cir.2005) (assuming arguendo that defendants "advanced . . . a position in their first motion to dismiss that was actually inconsistent with that taken" upon remand, on a subsequent motion to

---

[16]*Simon* is distinguishable on its facts—there, the Second Circuit discussed how judicial estoppel is inapplicable to statements in a prior proceeding resulting in private settlement. *Simon*, 128 F.3d at 72. Statements made between private parties without judicial intervention or acceptance of those statements do not implicate the integrity of the judicial process in the same way. *Intellivision*, 484 Fed. Appx. at 619 (summary order) (quoting *New Hampshire*, 532 U.S. at 750).

dismiss, but concluding that "the earlier position was never adopted by the district court")).  And in any event, Judge Cave correctly found that the 'parties' agreement 'is sufficient to establish choice of law,'" where Plaintiffs previously asserted, and this Court accepted, that New York law governed their State Law Claims.  R&R at 42 (quoting *Fed'l Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 566–67 (2d. Cir. 2011)).  In fact, before Plaintiffs filed their opposition to Defendants' motions to dismiss, "there was no dispute as to the governing law:  neither side argued for the application of anything other than New York law."  *Khubani v. Ionic White, Inc.,* No. 5 Civ. 3706, 2008 WL 878717, at *1 (S.D.N.Y. Apr. 3, 2008).

Because Plaintiff Reca's argument that Florida law applies to her State Law Claims is clearly inconsistent with her earlier representation to the Court that New York law controls, the first two factors weigh in favor of finding that Plaintiff Reca is now estopped from arguing that Florida law applies.  Plaintiff Reca does not deny that she previously represented to the Court and that the Court accepted that New York law controls Plaintiff Reca's State Law Claims, nor does she deny "that such a statement is inconsistent with" her current position that Florida law controls her claims.  *Robinson*, 781 F.3d at 42, 47.  As Judge Cave explained, in her pre-motion letter, Plaintiff Reca implicitly agreed that New York law applies, arguing that her State Law Claims are timely despite the three-year statute of limitations because her claims are properly subject to equitable tolling.  R&R at 41 (citing Dkt. Nos. 38 at 3 & n.4 (Plaintiffs citing New York statute of limitations for Conversion and Aiding & Abetting Claims)).  As she also explained, at the pre-motion conference Plaintiff Reca explicitly agreed that New York law governs her State Law Claims and represented to the Court that, because New York law applies, the applicable statute of limitations is three-years.  *Id.* (citing Dkt. No 40 at 23:20–23:25, 40:1–8. (Plaintiffs' counsel agreeing that "New York law applies to the conversion [and] aiding and abetting claims")).

And because it was only in Plaintiffs' opposition to Defendants' motions to dismiss that

Plaintiffs, for the first time, asserted that Florida law governs Plaintiff Reca's claims, the third factor also weighs in favor of invoking judicial estoppel. Allowing Plaintiff Reca to argue that Florida law applies, only after Defendants filed their respective motions to dismiss, deprived Defendants of the opportunity to make any arguments that Plaintiff Reca's claims fail on the merits under Florida law—allowing her to pass the motion to dismiss stage functionally unopposed. In fact, because the parties previously represented to the Court that New York law applied, Defendants' motions only argued that Plaintiffs' claims fail under New York law. And Plaintiff Reca would receive an unfair advantage if not judicially estopped, because, as Judge Cave noted, Florida law "incidentally, has a longer statute of limitations."[17] R&R at 41. "It is thus clear that [the] choice of law argument is merely a tactic to delay the Court's consideration of defendants' statute of limitations defense on the merits." *PaySys Int'l, Inc.*, 2016 WL 10651919 at *5. Judge Cave did not err in recommending that the Court should, in its discretion, invoke judicial estoppel under these circumstances. Plaintiffs' objections to the contrary are unpersuasive, and the Court adopts this portion of the R&R.

### ii. Plaintiff Reca's State Law Claims Are Untimely[18]

Judge Cave correctly recommended that the Court dismiss Plaintiff Reca's State Law Claims as time-barred under the applicable three-year New York statute of limitations. R&R at 42–44. As she explained, Plaintiff Reca's own allegations demonstrate that her State Law Claims are time-

---

[17] Plaintiffs have not opposed Defendants' arguments on timeliness as to Plaintiff Supples nor do Plaintiffs argue that any other state's laws other than New York law should apply to Plaintiff Supples's State Law Claims. As Judge Cave noted, Plaintiffs "simply asserted that they are 'entitled to bring a common law claim under Florida law because of Ms. Reca's domicile and the location of the injury'" but "do not specify which law they think applies to Supples, a Puerto Rico resident." R&R at 41–42. Given that Plaintiffs have not attempted to argue that any law other than New York law applies to Plaintiff Supples's State Law Claims, Judge Cave correctly found that the 'parties' agreement 'is sufficient to establish choice of law,'" where Plaintiffs previously asserted, and this Court accepted, that New York law governed their State Law Claims. R&R at 42 (quoting *Fed'l Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d at 566–67); *Khubani*, 2008 WL 878717, at *1. Accordingly, the Court applies New York law to Plaintiff Supples's State Law Claims.
[18] Because, in their motions to dismiss, Defendants contended only that Plaintiff Reca's State Law Claims are time-barred under New York law, Judge Cave did not address a statute of limitations defense with respect to Plaintiff Supples. Plaintiff Supples was added as a plaintiff to this case on April 14, 2025. *See generally* FAC. Because, as Plaintiffs allege, Plaintiff Supples's cryptocurrency was stolen in December 2024, the Court cannot conclude from the face of Plaintiffs' complaint that Plaintiff Supples's State Law Claims are time-barred under New York's statute of limitations.

barred because Ms. Reca's cryptocurrency was stolen between May 21, 2021 and July 26, 2021 and Plaintiffs filed this action on August 21, 2024—"more than three years after the last alleged theft." *Id.* at 43 (citing FAC ¶¶ 161–62)).

And Judge Cave soundly found that Plaintiff Reca's claims are not subject to equitable tolling because no exceptional circumstances exist that warrant tolling. R&R at 43–44. Plaintiffs' only argument to the contrary is that Plaintiff Reca's State Law Claims are timely under Florida law. Pls. Objections at 9 ("Plaintiff Reca is an individual domiciled in Surfside, Florida, who is entitled to timely bring her common law claims under Florida law." (internal citation omitted)). But as explained above, the Court adopts Judge Cave's recommendation that Plaintiff Reca is judicially estopped from only now asserting that Florida law governs her State Law Claims. Accordingly, the Court adopts this portion of the R&R.

### iii. Conversion[19]

Judge Cave recommended that the Court dismiss Plaintiffs' Conversion Claim as implausible because "even if the demand requirement" was excused, "Plaintiffs still have not plausibly alleged that the KuCoin defendants 'actually knew' that Plaintiffs' cryptocurrency was stolen." R&R at 46–47. As she explained, Plaintiffs cannot rely on any connection between the KuCoin Defendants' "alleged knowledge of blacklists or alerts from Chainanalysis' software" to allege that KuCoin had actual knowledge that Plaintiffs' cryptocurrency was stolen. *Id.* (quoting *Marks v. Energy Materials Corp.*, No. 14 Civ. 8965, 2015 WL 3616973, at *5 (S.D.N.Y. June 9, 2015).

Plaintiffs' argument that the Court should conclude that Judge Cave erred in "finding that Plaintiffs were required to make a 'demand' for the return of their cryptocurrency" misstates both

---

[19] As noted above, Plaintiff Reca's State Law Claims are time-barred. Nonetheless, the Court's conclusions regarding the sufficiency of these claims provides a separate, independent reason to dismiss her State Law Claims under New York law.

Judge Cave's conclusions and the law.[20]  Pls.' Objections at 10.  Absent a plaintiff showing a

defendant's actual knowledge or "willful blindness," "in a cause of action for conversion against a

good faith [possessor] of chattels, 'demand and refusal are substantive elements' of the claim."

*Grosz v. Museum of Modern Art*, 772 F. Supp. 2d 473, 496 (S.D.N.Y. 2010) (quoting *DeWeerth v.*

*Baldinger*, 836 F.2d 103, 107 n.3 (2d Cir.1987)).  In line with this precedent, Judge Cave did not hold

that a plaintiff is always required to make a demand, only that "[u]nder these circumstances,

Plaintiffs were not excused from making a demand," R&R at 46, because "[w]hen a defendant's

possession of the property was initially lawful, there is no conversation unless the defendant refuses

the owner's demand to return the property or wrongfully transfers or disposes of it before a demand

is made."  *Id.* at 45 (quoting *Regions Bank v. Wieder & Mastroiannni, P.C.*, 526 F. Supp. 2d 411, 414

(S.D.N.Y. 2007)).

    As Judge Cave explained, "'[t]he reason for this rule is simply "that one in lawful possession

shall not have such possession changed into an unlawful one until he be informed of the defect of

his title and have an opportunity to deliver the property to its true owner."'"  *Id.* (quoting *Leveraged*

*Leasing Admin. Corp.*, 87 F.3d at 49 (quoting *Employers' Fire Ins. Co. v. Cotton*, 245 N.Y. 102, 106

(1927))).

    The Court has reviewed Judge Caves's conclusions *de novo* and concludes, as Judge Cave did,

that Plaintiffs failed to plausibly allege either that they made a demand on KuCoin for the return of

their cryptocurrency or that KuCoin had actual knowledge that Plaintiffs' cryptocurrency was stolen.

Judge Cave correctly identified the fundamental flaw with Plaintiffs' position—Plaintiffs do not

---

[20] Plaintiffs cite a single case in support of their argument that "New York law does not require that a demand be made and be met by a refusal to adequately state a claim for conversion."  Pls. Objections at 10 (citing *Leveraged Leasing Admin. Corp. v. PaciCorp Cap., Inc.*, 87 F.3d 44, 49–50 (2d Cir. 1996)).  *Leveraged Leasing* does not support Plaintiffs' argument. Rather, as the Second Circuit made clear in *Leveraged Leasing*, "New York law does not . . . *always* require that a demand be made and met by a refusal to make out a claim of conversion."  *Id.* at 49 (emphasis added).  But "a demand is necessary [] where the property is held lawfully by the defendant."  *Id.*

plausibly allege that KuCoin had any knowledge that any particular cryptocurrency transfers were fraudulent, that KuCoin permitted the transfer of Plaintiffs' cryptocurrency knowing that it was stolen, or that KuCoin set up its fraud-detection system to facilitate the transfer of Plaintiffs' cryptocurrency knowing that the cryptocurrency was stolen. Judge Cave soundly concluded that it is not enough to allege, as Plaintiffs have, that Defendants had "knowledge of blacklists or alerts from Chainanalysis' software" generally. R&R at 46–47. Accordingly, Plaintiffs' Objections to Judge Cave's conclusions are unpersuasive, and the Court adopts this portion of the R&R.

### iv. Aiding & Abetting

Plaintiffs make a number of objections with respect to Judge Caves's recommendation that the Court dismiss Plaintiffs' Aiding & Abetting Claim as implausible which largely mirror their objections as to their Conversion Claim. The Court has reviewed Judge Caves's conclusions *de novo*, and concludes, as Judge Cave did, that Plaintiffs do not plausibly state a claim for Aiding & Abetting. First, as Judge Cave explained, Plaintiffs do not plausibly allege that Defendants had "actual knowledge" of the "theft of Plaintiffs' cryptocurrency, as opposed to the general risk of cryptocurrency theft." R&R at 48 (internal citation omitted). And Judge Cave concluded that Plaintiffs also do not plausibly allege that Defendants provided any "substantial assistance" because "[t]he 'mere fact of maintaining [] the account' to or through which the bad actors transferred Plaintiffs' cryptocurrency after stealing it is 'completely inadequate to establish substantial assistance.'" *Id.* (quoting *In re Refco Inc. Sec. Litig.*, Nos. 07 Md. 1902, et al., 2011 WL 13168450, at *9–10 (S.D.N.Y. Dec. 8, 2011)); *see also In re Agape Litig.*, 681 F. Supp. 2d 352, 365 (E.D.N.Y. 2010) ("[O]pening accounts and approving transfers, even where there is suspicion of fraudulent activity, does not amount to substantial assistance.").

As with Plaintiffs' Conversion Claim, Judge Cave soundly concluded that the same fundamental flaw underlies Plaintiffs' Aiding & Abetting Claim: Plaintiffs' generalized allegations

that KuCoin had procedures in place to identify potentially fraudulent transactions generally does not support an inference that KuCoin had actual knowledge that any transfers involving Plaintiffs' cryptocurrency were fraudulent. As KuCoin contends, Plaintiffs "fail to connect 'the myriad bad actors' to these *specific* Plaintiffs and their *specific* currency." KuCoin's Opp'n at 20–21 (emphasis in original) (quoting R&R at 48). Accordingly, Plaintiffs' Objections are unpersuasive, and the Court adopts this portion of the R&R.

### v. Leave to Amend

Judge Cave recommended that the Court decline Plaintiffs leave to amend their RICO Claims, reasoning that this would be Plaintiffs' "third bite at the apple" because "Defendants filed pre-motion letters highlighting the deficiencies in the Complaint," which the Court discussed with the parties at the pre-motion conference and because "[w]hen pressed at oral argument," Plaintiffs "offered no proposed amendments regarding causation and have not even suggested they had anything further to allege as to Chainalysis." R&R at 49 (quoting *Binn v. Bernstein*, No. 19 Civ. 6122 (SLC), 2020 WL 4550312, at *34 (S.D.N.Y. July 13, 2020), *report and recommendation adopted* 2020 WL 4547167 (GHW) (S.D.N.Y. Aug. 6, 2020)).

Plaintiffs urge the Court to grant them leave to amend, arguing that, although the same arguments were made during the pre-motion conference with respect to Defendants' anticipated motions to dismiss, "the issuance of the R&R on November 12th 2025 was the first time Plaintiffs has the benefit of any court's ruling on any substantive issues in this case." Pls.' Objections at 4 (quoting *Barron v. Helbiz, Inc.*, No. 21-278, 2021 WL 4519887, at *3 (2d Cir. Oct. 4, 2021) (summary order) ("We have been 'particularly skeptical' of denials of requests to amend when a plaintiff did not previously have a district court's ruling on a relevant issue.")).

It is the "usual practice" upon dismissing a complaint "to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The

court should freely give leave when justice so requires.").  That is especially true where, as here with respect to Plaintiffs' RICO Claims, a plaintiff has not yet had the opportunity to amend the complaint with the benefit of a ruling from the Court.  *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.").  Nevertheless, leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim . . . ." *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224– 25 (2d Cir. 2017) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

Although Plaintiffs presented their arguments in support of the plausibility of their RICO Claims during the pre-motion conference and have amended their complaint once—"[i]t is the District Court's ruling, not [a] defendant's arguments in support of a motion to dismiss, that puts a plaintiff on notice of the complaint's deficiencies."  *Cresci,* 693 Fed. Appx. at 25 (summary order) (citing *Loreley Fin. (Jersey) No. 3*, 797 F.3d at 190) ("Before learning from the court what are its deficiencies, the plaintiff cannot know whether he is capable of amending the complaint efficaciously.").  Accordingly, the Court declines to adopt the portion of the R&R recommending that Plaintiffs' RICO Claims should be dismissed with prejudice and without leave to amend because Plaintiffs had multiple opportunities to correct the deficiencies in their complaint.  That said, the Court will not grant Plaintiffs leave to amend for a different reason—because any amendment would be futile.

First, because Plaintiffs do not object to any of Judge Cave's recommendations with respect

to Defendant Chainalysis, and because, even when pressed, Plaintiffs were unable to identify any second predicate act that would render Chainalysis liable under RICO, any amendment with respect to Chainalysis would be futile.

Second, because Plaintiffs' two-phase theory of injury is implausible, the Court cannot conclude that Plaintiffs could cure the deficiencies identified herein with respect to but-for or proximate causation by repleading. Plaintiffs argue that they can amend their complaint to allege additional facts that will "bolster Plaintiffs' allegations that the laundering constituted a concrete injury to their property distinct from the theft (supporting RICO standing and causation)" and to "show that Plaintiffs' RICO injuries from the laundering can be quantified." Pls.' Objections at 6, 20–21 ("[I]f permitted to amend the AC, Plaintiffs can and will provide additional details supporting the plausibility that the loss of traceability, the loss of being able to prove ownership over their stolen crypto, and the essential elimination of their ability to potentially recover their stolen crypto is a concrete injury under RICO."). In so arguing, Plaintiffs admit that, if the Court were to grant leave to amend, any additional facts that they could allege would be premised on their two-phase theory of liability—that the loss of traceability is its own, independent injury. But strengthening the alleged Phase II injury cannot help Plaintiffs' allegations because Plaintiffs' bifurcated theory of liability is implausible. Accordingly, any amendment would be futile.

Next, the Court adopts Judge Cave's recommendation that Plaintiff Reca's State Law Claims should be dismissed with prejudice and without leave to amend. Because Plaintiff Reca's State Law Claims are untimely under the three-year statute of limitations, any amendment could not cure that deficiency. Accordingly, any amendment of Plaintiff Reca's claims would be futile, and the Court dismisses her claims with prejudice.

Finally, with respect to Plaintiff Supples's State Law Claims against KuCoin, Plaintiff Supples identifies a number of additional facts that he could allege to cure deficiencies with respect to his

State Law Claims. Pls.' Objections at 6 (arguing that Plaintiff could allege additional facts to cure deficiencies with respect to "KuCoin's knowledge that Plaintiffs' stolen cryptocurrency was laundered at KuCoin" and to "make clear Plaintiffs promptly notified KuCoin that it was in possession of Plaintiffs' stolen cryptocurrency"), 12 (asserting that Plaintiff could allege additional facts to show that he "demanded that the[] cryptocurrency be either frozen or returned to" him, a plea which Plaintiffs assert "fell on deaf ears"), 14 (contending that Plaintiff Supples can allege additional facts to show actual knowledge and substantial assistance, because he can allege that "once [his] stolen crypto reached KuCoin wallets associated with the bad actors, KuCoin commingled them with other similar asserts (removing the link to the public blockchain) and listed the bad actors' illegal claims to those asserts on a KuCoin general ledger"). Based on these representations, the Court cannot conclude that any amendment of Plaintiff Supples's State Law Claims against KuCoin would be futile.

## V. CONCLUSION

For the foregoing reasons, the Court adopts the R&R in large part—except that the Court concludes that Plaintiffs have made a sufficient showing that the Court has subject matter jurisdiction over their State Law Claims pursuant to CAFA. Accordingly, Defendants' motions to dismiss are GRANTED.

Plaintiffs' RICO claims are dismissed with prejudice and without leave to amend. Plaintiff Reca's State Law Claims are dismissed with prejudice and without leave to amend. Plaintiff Supples's State Law Claims against Chainalysis are dismissed with prejudice and without leave to amend. Plaintiff Supples's State Law Claims against KuCoin are dismissed without prejudice and with leave to amend to correct the deficiencies identified herein. Any amended complaint must be filed no later than fourteen days after the entry of this order.

30

The Clerk of Court is directed to terminate the motions pending at Dkt. No. 65 and Dkt.

No. 68.

SO ORDERED.

Dated: January 12, 2026
New York, New York

_____
GREGORY H. WOODS
United States District Judge

31