UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALISTER WATT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>OKCOIN USA INC., et al.,<br><br>Defendants. | Case No. 25-cv-00368-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**<br><br>Re: Dkt. No. 28 |

This matter comes before the Court upon consideration of the motion to dismiss filed by Defendants OKCoin USA, Inc. ("OKCoin"), OKC Holdings Corporation ("Holdings"), and Aux Cayes FinTech Co. Ltd. ("Aux Cayes") (collectively "Defendants").[1]  The Court has considered the parties' papers, relevant legal authority, including the statements of recent decisions filed by Defendants, and the record in this case.  For reasons that follow, the Court HEREBY GRANTS Defendants' motion, with leave to amend the Plaintiffs' state law claims.

**BACKGROUND**

Plaintiffs Alister Watt ("Watt") and James Supples ("Supples") are victims of cryptocurrency theft.  They allege Defendants enabled the thieves to launder their cryptocurrency and render it untraceable.[2]  (*See* AC ¶¶ 123, 125.)  Cryptocurrency is held in digital wallets that

---

[1]     Plaintiffs define "OKC Holdings Corporation and all predecessor organizations and entities" as "OKC Group" in the Amended Complaint.  (Amended Complaint ("AC") at 1:3-4.) For purposes of clarity and to clearly distinguish the named Defendants, the Court defines OKC Holdings Corporation as "Holdings."

[2]     Watt filed the original complaint on January 10, 2025.  After Defendants moved to dismiss, Watt filed the Amended Complaint and added Supples as a Plaintiff.  Supples also is a named Plaintiff in a case pending in the United States District Court for the Southern District of New York, *Reca v. Flashdot Ltd.*, No. 1:24-cv-6316-GHW (SLW).  Plaintiffs in the *Reca* case are represented by Plaintiffs' counsel here.

United States District Court
Northern District of California

store "passkeys used to sign for cryptocurrency transactions and provide[] the interface that lets users access crypto on the blockchain, and interact with protocols, such [as] decentralized exchanges … and bridges which enable users to send crypto across different blockchains." (*Id.* ¶ 36.)  In general, such transactions are trackable.  (*Id.* ¶¶ 36-38.)  Crypto laundering occurs when a bad actor removes the ability to track and locate crypto.  (*Id.* ¶ 39.)  Plaintiffs allege that crypto laundering "underpins all other forms of cryptocurrency-based crime.  If there's no way to access the funds, there's no incentive to commit crimes involving cryptocurrency in the first place." (*Id.* (quoting 2022 Crypto Crime Report by Chainalysis).)

Mingxing Xu, a/k/a Star Xu ("Xu"), founded Holdings in 2015.  Plaintiffs allege Holdings is the parent organization of a group of legal entities that, together, "operate one of the largest cryptocurrency platforms in the world" (the "OKX Platform").  Those entities include Aux Cayes, a Seychelles registered company, and OKCoin, which Xu launched in June 2013.  OKCoin moved its headquarters to San Franisco in 2017.  (AC ¶¶ 1, 25-28.)  The Court refers to Holdings and Aux Cayes collectively as the "Foreign Defendants."

According to Plaintiffs, Holdings "through its subsidiaries, operates and controls the cryptocurrency exchanges located at www.okx.com … and www.okcoin.com[.]" (*Id.* ¶ 25.)  Xu "owned at least 74.3% of [Holdings] through affiliated entities and exercised full and absolute control over each of the" entities.  (*Id.*)  Plaintiffs also allege Xu "created, controlled, and directly managed the day-to-day affairs of [Holdings] and each of the web of companies" associated with Holdings.  (*Id.*; *see also id.* ¶¶ 26-27 (alleging Xu "controlled" Aux Cayes and OKCoin at all relevant times).)  Plaintiffs allege that Aux Cayes makes the OKX Platform available to users outside the United States, although it has some offices located in the United States.  (*Id.* ¶ 26.)

Plaintiffs allege Defendants' primary crypto exchange, OKX.com, is a money transmitting business ("MTB").[3]  MTBs are required to register with the United States Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN").  MTBs also are required to comply with the Bank Secrecy Act ("BSA") by implementing and maintaining an anti-money

---

[3]    In 2024, Holdings began a rebranding program and, as of April 3, 2025, the "exchange previously known as OKCoin.com" is accessible at OKX.com.  (AC ¶ 51.)

laundering program ("AML") and by following "Know Your Customer ('KYC')" rules.  (*Id.* ¶¶ 3, 42, 73-85.)

Watt resides in Charlotte, North Carolina.  In 2023, a third party stole crypto worth more than $725,000 from him.  Supples resides in San Juan, Puerto Rico.  On or about December 19, 2024, a third party targeted and stole crypto worth more than $1.34 million from him.  Plaintiffs allege that "[a]fter extensive investigation, it was determined that a material portion of the cryptocurrency stolen from [them] was sent to at least one account at OKX.com."  (*Id.* ¶¶ 21-22.)

Plaintiffs allege that even though Holdings and Aux Cayes were not licensed in the United States, they still served customers in the United States.   U.S. based customers could access OKX.com through a virtual private network ("VPN") that made it appear as if the customer had logged in from outside the United States.  (*Id.* ¶ 45; *see also id.* ¶ 107.)  Plaintiffs also allege that, at least until 2022, Holdings and Aux Cayes failed to adequately implement AML and KYC policies and procedures.  OKCoin allegedly functioned as a "smokescreen and distraction to regulators" so Holdings and Aux Cayes could continue to service U.S. based customers, in violation of the law.  (*Id.* ¶ 6.)  In February 2025, Aux Cayes entered a guilty plea in the United States District Court for the Southern District of New York, to operating an unlicensed MTB from at least 2018 through at least early 2024.  (*Id.* ¶ 9; Declaration of Eric I. Niehaus, ¶ 3, Ex. A (Plea Agreement and Statement of Facts).)[4]

According to Plaintiffs, if "Defendants" had implemented AML and KYC policies and procedures, the OKX Platform "would not have become a magnet and a hub for cryptocurrency laundering, and it is highly unlikely that Plaintiffs' stolen cryptocurrency would have been laundered through OKX and rendered untraceable thereafter."  (*Id.* ¶ 92; *see also id.* ¶¶ 46, 84, 100.)  Based on these and other allegations the Court will address as necessary in the analysis, Plaintiffs bring putative class claims for alleged violations of 18 U.S.C. section 1962(c) and

[4]     Plaintiffs draw some of their allegations from the Statement of Facts attached to Aux Cayes's plea agreement.  The copy Plaintiffs filed does not include page A-8 of the Statement of Facts.  The Plea Agreement refers to Aux Cayes as "Aux Cayes FinTech Ltd. d/b/a OKEx, d/b/a OKX," and defines Aux Cayes as "OKX."  Aux Cayes is the only entity subject to the Plea Agreement.

1962(d) (the "RICO Claims"), conversion, and aiding and abetting conversion.

**ANALYSIS**

**A.     The Court Grants, in part, and Denies, in Part, the Foreign Defendants' Motion.**

The Foreign Defendants move to dismiss for lack of personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  Plaintiffs bear the burden to establish that the Court has personal jurisdiction over the Foreign Defendants.  *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007).  Because the Court is resolving the motion without an evidentiary hearing, Plaintiffs "need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss," *i.e.* "facts that if true would support jurisdiction over the defendant."  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995) (citations omitted).  Where the facts are not directly controverted, Plaintiffs' version of the facts is taken as true.  *See AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).  "California's long-arm statute … is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same."  *Mavrix Photo., Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  The exercise of personal jurisdiction over a defendant comports with the Due Process Clause where the defendant has sufficient "minimum contacts" with the relevant forum such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945).

**1.     Plaintiffs Fail to Allege the Court Has General Jurisdiction Over the Foreign Defendants.**

Plaintiffs argue, in passing, that the Court has general jurisdiction over the Foreign Defendants.  (Opp. Br. at 13:11.)  The Court has general jurisdiction over a defendant "when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (cleaned up).  "[T]he paradigm forum for the exercise of general jurisdiction … for a corporation, [is] one in which the corporation is fairly regarded as at home," *i.e.* its "place of incorporation" or

United States District Court
Northern District of California

4

its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Plaintiffs do not allege the Foreign Defendants are incorporated in California, that their principal places of business are located here, or that other affiliations in California render them "essentially at home" here. *Goodyear*, 564 U.S. at 991. Plaintiffs have not met their burden to allege the Court has general jurisdiction over either Foreign Defendant.

**2.      Plaintiffs Fail to Allege Personal Jurisdiction Over Holdings Based on an Agency or Alter-Ego Relationship.**

Plaintiffs rely on Holdings' alleged control over OKCoin to establish jurisdiction. "[N]either ownership [nor] control of a subsidiary corporation by a foreign parent corporation, without more, subjects the parent to the jurisdiction of the state where the subsidiary does business." *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 540 (2000). To exercise personal jurisdiction over Holdings based on an agency or an alter-ego relationship, Plaintiffs must allege facts showing its control over OKCoin is "over and above that to be expected as an incident of the parent's ownership of the subsidiary and must reflect the parent's purposeful disregard of the subsidiary's independent corporate existence." *Id.* at 541; *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015). "As a practical matter, the parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's *day-to-day* operations in carrying out that policy." *Sonora Diamond*, 83 Cal. App. 4th at 542 (emphasis in original).

Plaintiffs' allegations regarding Holdings' control over OKCoin are conclusory at best. (*See* AC ¶¶ 25-28, 30.) In addition, the graphic in the Amended Complaint that details "the web of OKX Group entities" demonstrates that OKCoin is not directly owned by Holdings. (*Id.* ¶ 28.) The Court concludes Plaintiffs fail to meet their burden to show the Court has jurisdiction over Holdings based on an agency or alter-ego relationship with OKCoin.

**3.      Plaintiffs Fail to Establish Personal Jurisdiction Premised on RICO or Federal Rule of Civil Procedure 4(k)(2).**

Plaintiffs also allege that the Court can exercise jurisdiction over the Foreign Defendants pursuant to RICO's nationwide service provision, 18 U.S.C. section 1965(b). (AC ¶ 15.) In the

alternative, they argue they can establish jurisdiction under Rule 4(k)(2), the federal long-arm statute. (Opp. Br. at 13 n.14.) Section 1965(b) provides that "[i]n any action under Section 1964 … in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof." This section permits "plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial." *Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986). To invoke Section 1965(b), Plaintiffs must show "there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Id.* at 539.

To invoke Rule 4(k)(2), Plaintiffs' claim must arise out of federal law, the Foreign Defendants "must not be subject to the personal jurisdiction of any state court of general jurisdiction[,]" and the "exercise of personal jurisdiction must comport with due process." *Caddy*, 453 F.3d at 1159. This third prong is identical to the test associated with specific jurisdiction, except that the Court examines the Foreign Defendants' contacts with the United States. *Id.*

The RICO claims satisfy the first requirement. However, Aux Cayes submitted to jurisdiction in New York, and Plaintiffs cannot satisfy the second prong of the analysis as to Aux Cayes. (*See* Statement of Facts ¶ 14; Reply at 13 n.10) Even Holdings is not subject to jurisdiction in any other state forum, for the reasons discussed in the following section, the Court concludes Plaintiffs cannot show exercising jurisdiction over it would comport with due process.[5]

The Court concludes Plaintiffs fail to meet their burden to show either Section 1965(b) or Rule 4(k)(2) provide the Court with jurisdiction over the Foreign Defendants.

### 4.    Specific Jurisdiction.

Specific jurisdiction "depends on an affiliation between the forum and the underlying

---

[5]    Plaintiffs also state they did not attempt service on the Foreign Defendants pursuant to Section 1965(b). (Opp. Br. at 12 n.13.) *See, e.g., Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1182-83 (C.D. Cal. 1998) ("[T]he rationale underlying imposition of a national contacts test indicates that service must be effected pursuant to RICO's service provisions before a plaintiff may rely on a defendant's national contacts to establish personal jurisdiction over the defendant.").

controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (cleaned up). The Court applies a three-prong test to analyze specific jurisdiction. *Id.* First, "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id.* Third, "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id.* Plaintiffs bear the burden on the first two prongs. *Menken,* 503 F.3d at 1057. If Plaintiffs meet that burden, the Foreign Defendants bear the burden on the third prong. *Id.*[6]

The Ninth Circuit has treated the first prong of the specific jurisdiction test differently when contracts and torts are involved but has "not imposed a rigid dividing line between purposeful direction [torts] and purposeful availment [contracts]." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 & n.10 (9th Cir. 2025). A plaintiff may satisfy the first prong "by purposeful availment, by purposeful direction, or by some combination thereof." *Id.* at 751 n.10 (cleaned up); *see also Schwarzenegger*, 374 F.3d at 803 (using the "effects test" in tort cases).[7] Under the effects test, a court looks to whether: (1) the defendant committed an intentional act; (2) the act was expressly aimed at the forum state; and (3) the defendant knows it is likely the act would cause harm in the forum state. *Briskin*, 135 F.4th at 751.

An intentional act is done with the "intent to perform an actual, physical act in the real world rather than an intent to accomplish a result or consequence of that act." *Id.* at 806. Plaintiffs refer to the Foreign Defendants collectively throughout the Amended Complaint as "OKX" and do not clearly distinguish between them. As noted above, the conduct described in the Plea Agreement is attributed to Aux Cayes, which admitted it "operated an unlicensed money

---

[6]     The Foreign Defendants did not address the third prong and, thus, have waived any argument that it would be unreasonable to exercise jurisdiction over them.

[7]     The effects test is derived from *Calder v. Jones*, 465 U.S. 783 (1984).

United States District Court
Northern District of California

transmitting business by serving U.S. retail and institutional customers that engaged in over one trillion dollars of transaction[s]." (*Compare* AC ¶ 153 *with* Statement of Facts, ¶¶ 7, 14.e.)  Those facts are sufficient to show intentional acts by Aux Cayes but not Holdings.

Turning to the second prong, Plaintiffs allege that "OKX.com utilized a cloud computing platform and applications programming interface owned by a technology service provider with an Internet Protocol location based in San Francisco."  (AC ¶ 17.)  In *Briskin,* the court held that "a company's internet activity may subject the company to specific personal jurisdiction in a given forum if the company 'knows – either actually or constructively' about its customer base there and 'exploits that base for financial gain.'"  *Id.* (quoting *Mavrix Photo*, 647 F.3d at 1230).

In addition to the location of the servers, Plaintiffs allege "Aux Cayes targeted U.S.-based users, including those located in California."  (Opp. Br. at 14:14-15.)  However, the cited paragraphs are conclusory.  (AC ¶¶ 17-18.).  For example, Plaintiffs do not include any facts about whether Aux Cayes advertises in California or the scope of any such advertising but do provide information about its activities in New York.  (*See* AC ¶ 50.)  The OKX.com website is interactive, but there are no allegations about the scope of Aux Cayes's operations in California.  In addition, neither of the Plaintiffs reside here.  *See Briskin*, 135 F.4th at 757 (citing such factors to analyze internet activity in jurisdictional analysis).  The Court concludes there are insufficient allegations to show Aux Cayes' contacts with California are its "own choice and not random, isolated, or fortuitous."  *Id.*, at 758 (cleaned up).

Accordingly, the Court GRANTS the Foreign Defendants' motion to dismiss for lack of personal jurisdiction.

**B.  The Court Grants the Motion to Dismiss for Failure to State a Claim.**

**1.  Applicable Legal Standards.**

A court's inquiry under Rule 12(b)(6) "is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff."  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide grounds of his entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do."

United States District Court<br>Northern District of California

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### 2. Plaintiffs Fail to State their RICO Claims.

The civil RICO statute provides a cause of action for "[a]ny person injured in [their] business or property *by reason of* a violation of 18 U.S.C. section 1962." 18 U.S.C. § 1964(c) (emphasis added). OKCoin argues that Plaintiffs have not, and cannot, plead causation. The phrase "by reason of" incorporates but for and proximate causation. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268-69 (1992); *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 773 (9th Cir. 2002) ("*Oki*"). "[P]roximate cause is not the same thing as the sole cause. … Instead, the proximate cause of an injury is a substantial factor in the sequence of responsible causation," and "[s]ome direct relationship between the injury asserted and the injurious conduct is necessary." *Oki*, 298 F.3d at 773 (cleaned up).

In *Oki*, non-party thieves stole semiconductors from the plaintiff, sold them, and used one of the defendant's employees to launder proceeds from the sale. As is the case here, the plaintiff asserted the defendant was liable only for laundering the proceeds of the theft. *Id.* at 771-73. The district court concluded the plaintiff failed to plead causation, and the Ninth Circuit affirmed. The court acknowledged that the employee's actions "might be considered a 'but for' cause of Oki's loss." *Id.* at 774. For example, without the employee's ability to set up the accounts needed to launder the proceeds, the thieves "may not have undertaken to steal Oki's semiconductors." *Id.* However, the court concluded "this type of speculative 'but for' causation is insufficient to state a RICO violation." *Id.* The court also held that money laundering was not the proximate cause of the plaintiff's loss; "it was theft." *Id.*

In *Scoggins v. HSBC Bank USA*, a gang associated with the Sinaloa drug cartel stole property from the plaintiffs, who alleged the defendant was liable because the gang laundered the

property through accounts at HSBC. No. CV 15-01328 SJO (SSx), 2015 WL 12670410, at *1 (C.D. Cal. Oct. 8, 2015). The court determined that the defendant's only connection to the gang's activities was "the fact that it was the bank where gang members deposited money." *Id.*, at *2. Following *Oki*, the court reasoned that "[l]ike the employee at Wells Fargo, HSBC only received deposits from criminals, after they engaged in illegal activity." *Id.* Thus, the proximate cause of their injuries was not money laundering; "it was theft." *Id.* (quoting *Oki*, 298 F.3d at 174). The court also held the plaintiffs' allegations "that absent HSBC's actions, the gang members would not have committed the underlying offenses" were too conclusory to plead but for causation. "To put it another way, even if HSBC were not in the picture, the gang members may still have stolen from [the plaintiffs] and then deposited the proceeds from their criminal activity elsewhere." *Id.* at *3.

Plaintiffs attempt to distinguish these cases by arguing the theft occurred in two-phases and was not "complete until the bad actors removed the crypto from the blockchain without being tracked. Phase 1 was the removal of the crypto from Plaintiffs' possession. Phase 2 was the laundering of the crypto at OKX," which eliminated Plaintiffs' ability to track their crypto, prove they owned it, and recover it. (Opp. Br. at 3:14-16.) The Court is not persuaded. Plaintiffs allege bad actors were able to launder funds because "Defendants" collectively failed to implement and maintain adequate AML and KYC policies and procedures. Plaintiffs allege that OKCoin was licensed as an MTB in 47 states. (AC ¶ 47.) Even if the Court accepts that OKCoin failed to comply with its obligations, Plaintiffs still must be able to show that those failures led directly to their injuries. *See, e.g., Hemi Grp. LLC v. City of N.Y., N.Y.*, 559 U.S. 1, 14 (2010). Plaintiffs' allegations are analogous to the allegations in *Oki*. The Court concludes that applying the reasoning from *Oki* to those facts results in the same conclusion. The proximate cause of Plaintiffs' injury was not crypto laundering; it was theft.

The Court also concludes that Plaintiffs' two-phase theory does not assist them in pleading but for causation. As in *Scoggins*, even if OKCoin was "not in the picture," the crypto thieves "may still have stolen from Plaintiffs and" laundered the proceeds elsewhere. *Scoggins*, 2015 WL 12670410, at *3. In *Reca*, Supples accuses another crypto exchange of doing just that. *Reca*,

10

2025 WL 3187079 (S.D.N.Y. Nov. 13, 2025) ("*Reca I*"), *report and recommendation adopted in part*, 2026 WL 82702 (S.D.N.Y. Jan. 12, 2026) ("*Reca II*").  There, Supples alleges that in December 2024, thieves stole cryptocurrency worth approximately $1,200,000 from him.  He also alleges "a material portion" of that crypto "was sent to at least one account at KuCoin." *Reca I*, 2025 WL 3187079, at *2.

Supples and the other plaintiffs rely on the same two-phase theory of injury and claim the defendants' conduct made the exchange attractive to bad actors.  The court found the two-phase theory implausible for three reasons.  First, "the supposed Phase 2 inability-to-track injury would not exist without the theft injury in Phase I." *Reca I,* 2025 WL 3187079, at *7, *13; *see also Reca II*, 2026 WL 82702, at *7 n.12 ("[I]f not for the initial theft of Plaintiffs' cryptocurrency, Plaintiffs would not have lost the ability to track their cryptocurrency at all.").[8]  Second, "splitting" the injury into two phases would require looking "beyond the first step" of the causal chain. *Reca I*, 2025 WL 3187079, at *13 (quoting *Holmes*, 503 U.S. at 272 and citing examples of "indeterminate number of intervening events and circumstances that" could account for inability to recover stolen crypto).

Third, plaintiffs' "separate" inability to track the stolen crypto did not necessarily follow from the defendants' operation of an unlicensed MTB and the alleged money laundering.  That "disconnect" was apparent because the plaintiffs alleged the defendants began to use KYC software *before* their crypto was stolen and subsequently laundered. *Id.*  "Thus, sorting out the counterfactual scenarios in which Plaintiffs would have been able to track their cryptocurrency notwithstanding Defendants' alleged RICO violations would prove speculative in the extreme." *Id.* (cleaned up).  That court also concluded that the plaintiffs' two-phase theory of injury was insufficient to plead "but for" causation.  "[H]ad Plaintiffs' cryptocurrency not been stolen, they would have had no reason to try and recover it.  Accordingly, Plaintiffs cannot establish that Defendants' alleged predicate acts are the but for cause of their losses." *Reca I*, 2025 WL

---

[8]    The plaintiffs in *Reca* did not cite any cases endorsing a two-phase theory of injury. *Reca*, 2026 WL 82702, at *7 n.10.  The same is true here.

3187079, at *15.

Although the *Reca* opinions are not binding, the allegations are materially indistinguishable from the Plaintiffs' allegations. The reasoning in each opinion also is consistent with the Ninth Circuit's analysis in *Oki*, and the Court finds it persuasive.[9] *See also Licht v. Binance Holdings Ltd.*, No. 24-cv-10447-NMG, 2025 WL 625303, at *17 (D. Mass. Feb. 5, 2025) (concluding that victims of internet scam failed to state a RICO claim against cryptocurrency exchanges where proceeds of scams were laundered and cashed out because "[t]he cause of the plaintiffs' injury was a set of actions … entirely distinct from the operation of [defendant] as an unlicensed, unregistered MTB….").

Because Plaintiffs fail to adequately allege both but for and proximate cause, the Court GRANTS the motion to dismiss Plaintiffs' RICO claim. "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." *Howard v. America Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). Accordingly, the Court also GRANTS the motion to dismiss the RICO conspiracy claim.

### 3. The Aiding and Abetting Claim.

Plaintiffs also allege OKCoin is liable for aiding and abetting conversion of their cryptocurrency. "Liability may be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act…." *Casey v. U.S. Bank N.A.*, 127 Cal. App. 4th 1138, 1144 (2005) (cleaned up). To state a claim, Plaintiffs must allege that OKCoin had actual knowledge of the primary wrong it assisted, *i.e.* conversion. Conversion requires Plaintiffs to show wrongful interference with or wrongful disposition of *their* crypto. *See,*

---

[9]   Plaintiffs argue that the fact that other exchanges may have engaged in similar conduct should not impact the Court's analysis, citing *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation*, MDL No. 2672, 2017 WL 4890594, at *8 (N.D. Cal. Oct. 30, 2017). In that case, the defendants argued that the fraud at issue could have been accomplished using a different supplier and, therefore, their conduct was not the "but for" cause of the plaintiffs' injuries. The court rejected that argument reasoning, in part, that "no other suppliers have been identified in the complaint." *Id.* In contrast to *In re Volkswagen*, the *Reca* case demonstrates there *is* another exchange that could have accomplished the laundering that allegedly caused Plaintiffs' injury.

12

United States District Court
Northern District of California

*e.g., Voris v. Lambert*, 7 Cal. 5th 1141, 1150 (2019); *Archer v. Coinbase Inc.*, 53 Cal. App 5th 266, 276 (2020).  In federal court, "intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Plaintiffs allege OKCoin "knew that the cryptocurrency was taken from Plaintiffs … because the cryptocurrency was transferred to OKX.com from previously identified illicit wallets."  (AC ¶ 216.)  However, there are no other facts that plausibly allege Defendants knew *Plaintiffs* were the source of funds in the allegedly illicit wallets.

Accordingly, the Court GRANTS the motion to dismiss the aiding and abetting claim.

**C.      The Court Grants Leave to Amend, in Part.**

If the allegations are insufficient to state a claim, a court should grant leave to amend unless amendment is futile.  *See, e.g., Reddy v. Litton Indus. Inc.*, 912 F.3d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).  Where a plaintiff has previously amended and failed to correct deficiencies, the Court's "discretion to deny leave to amend is particularly broad[.]"  *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).  As to OKCoin, the Court concludes that Plaintiffs' theory of liability on the RICO claims demonstrates that amendment would be futile and dismisses those claims with prejudice and dismisses the aiding and abetting claim without prejudice.  The Court dismisses all claims against the Foreign Defendants without prejudice.  *See Cox v. CoinMarketCap OPCO, LLC*, 112 F.4th 822, 836 (9th Cir. 2024) ("A dismissal for lack of personal jurisdiction does not adjudicate the merits and so should be without prejudice.").

If Plaintiffs choose to amend and can do so in good faith and in compliance with Rule 11, they may file a second amended complaint by no later than April 28, 2026.  If Plaintiffs do not file a second amended complaint by April 28, 2026, the Court will enter judgment and close the file.

**IT IS SO ORDERED**.

Dated: March 31, 2026

_____
JEFFREY S. WHITE
United States District Judge

13