United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALISTER WATT, et al.,<br>Plaintiffs,<br>v.<br>OKCOIN USA INC., et al.,<br>Defendants. | Case No. 25-cv-00368-JSW<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 42 |

Now before the Court is the motion to dismiss the Second Amended Complaint filed by Defendants OKCoin USA Inc. now known as OKC INC. ("OKCoin"), Aux Cayes FinTech Co. Ltd. ("Aux Cayes"), and OKC Holdings Corporation ("Holdings") (collectively, "Defendants") pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). The Court has considered the parties' papers and relevant legal authority, and the record in this case, and HEREBY GRANTS the motion to dismiss with prejudice.

## BACKGROUND

Holdings was founded in 2015 and is the parent organization of a group of legal entities which operate a cryptocurrency platform where customers deposit, trade, and withdraw different types of digital assets, including cryptocurrencies and tokens. (Dkt. No. 38, Second Amended Complaint ("SAC") at ¶ 1.) Plaintiffs are individuals who allege that unidentified third-party criminals stole digital assets from their accounts at multiple third-party trading platforms and later

United States District Court
Northern District of California

passed some of those stolen assets through the OKC platform, allegedly to launder them. In its order dated March 31, 2026, dismissing the First Amended Complaint, the Court held that Defendants' alleged failure to implement adequate AML and KYC policies and procedures was not the cause of injury to Plaintiffs, but rather the theft was the cause. The Court also held that no facts plausibly alleged that Defendants knew about Plaintiffs' stolen assets at the time of the alleged laundering.

In their Second Amended Complaint, Plaintiffs allege additional facts regarding indications that Plaintiffs alerted Defendants of issues with their assets after they were stolen and transferred. Plaintiffs also add Plaintiff Gezalian, a California resident, to support claims for violation of the California Unfair Competition Law ("UCL") and California Penal Code section 496.

The Court shall address additional facts, as necessary, in its analysis.

## ANALYSIS

### A. Applicable Legal Standards.

A court's inquiry under Rule 12(b)(6) "is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide grounds of his entitled to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### B. Claim for Conversion.

Defendants move against Plaintiffs' claim for conversion on the basis that they have not alleged that any Defendant "acted intentionally to wrongfully dispose of the property of another."

*Duke v. Superior Court*, 18 Cal. App. 5th 490, 508 (2017); *Archer v. Coinbase Inc.*, 53 Cal. App. 5th 266, 276 (2020). In order to state a claim for conversion, Plaintiffs must plead "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Teed v. Chen*, 2022 WL 16839496, at *9 (N.D. Cal. Nov. 9, 2022). "Conversion is a strict liability tort" and "questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial." *Regent All. Ltd. v. Rabizadeh*, 231 Cal. App. 4th 1177, 1181 (2014). However, a claim for conversion requires "affirmative action to deprive another of property, not a lack of action." *Archer*, 53 Cal. App. 5th at 276. Conversion requires "that the defendant have intentionally done the act depriving the plaintiff of his or her rightful possession." *Voris v. Lampert*, 7 Cal. 5th 1141, 1158 (2019). Here, Plaintiffs' theory is that Defendants failed to implement adequate KYC and AML procedures, thus enabling third-party criminals to transfer Plaintiffs' stolen assets into the OKC account in order to launder them. The only affirmative acts that Plaintiffs allege are actions underlying the general operation of the OKX platform: operating market-making functions, facilitating trades, and ledgering transactions. Failure to perform does not constitute an adequate predicate for an affirmative action in order to deprive another of property and cannot form the basis for a claim for conversion. Accordingly, the Court GRANTS the motion to dismiss the claim for conversion.

**C. Claim for Aiding and Abetting Conversion.**

Defendants move to dismiss Plaintiffs' claim for aiding and abetting conversion. Plaintiffs premise this claim on the basis that Defendants had actual knowledge of the hackers' thefts and subsequent money laundering based on red flags and the individual plaintiffs' notifications after the fact. The Court has already rejected the argument that Defendants were on notice of the alleged fraudulent activity based on red flags of the specific wrongdoing at issue. (Dkt. No. 29, Order dated March 31, 2020 ("Order") at 10-11.) General allegations of "indicators" of suspicious activity is insufficient to state a claim. Plaintiffs' contention that an analytics forum posted about Supples' theft is inconsequential as there is no allegation that anyone from Defendants' companies saw this post. Second, after-the-fact notice from individual plaintiffs about the suspicious activity

United States District Court
Northern District of California

on Defendants' platform does not suffice to plead actual knowledge of the thefts or money laundering at the time of their occurrence. Further, even if Plaintiffs were able to plead in the alternative that their assets remained on Defendants' platform, the alleged correspondence from Watt and Supples did not provide support for their assertions nor were they substantiated by law enforcement. The correspondence at best indicated that they perceived fraud on the platform but does not establish that Defendants had actual knowledge of the thefts. Accordingly, the Court GRANTS the motion to dismiss the claim for aiding and abetting conversion.

**D. Claim for Violation of the California Unfair Competition Law.**

Plaintiffs fail to state a claim for violation of the UCL because they cannot plead causation. Just as the Court held when dismissing the RICO claims, Defendants alleged failure to implement adequate KYC and AML policies was not the cause of Plaintiffs' injuries. (Order at 9-12.) To determine whether unlawful or unfair conduct caused a plaintiff's injury, California courts apply a "but-for" standard: a plaintiff cannot plead a causal connection if it "would suffer the same harm whether or not a defendant complied with the law." *Two Jinn, Inc. v. Gov't Payment Serv., Inc.*, 233 Cal. App. 4th 1321, 1332 (2015). Here, the Court has already held that Defendants' conduct was not the but-for cause of Plaintiffs' injuries. The Court held that "even if OKCoin was 'not in the picture,' the crypto thieves 'may still have stolen from Plaintiffs and 'laundered the proceeds elsewhere.'" (Order at 10.) The Court held that "[t]he proximate cause of Plaintiffs' injury was not crypto laundering; it was theft." (*Id.*) The Court similarly finds now that plaintiffs' losses were more directly attributable to the actions of third parties in stealing their crypto funds. *See Lee v. Foris DAX, Inc.*¸ 2026 WL 2447028, at *7 (N.D. Cal. Aug. 20, 2026).[1] Defendants' alleged conduct could not have independently caused Plaintiffs' injuries: "the supposed Phase 2 inability-to-track injury would not exist without the theft injury in Phase 1." (Order at 11 (quoting *Reca v. Flashdot Ltd.*¸ 2025 WL 3187079, at *7, *13 (S.D.N.Y. Nov. 13, 2025)).) The Court finds the refined and slightly amended allegations in the Second Amended Complaint do not change the Court's conclusion that causation remains insufficiently alleged. Accordingly, the Court

[1] The Court has reviewed Plaintiffs' proposed sur-reply and finds that it does not change the Court's analysis of causation.

United States District Court
Northern District of California

GRANTS the motion to dismiss the claim for violation of the UCL.

**E. Claim for Receiving Stolen Property.**

To state a claim pursuant to California Penal Code section 496 involving receipt of stolen funds, "the defendant must know that the funds are stolen – it's not enough to allege or prove that the defendant knew that the legality of the challenged transaction was doubtful." *McCraner v. Wells Fargo & Co.*, 2022 WL 959646, at *3 (S.D. Cal. Mar. 30, 2022); *see also People v. Tessman*, 223 Cal. App. 4th 1293, 1302 (2014) ("A necessary element of [section 496] is actual knowledge that the property received or sold was stolen."). Here, there is no allegation that Defendants had actual knowledge of the theft of Gezalian's funds at the time they were transferred to the platform. Also, in order to bring a civil claim under section 496, a plaintiff must show that the defendant's receipt of stolen property caused the plaintiff to suffer actual damages. Here, the Court has found that the injuries to Plaintiffs were caused by the third-party crypto-currency thieves, not by Defendants' receipt of the stolen property. Accordingly, the Court GRANTS the motion to dismiss the claim for receiving stolen property pursuant to California Penal Code section 496.

**F. Personal Jurisdiction Over Aux Cayes and Holdings.**

Although the Court has granted the motion to dismiss the claims on the merits, the parties also continue to dispute whether the Court maintains personal jurisdiction over Defendants Aux Cayes and Holdings. Here, the Court finds that the Second Amended Complaint fails to establish general or specific jurisdiction over these foreign defendants.

**1. Aux Cayes.**

Plaintiff alleges that Aux Cayes has regional headquarters in California, a single executive resides in the state, and Aux Cayes does not operate from its registered Seychelles address. The Court finds these allegations insufficient to establish general jurisdiction over the foreign entity. The establishment of regional headquarters in a jurisdiction does not confer general jurisdiction. *See, e.g., Daimler v. Bauman*, 571 U.S. 117, 123, 142 (2014). Second. Plaintiffs allege that one executive at Aux Cayes resides in California. These allegations are "most relevant to … jurisdiction over *those individuals*." *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 1015

(C.D. Cal. 2011) (emphasis in original). And the conclusory allegation that Aux Cayes does not operate out of Seychelles has no particular relevance to whether it has continuous and systematic affiliations with California. Seychelles, as the place of incorporation, is most likely the best forum for the exercise of general jurisdiction.

Plaintiffs also fail to establish specific jurisdiction over Aux Cayes by demonstrating that it has purposeful direction of activities toward or purposeful availment of California, the claim arises out of the California activities, or that exercising jurisdiction is reasonable. (*See* Order at 7-8.) The Second Amended Complaint sets out new allegations regarding two "Web3 events," a hackathon competition co-sponsored by Google and an industry conference, each lasting less than a week and neither in any way connected to the alleged theft or money laundering of Plaintiffs' cryptocurrency. Plaintiffs therefore cannot show that their claims arise out of these two isolated alleged contacts with California. Plaintiffs cannot allege that these events are connected to any harm Plaintiffs, or any California resident, may have suffered. Lastly, the same allegations regarding service provider having an IP location in California and website which could target California consumers are insufficient to establish specific jurisdiction in the state. The Court finds that although Aux Cayes is not tasked with satisfying the third prong, the Court finds that it would be unreasonable to exercise jurisdiction over it given that Aux Cayes has had no contact with California that gave rise to the allegations in the Complaint and dismissal would not preclude Plaintiffs from seeking redress against OKCoin.

**2. Holdings.**

Plaintiffs contend that the Court may maintain personal jurisdiction over Holdings, a Cayman Islands company, based on its alleged alter-ego relationship with OKCoin, a U.S.-based company. The Court rejected this same theory in its previous Order and the Court finds that the amendments in the Second Amended Complaint do not change the Court's analysis. To establish an alter-ego relationship, Plaintiffs must show (1) "such a unity of interest and ownership that the separate personalities of the two entities no longer exist" and (2) "that failure to disregard their separate entities would result in fraud or injustice." *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1004 (N.D. Cal. 2020). In the words used by this Court, Plaintiffs must show that

Holdings "moved beyond establishment of general policy and direction for [OKCoin] and … [took] over performance of [its] *day-to-day* operations." (Order at 5 (emphasis in original).) Plaintiffs' allegations do not amount to a "unity of interest" between Holdings and OKCoin such as commingling of funds, shouldering liability for each other's debts, identical ownership, use of the same officer or employees, use of one entity as a "mere shell," inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, or identical officers and directors. Rather, the Second Amended Complaint does not allege any specific facts tending to demonstrate such a purposeful disregard of independent corporate existence beyond mere conclusory allegations. Here, Plaintiffs allege that there was shared ownership, a shared director, and the use of the same registered address. (SAC at ¶ 34.) Common ownership is not dispositive absent other facts tending to demonstrate actual control. *See Chubchai v. AbbVie*, 599 F. Supp. 3d 866, 876 (N.D. Cal. 2022). The sharing of a single director is insufficient and manifests merely "intercorporate connections" which is a "normal attribute of ownership" that does not establish a "unity of interest." *Gerritsen v. Warner Bros. Ent. Inc.*¸ 116 F. Supp. 3d 1104, 1138-39 (C.D. Cal. 2015); *see also* Order at 7. Lastly, a shared address does not demonstrate unity of interest. *Reynolds*, 481 F. Supp. 3d at 1005-06; *see also MH Pillars Ltd. v. Realini*, 2017 WL 916414, at *12 (N.D. Cal. Mar. 8, 2017).

Accordingly, the Court finds that Plaintiffs fail to demonstrate that it has general or specific jurisdiction over either Aux Cayes or Holdings.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss in its entirety. Because the Court finds that the deficiencies in Plaintiffs' pleading cannot be changed without presenting alternative facts and Plaintiffs have had multiple opportunities to cure the defects in their complaint, any further amendment would be futile and the Court dismisses with prejudice. *See Oki Semiconductor Co. v. Wells Fargo Bank, N.A.*, 298 F.3d 768, 777-78 (9th Cir.

///

///

///



United States District Court
Northern District of California

United States District Court
Northern District of California

2002). A separate judgment shall issue and the Clerk shall close the case.

**IT IS SO ORDERED.**

Dated: November 5, 2026

JEFFREY S. WHITE
United States District Judge